THEODORE J. BOUTROUS JR., SBN 132099
   TBoutrous@gibsondunn.com
CHRISTOPHER D. DUSSEAULT, SBN 177557
   CDusseault@gibsondunn.com
SAMUEL G. LIVERSIDGE, SBN 180578
   SLiversidge@gibsondunn.com
JILLIAN N. LONDON, SBN 319924
   JLondon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071
Telephone:   213.229.7000
Facsimile:   213.229.7520

RACHEL S. BRASS, SBN 219301
   RBrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California  94105-0921
Telephone:   415.393.8200
Facsimile:   415.393.8306

Attorneys for Defendant
ENERGIZER HOLDINGS, INC.

CHRISTOPHER S. YATES, SBN 161273
   chris.yates@lw.com
BELINDA S LEE, SBN 199635
   belinda.lee@lw.com
BRENDAN A. MCSHANE, SBN 227501
   brendan.mcshane@lw.com
ALICIA R. JOVAIS, SBN 296172
   alicia.jovais@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:   415.391.0600
Facsimile:   415.395.8095

LAWRENCE E. BUTERMAN (*pro hac vice*)
   lawrence.buterman@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone:   212.906.1747
Facsimile:   212.751.4864

Attorneys for Defendant
WALMART INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DON COPELAND, JOSEPH MURRAY, CAROL SMITH, PATRICK WHITNEY, PHILLIP HAGUE, DENISE FOTIS, ROXANN DORIOTT, BRUCE MIMS, LORI ABLY, TIMOTHY BROWN, PETER COSTAS, AND MIKE BALLARD, on behalf of themselves and those similarly situated,<br><br>              Plaintiffs,<br><br>   v.<br><br>ENERGIZER HOLDINGS, INC.; AND WAL-MART, INC.,<br><br>              Defendants. | CASE NO. 4:23-CV-02087-HSG<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:       November 30, 2023<br>Time:       2:00 pm<br>Ctrm:      2<br>Judge:    Haywood S. Gilliam, Jr. |

*[Caption Continues on Following Page]*

| | |
|---|---|
| 1  PORTABLE POWER, INC., on behalf of itself and those similarly situated, | CASE NO. 4:23-CV-02091-HSG |
| 2 | |
| 3                   Plaintiffs, | |
| 4          v. | |
| 5  ENERGIZER HOLDINGS, INC.; AND | |
| 6  WAL-MART, INC., | |
| 7 | |
| 8                   Defendants. | CASE NO. 4:23-CV-02093-HSG |
| 9  KIMBERLY SCHUMAN and KYLE KELLEY, on behalf of themselves and those similarly situated, | |
| 10 | |
| 11                   Plaintiffs, | |
| 12          v. | |
| 13  ENERGIZER HOLDINGS, INC.; AND | |
| 14  WAL-MART, INC., | |
| 15 | |
| 16                   Defendants. | |
| 17 | |

18
19
20
21
22
23
24
25
26
27
28

1    **NOTICE OF MOTION AND MOTION**

2        TO THIS HONORABLE COURT, THE PARTIES, AND THEIR ATTORNEYS OF

3    RECORD, PLEASE TAKE NOTICE THAT on November 30, 2023 at 2:00 pm in Courtroom 2

4    of the United States District Court for the Northern District of California, Oakland Division,

5    located at 1301 Clay Street, Oakland, California, Defendants Energizer Holdings, Inc.

6    ("Energizer") and Walmart Inc. ("Walmart" and, together with Energizer, "Defendants") will and

7    hereby do move to dismiss with prejudice all claims filed in three related actions:  *Copeland v.*

8    *Energizer Holdings, Inc.*, No. 4:23-cv-02087, *Portable Power, Inc. v. Energizer Holdings, Inc.*,

9    No. 4:23-cv-02091, and *Schuman v. Energizer Holdings, Inc.*, No. 4:23-cv-02093.

10       Defendants respectfully make this Motion under Federal Rules of Civil Procedure 8(a),

11   12(b)(1) and 12(b)(6) on the ground that Plaintiffs do not allege sufficient facts to state a claim for

12   relief and lack standing under Article III of the U.S. Constitution:

13       1.      Plaintiffs fail to plead evidentiary facts to plausibly allege an unlawful agreement

14   between Energizer and Walmart, as required to state a claim under Section 1 of the Sherman Act,

15   15 U.S.C. § 1. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *In re Musical Instruments*

16   *& Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015).  Plaintiffs offer only the conclusion

17   that the alleged actions resulted from an agreement, even though the actions are all consistent with

18   rational, unilateral business conduct and do not support the inference of a conspiracy.  *The Jeanery,*

19   *Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1156 (9th Cir. 1988).

20       2.      Plaintiffs' claims also fail because the per se rule does not apply to the vertical

21   arrangement alleged here, and Plaintiffs cannot plead that the alleged conduct causes the requisite

22   injury to competition in the alleged relevant market under the rule of reason.  *Bus. Elecs. Corp. v.*

23   *Sharp Elecs. Corp.*, 485 U.S. 717, 726 (1988); *Pac. Steel Grp. v. Com. Metals Co.*, No. 20-cv-

24   07683-HSG, 2021 WL 2037961, at *7 (N.D. Cal. May 21, 2021) (Gilliam, J.).  Plaintiffs' claims

25   also fail because the alleged intrabrand (*i.e.*, Energizer-brand battery products only) agreement

26   between Energizer and Walmart, even if sufficiently pleaded, would cause no injury to competition

27   beyond what the antitrust laws already allow.

28       3.      The *Copeland* and *Schuman* Complaints also fail for the independently dispositive

1    reason that Plaintiffs lack Article III standing (*Copeland*) or antitrust standing (*Schuman*). *Jones*

2    *v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908 (N.D. Cal. 2019); *Associated Gen. Contractors of*

3    *Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 539-43 (1983)

4         4.    Plaintiffs' state law antitrust and consumer protection claims, which are based on

5    the same allegations as their federal Sherman Act claims, also fail under those various states' laws.

6    *See* **Appendix A** and **Appendix B** (collecting cases).

7         This Motion is based on this Notice of Motion and Motion to Dismiss, the attached

8    Memorandum of Points, all pleadings and papers filed herein, oral argument of counsel, and any

9    other matter that may be considered by this Court on this Motion.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page

I.      INTRODUCTION ......................................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED ......................................................... 3

III.    SUMMARY OF RELEVANT ALLEGATIONS ....................................................... 3

        A.      The Parties ....................................................................................................... 3

        B.      The Alleged Conduct ...................................................................................... 4

        C.      The Alleged Market Definition....................................................................... 5

        D.      The Alleged Classes and Claims for Relief ................................................... 5

IV.     ARGUMENT ............................................................................................................. 6

        A.      Legal Standard ................................................................................................ 6

        B.      Plaintiffs Fail To Adequately Allege an Unlawful Agreement ...................... 8

        C.      Plaintiffs Fail to Adequately Allege Harm to Competition .......................... 13

                1.      The Rule of Reason Governs Plaintiffs' Claims...................................... 14

                2.      Plaintiffs' "Anticompetitive Effects" Allegations Do Not
                        Plead the Requisite Injury in the Alleged Market.................................... 15

                3.      The Alleged Conduct Has No Unreasonable Effect on
                        Competition.............................................................................................. 18

        D.      Certain Plaintiffs Lack Standing To Bring Their Claims .................................. 21

                1.      The *Copeland* Plaintiffs Cannot Bring Claims Under the
                        Laws of States Where They Did Not Purchase Energizer
                        Batteries................................................................................................... 21

                        a.      The Court Should Dismiss the *Copeland* Claims for
                                Jurisdictions Where No Named Plaintiff Alleges
                                Injury................................................................................ 21

                        b.      Article III Standing Is a "Threshold Inquiry"
                                Appropriate for Resolution on a Motion to Dismiss.................... 23

                2.      The *Schuman* Plaintiffs Also Lack Antitrust Standing ........................... 25

        E.      Plaintiffs' State Antitrust and Consumer Protection Claims Fail for
                the Same Reasons Their Sherman Act Claims Fail ............................................ 28

V.      CONCLUSION.................................................................................................... 29

TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Aggrenox Antitrust Litig.*,
   94 F. Supp. 3d 224 (D. Conn. 2015) ................................................................................. 29

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   361 F. Supp. 3d 324 (E.D.N.Y. 2019) ............................................................................... 16

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) .......................................................................................................... 24

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012) ................................................................................................ 7

*In re Androgel Antitrust Litig. (No. II)*,
   687 F. Supp. 2d 1371 (N.D. Ga. 2010) ............................................................................. 28

*In re Apple AT & TM Antitrust Litig.*,
   596 F. Supp. 2d 1288 (N.D. Cal. 2008) ............................................................................ 24

*In re Apple Processor Litig.*,
   No. 5:18-cv-00147-EJD, 2019 WL 3533876 (N.D. Cal. Aug. 2, 2019) ............................ 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 7, 13, 16

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983) ..................................................................................................... 25, 26

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) ............................................................................................. 22

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir. 2017) ............................................................................................. 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 6, 7, 8, 13

*Bio-Rad Labs, Inc. v. 10X Genomics, Inc.*,
   483 F. Supp. 3d 38 (D. Mass. 2020) ................................................................................. 16

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
   65 F.3d 1406 (7th Cir. 1995) ............................................................................................. 20

*Brantley v. NBC Universal, Inc.*,
   675 F.3d 1192 (9th Cir. 2012) ..................................................................................... 13, 16

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
   485 U.S. 717 (1988) ............................................................................................... 14, 15, 20

Page(s)

*In re Bystolic Antitrust Litig.*,
    583 F. Supp. 3d 455 (S.D.N.Y. 2022)..............................................................28, 29

*Cal. Crane Sch., Inc. v. Google LLC*,
    No. 21-CV-10001-HSG, 2023 WL 2769096 (N.D. Cal. Mar. 31, 2023) ............8, 10

*In re Capacitors Antitrust Litig.*,
    154 F. Supp. 3d 918 (N.D. Cal. 2015) ........................................................22, 23, 24

*In re Century Aluminum Co. Sec. Litig.*,
    729 F.3d 1104 (9th Cir. 2013) ...................................................................................8

*In re Citric Acid Litig.*,
    996 F. Supp. 951 (N.D. Cal. 1998) ..........................................................................18

*City of Oakland v. Oakland Raiders*,
    20 F.4th 441 (9th Cir. 2021) ........................................................................25, 26, 27

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*,
    691 F.2d 1335 (9th Cir. 1982) ............................................................................28, 29

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984).....................................................................................................7

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)...................................................................................................22

*Dimidowich v. Bell & Howell*,
    803 F.2d 1473 (9th Cir. 1986) ..................................................................................14

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ..............................................................22, 23

*E & L Consulting, Ltd. v. Doman Indus. Ltd.*,
    472 F.3d 23 (2d Cir. 2006)..........................................................................13, 18, 19

*Easter v. Am. W. Fin.*,
    381 F.3d 948 (9th Cir. 2004) ....................................................................................23

*Ellis v. Experian Info. Sols., Inc.*,
    No. 17-CV-07092-LHK, 2018 WL 3036682 (N.D. Cal. June 19, 2018) ................22

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) ................................................................................7, 15

*Fed. Trade Comm'n v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ....................................................................................11

Page(s)

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...........................................................23, 24

*Fonseca v. Hewlett-Packard Co.*,
    No. 19-CV-1748-GPC-MSB, 2020 WL 6083448 (S.D. Cal. Feb. 3, 2020) ...........................8

*Frame-Wilson v. Amazon.com, Inc.*,
    591 F. Supp. 3d 975 (W.D. Wash. 2022) ................................................................15

*Frost v. LG Electronics Inc.*,
    No. 16-CV-05206-BLF, 2018 WL 6256790 (N.D. Cal. July 9, 2018) ...................................8

*Garabet, M.D., Inc. v. Autonomous Tech. Corp.*,
    116 F. Supp. 2d 1159 (C.D. Cal. 2000) ...........................................................26, 28

*Georgine v. Amchem Prod., Inc.*,
    83 F.3d 610 (3d Cir. 1996) ..............................................................................24

*In re German Auto. Mfrs. Antitrust Litig.*,
    392 F. Supp. 3d 1059 (N.D. Cal. 2019) .................................................................28

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................................................23

*Greencycle Paint, Inc. v. Paintcare, Inc.*,
    No. 15-CV-04059-MEJ, 2016 WL 1402845 (N.D. Cal. Apr. 8, 2016) ...................................8

*Griffin v. Dugger*,
    823 F.2d 1476 (11th Cir. 1987) .........................................................................22

*Haro v. Sebelius*,
    747 F.3d 1099 (9th Cir. 2014) ..........................................................................22

*Hawecker v. Sorensen*,
    No. 1:10-CV-00085 OWW, 2011 WL 98757 (E.D. Cal. Jan. 12, 2011) .................................23

*Hoffman v. UBS-AG*,
    591 F. Supp. 2d 522 (S.D.N.Y. 2008) ..................................................................24

*The Jeanery, Inc. v. James Jeans, Inc.*,
    849 F.2d 1148 (9th Cir. 1988) ...........................................................7, 11, 12, 13

*Jones v. Micron Tech. Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ..................................................................22

*Kelsey K. v. NFL Enterprises, LLC*,
    254 F. Supp. 3d 1140 (N.D. Cal. 2017) ..................................................................9

Page(s)

*Kendall v. Visa U.S.A, Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ...............................................................7, 8, 9, 11

*Kingray, Inc. v. NBA, Inc.*,
   188 F. Supp. 2d 1177 (S.D. Cal 2002)...........................................................19

*Lee v. State of Or.*,
   107 F.3d 1382 (9th Cir. 1997) .......................................................................24

*Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007).................................................................................14, 16

*Lewis v. Casey*,
   518 U.S. 343 (1996).......................................................................................22

*Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*,
   No. 13-cv-01180-BLF, 2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) .........22, 24

*Lubic v. Fid. Nat. Fin., Inc.*,
   No. C08-0401 MJP, 2009 WL 2160777 (W.D. Wash. July 20, 2009).................9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).......................................................................................22

*Martinez v. Newsom*,
   46 F.4th 965 (9th Cir. 2022) ..........................................................................22

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984).................................................................................7, 11

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) ............................................................... *passim*

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   795 F.3d 1124 (9th Cir. 2015) .....................................................................1, 8

*Nat'l Recycling, Inc. v. Waste Mgmt. of Mass., Inc.*,
   No. 03-cv-12174-NMG, 2007 WL 9797531 (D. Mass. July 2, 2007)................20

*Ohio v. Am. Express Co.*,
   138 S. Ct. 2274 (2018)....................................................................................15

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999)........................................................................................24

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
   555 U.S. 438 (2009).....................................................................................1, 11

Page(s)

*Pac. Steel Grp. v. Com. Metals Co.*,
  No. 20-CV-07683-HSG, 2021 WL 2037961 (N.D. Cal. May 21, 2021)....................14, 16, 20

*Pardini v. Unilever United States, Inc.*,
  961 F. Supp. 2d 1048 (N.D. Cal. 2013) ...........................................................................23, 24

*Real Selling Grp. LLC v. ESN Grp., Inc.*,
  No. 20-cv-1468 (NRB), 2021 WL 535748 (S.D.N.Y. Feb. 12, 2021)....................................19

*Reilly v. Apple Inc.*,
  578 F. Supp. 3d 1098 (N.D. Cal. 2022) ...............................................................................16

*Rivera v. Wyeth-Ayerst Lab'ys.*,
  283 F.3d 315 (5th Cir. 2002) ...............................................................................................24

*Rutman Wine Co. v. E. & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987) ...............................................................................................19

*Simon v. E. Ky. Welfare Rts. Org.*,
  426 U.S. 26 (1976)................................................................................................................22

*Sosna v. Iowa*,
  419 U.S. 393 (1975)..............................................................................................................23

*State Oil Co. v. Khan*,
  522 U.S. 3 (1997)..................................................................................................................18

*Stearns v. Select Comfort Retail Corp.*,
  No. 08-cv-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009)........................................17

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)................................................................................................................23

*Stubhub, Inc. v. Golden State Warriors, LLC*,
  No. 15-cv-1436 MMC, 2015 WL 6755594 (N.D. Cal. Nov. 5, 2015) ..................................19

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
  13-MD-2445, 2017 WL 4642285 (E.D. Pa. Oct. 17, 2017) ................................................28

*In re Tamoxifen Citrate Antitrust Litig.*,
  277 F. Supp. 2d 121 (E.D.N.Y. 2003) .................................................................................28

*Top Rank, Inc. v. Haymon*,
  No. 15-cv-4961-JFW, 2015 WL 9948936 (C.D. Cal. Oct. 16, 2015)...................................16

*Toscano v. PGA Tour, Inc.*,
  70 F. Supp. 2d 1109 (E.D. Cal. 1999)..................................................................................12

TABLE OF AUTHORITIES

Page(s)

*Trixler Brokerage Co. v. Ralston Purina Co.*,
  505 F.2d 1045 (9th Cir. 1974) ................................................................................19

*United States v. Colgate & Co.*,
  250 U.S. 300 (1919)................................................................................11, 13

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004)................................................................................11, 20

*William O. Gilley Enterprises, Inc. v. Atl. Richfield Co.*,
  588 F.3d 659 (9th Cir. 2009) ..............................................................................9

*Williamson Oil Co. v. Philip Morris USA*,
  346 F.3d 1287 (11th Cir. 2003) ...........................................................................18

**STATUTES**

15 U.S.C. § 1................................................................................................ *passim*

Cal. Bus. & Prof. Code
  §§ 16700 *et seq.* ...........................................................................................29
  §§ 16720 *et seq.* .............................................................................................6
  §§ 17200 *et seq.* .........................................................................................6, 29

**RULES**

Fed. R. Civ. P.
  12(b)(6) ....................................................................................................6
  23..........................................................................................................23

**Table of Complaint Citations**

This motion is directed at all three complaints filed in these related actions—(1) *Copeland v. Energizer Holdings, Inc.*, No. 4:23-cv-02087; (2) *Portable Power, Inc. v. Energizer Holdings, Inc.*, No. 4:23-cv-02091; and (3) *Schuman v. Energizer Holdings, Inc.*, 4:23-cv-02093. The substantive allegations are the same across the Complaints. Accordingly, Defendants cite the *Copeland* complaint in this motion unless otherwise indicated. For the Court's convenience, below is a table that cross-references the cited *Copeland* paragraph numbers to the other two Complaints.

| *Copeland* Complaint | *Portable Power* Complaint | *Schuman* Complaint |
|---|---|---|
| ¶ 2 | *second unnumbered paragraph on page 1* | *second unnumbered paragraph on page 1* |
| ¶¶ 3-7 | ¶¶ 1-5 | ¶¶ 1-5 |
| ¶¶ 9-10 | ¶¶ 7-8 | ¶¶ 7-8 |
| ¶¶ 26-27 | ¶¶ 14-15 | ¶¶ 14-15 |
| ¶ 37 | ¶ 23 | ¶¶ 23 |
| ¶¶ 49-53 | ¶¶ 35-39 | ¶¶ 35-39 |
| ¶ 55 | ¶ 41 | ¶ 41 |
| ¶¶ 57-86 | ¶¶ 42-71 | ¶¶ 43-72 |
| ¶¶ 88-89 | ¶¶ 72-73 | ¶¶ 73-74 |
| ¶¶ 91-96 | ¶¶ 74-80 | ¶¶ 75-81 |
| ¶ 100 | ¶ 85 | ¶ 86 |
| ¶¶ 102-03 | ¶¶ 87-88 | ¶¶ 88-89 |
| ¶ 106 | ¶ 91 | ¶ 92 |
| ¶ 111 | ¶ 96 | ¶ 97 |
| ¶¶ 145-48 | ¶¶ 127-30 | ¶¶ 128-31 |
| ¶ 153 | ¶ 138 | ¶ 139 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

These lawsuits are a baseless attempt to turn a manufacturer's exercise of its well-established right to "choose . . . the prices, terms, and conditions of [its] dealing[s]" with retailers into a supposed antitrust conspiracy. *See Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009). Three sets of Plaintiffs bring identical allegations claiming that Energizer and Walmart entered into an unlawful agreement to inflate the wholesale and retail prices of disposable batteries. But their conclusory allegations of a supposed "agreement" or "scheme" do not satisfy the standards for stating a claim under Section 1 of the Sherman Act.

The crucial question in a Section 1 case is whether the alleged conduct stems from an unlawful agreement. To withstand a motion to dismiss, "[i]t is not enough merely to include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff must allege *facts* that make the conclusion plausible." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th Cir. 2015) (emphasis added). In the Complaints, Plaintiffs allege that Energizer took certain actions in the marketplace—increasing the wholesale prices for its own products to purchasers other than Walmart and monitoring the retail prices set by distributors other than Walmart—after receiving "complaints" from Walmart. Plaintiffs attempt to turn these unilateral acts into an antitrust conspiracy by claiming in the most conclusory fashion that Energizer "agreed" to take the challenged actions. That is insufficient. Plaintiffs cannot offer as a conclusion that certain actions resulted from an agreement, without alleging any facts that make that conclusion plausible. Indeed, all the conduct they point to is entirely consistent with rational, unilateral business conduct and does not support an inference of conspiracy. Plaintiffs thus fail to allege the threshold requirement of a Section 1 claim—that there was an illegal agreement—and that fundamental failure requires dismissal of each of the three Complaints.

Plaintiffs' claims also fail because they cannot plead the requisite injury to competition. To begin, although Plaintiffs plead a relevant market for "disposable battery products," their alleged "scheme" is limited to inflating wholesale prices only for disposable battery products made by Energizer. That disconnect is important. The antitrust laws are fundamentally concerned with

1   interbrand—not intrabrand—competition, and Plaintiffs' conclusory attempt to allege an effect on

2   a multi-brand market for disposable battery products stemming from the alleged Energizer-only

3   restraint falls short.  Plaintiffs assert that Duracell, a separate manufacturer that sells disposable

4   batteries, was "incentivized" to raise its prices as a result of the agreement between Energizer and

5   Walmart.  But Plaintiffs do not allege that Duracell entered into any anticompetitive agreement,

6   instead claiming that Duracell simply decided to raise its prices since Energizer's prices were

7   allegedly going up.  Plaintiffs' theory disregards the many factors that influence pricing (such as

8   raw material costs, supply-and-demand issues, competitive strategy, etc.), and relies on factually

9   unsupported causal assumptions between the alleged conduct and Duracell's independent pricing

10  decisions, particularly given deficient allegations about Walmart's share in the alleged (or any)

11  relevant market.  Courts routinely reject such speculative umbrella theories of injury.

12          Further, the supposed agreement between Energizer and Walmart would cause no effect

13  on competition beyond what the antitrust laws already allow.  As the manufacturer of a

14  trademarked product, Energizer has no obligation to deal with anyone, and may manufacture,

15  distribute, and retail its products by itself.  Thus, even crediting Plaintiffs' unsupported allegations

16  that Energizer agreed to place Walmart in a favored retailer position, that vertical agreement would

17  not lead to any competitive effect beyond what Energizer is lawfully permitted to accomplish.

18          The *Copeland* and *Schuman* Complaints also fail because Plaintiffs lack Article III

19  standing (*Copeland*) or antitrust standing (*Schuman*).  The Plaintiffs in *Copeland* lack Article III

20  standing to bring claims in the 22 so-called "Repealer Jurisdictions" where they do not allege that

21  a named plaintiff resides or purchased Energizer batteries.  And the *Schuman* Plaintiffs (alleged

22  purchasers of Energizer and Duracell batteries from Walmart retail stores) lack antitrust standing

23  because they did not purchase wholesale products from Energizer, and there are no allegations of

24  an agreement about the retail prices that Walmart would charge to its own customers.

25          Finally, Plaintiffs' state law antitrust and consumer protection claims, which are based on

26  the same allegations as their federal Sherman Act claims, also fail under those various states' laws.

27          For all these reasons, the Court should dismiss the Complaints.  Amendment would be

28  futile given the intrabrand nature of the alleged restraint and Plaintiffs' acknowledgment of

Walmart's limited share of Energizer sales.  Dismissal with prejudice is warranted.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.   Do the Complaints plausibly allege an unlawful agreement between Energizer and Walmart, as required to state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1?

2.   Do the Complaints allege a plausible conspiracy that harms competition in a well-defined antitrust market, as required to state a Section 1 claim based on a vertical agreement?

3.   Do some Plaintiffs lack standing to bring some or all of their claims?

4.   Do Plaintiffs' state antitrust and consumer protection claims fail for the same reasons that their Section 1 claims fail?

## III.   SUMMARY OF RELEVANT ALLEGATIONS

On April 28, 2023, three putative class actions were filed in a coordinated and consecutive fashion:  (1) *Copeland v. Energizer Holdings, Inc.*, No. 4:23-cv-02087; (2) *Portable Power, Inc. v. Energizer Holdings, Inc.*, No. 4:23-cv-02091; and (3) *Schuman v. Energizer Holdings, Inc.*, 4:23-cv-02093.  The three Complaints were filed by different Plaintiffs, but their substantive allegations are identical.  This Court deemed the actions to be related.  *See Copeland*, ECF No. 22.

### A.   The Parties

Plaintiffs in *Copeland* are twelve individuals (collectively, "Copeland") who reside in California, Florida, Illinois, Massachusetts, Maine, Michigan, Minnesota, Missouri, Montana, New York, Vermont, and West Virginia and purchased "Energizer Battery Products" from various retailers.  *See Copeland* Compl. ¶¶ 14-25.  Portable Power, Inc. ("Portable Power") is a retailer who purchased "Energizer Battery Products at wholesale from Energizer," and then resold those products to retail customers.  *Portable Power* Compl. ¶ 12.  Portable Power appears to have purchased mainly headlamps (rather than disposable batteries) from Energizer and then resold those products via Amazon's online marketplace.  *See Copeland* Compl. ¶¶ 57-64, 77.  Plaintiffs in *Schuman* are two individuals (collectively, "Schuman") who purchased "Energizer and Duracell Battery Products" from Walmart.  *Schuman* Compl. ¶¶ 12-13.

Defendants are Energizer Holdings, Inc. ("Energizer") and Walmart Inc. ("Walmart").  Energizer "is a leading manufacturer of disposable batteries," lights, and auto care, and Walmart

is a retailer that "operates thousands of retail stores in the United States." *Copeland* Compl. ¶¶ 26-27. According to Plaintiffs, "[d]irect purchasers from Energizer compete with Walmart to sell Energizer Battery Products at retail." *Id.* ¶ 5.

### B.    The Alleged Conduct

Plaintiffs allege a two-part anticompetitive agreement "to inflate both wholesale and retail prices for Energizer disposable batteries and disposable-battery-dominated lighting products." *See id.* ¶ 2. Plaintiffs claim that when "[f]aced with a dismal market outlook for disposable batteries," Energizer and Walmart "agreed to a scheme" where: (1) Energizer agreed with Walmart to raise the wholesale prices that Energizer charged to its other direct customers, to prevent them from undercutting Walmart's retail prices; and (2) Energizer monitored the retail prices of Energizer's other customers and disciplined those who undercut Walmart's retail prices by raising Energizer's wholesale prices or terminating them as retail customers. *See id.* ¶¶ 3, 5, 7, 51-52.

Plaintiffs do not identify a single Walmart representative in the Complaints, nor plead who from Energizer or Walmart entered into this alleged agreement. Nor do Plaintiffs describe the origin, scope, or operation of any agreement between them. Instead, Plaintiffs allege that "[t]he Scheme has been in effect from as early as January 2018," and focus nearly all their allegations on alleged communications between Energizer and Portable Power, an "online discount retailer," in connection with its purchases of Energizer headlamps. *See id.* ¶¶ 53, 56-86. Plaintiffs allege that these discussions reflect "Energizer and Walmart implement[ing] the Scheme." *Id.* § V.D.

Plaintiffs claim "[t]he Scheme caused Portable Power and other Energizer direct purchasers to pay inflated wholesale prices for Energizer Battery Products, impairing their ability to compete effectively with Walmart in the retail market." *Id.* ¶ 111. *Copeland* also alleges "these wholesale price increases were passed on by retailers to consumers." *Id.* ¶ 115.

Finally, Plaintiffs allege the "scheme" also artificially inflated the prices of Duracell's disposable battery products. *See id.* ¶ 10. The Complaints do not allege that Duracell, a third-party manufacturer of its own brand of disposable battery products, entered into any type of agreement with either Defendant. Plaintiffs nevertheless argue that the scheme "decreased Duracell's incentive to compete with Energizer on price and increased Duracell's incentive to

1    match Energizer's inflated prices." *Id.*  According to Plaintiffs, "[t]he result was that Energizer's

2    and Duracell's wholesale prices were higher than they would have been without the Scheme." *Id.*

3         **C.     The Alleged Market Definition**

4         Plaintiffs allege that the "relevant product market consists of the market for disposable

5    battery products." *Id.* ¶ 100.  They distinguish disposable battery products from rechargeable

6    batteries, which Plaintiffs assert are not reasonable substitutes.  *See id.*  Plaintiffs claim that

7    Energizer has a "50% market share" of disposable batteries, and that "Energizer's power in the

8    market for disposable batteries also gives it power over price – and hence market power – over

9    disposable battery dominated lighting products, such as headlamps and flashlights, because

10   disposable batteries are their largest cost component." *Id.* ¶¶ 102-03.  Plaintiffs never identify

11   which products are encompassed by "disposable battery dominated lighting products," or allege

12   Energizer's market share as to those separate (unidentified) lighting products.

13        Plaintiffs also allege that "Walmart has market power in many local 'brick and mortar'

14   retail markets, as it is the largest retailer in the United States, and the dominant retailer in many

15   relevant geographic markets."  *Id.* ¶ 153.  Yet Plaintiffs do not identify any of these supposed

16   "local 'brick and mortar' retail markets," nor do they allege that Walmart has any particular share

17   of any such markets, or otherwise tie such allegations to disposable batteries.

18        **D.     The Alleged Classes and Claims for Relief**

19        The three groups of Plaintiffs purport to bring claims on behalf of two sets of alleged direct

20   purchasers and one set of indirect purchasers:

21        1.     Portable Power alleges claims on behalf of "[a]ll persons or entities that purchased

22   Energizer Battery Products directly from Energizer in [California, for the "California Class," or

23   the United States, for the "National Class"] from January 1, 2018 until the anticompetitive effects

24   of Defendants' challenged conduct cease." *Portable Power* Compl. ¶¶ 114-15.

25        2.     Schuman alleges claims on behalf of "[a]ll persons who purchased Energizer or

26   Duracell Battery Products directly from a Walmart brick-and-mortar store in [California, for the

27   "Retail California Class," or the United States, for the "Retail National Class"] from January 1,

28   2018 until the anticompetitive effects of Defendants' challenged conduct cease, and who did not

1    use the Walmart Plus Program when making their purchases." *Schuman* Compl. ¶¶ 115-116.

2         3.    Copeland alleges claims on behalf of a putative class of "[a]ll persons and entities

3    in Repealer Jurisdictions who indirectly purchased Energizer Battery Products for their own use

4    and not for resale, at any time during the period from January 1, 2018 until the anticompetitive

5    effects of Defendants' challenged conduct cease." *Copeland* Compl. ¶ 130.[1]

6         The *Portable Power* and *Schuman* Complaints allege violations of:  (1) Section 1 of the

7    Sherman Act, 15 U.S.C. § 1; (2) California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16720 *et*

8    *seq.*; and (3) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

9    *Portable Power* Compl. ¶¶ 123-61; *Schuman* Compl. ¶¶ 124-61.  The *Copeland* Complaint alleges

10   violations of:  (1) Section 1 of the Sherman Act; (2) the state antitrust laws of twenty-seven of the

11   "Repealer Jurisdictions"; and (3) seventeen state consumer protection laws.  *Copeland* Compl. ¶¶

12   141-355.  *Copeland* also alleges that "the essential elements of each state antitrust claim are the

13   same," and that any violations of "the federal Sherman Antitrust Act will, if proven, establish a

14   claim under each of the state laws." *See id.* ¶¶ 164.  *Copeland* alleges violations of state consumer

15   protection laws, characterizing the alleged scheme as "unfair competition, unconscionable

16   conduct, and deceptive acts and practices in violation of the state consumer protection statutes."

17   *See id.* ¶¶ 356-517.  All Plaintiffs seek money damages and injunctive relief.

18   **IV.    ARGUMENT**

19        **A.    Legal Standard**

20        The Court should dismiss any cause of action that fails to state a claim upon which relief

21   can be granted.  Fed. R. Civ. P. 12(b)(6).  "[A] plaintiff's obligation to provide the 'grounds' of

22   his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

23   of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

24   (2007) (internal citation omitted).  Instead, the allegations in a complaint "must be enough to raise

25   _____

26   [1]    According to *Copeland*, "Repealer Jurisdictions" include these states:  Arizona, California,
     Connecticut, District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Maine,
27   Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska,
     Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto
28   Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and
     Wisconsin.  *Copeland* Compl. ¶ 131.

a right to relief above the speculative level."  *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

Section 1 of the Sherman Act prohibits "[e]very contract, combination . . . , or conspiracy, in restraint of trade."  15 U.S.C. § 1.  "Unilateral conduct by a single firm, even if it 'appears to restrain trade unreasonably,' is not unlawful under section 1 of the Sherman Act."  *The Jeanery, Inc. v. James Jeans, Inc.* ("*Jeanery*"), 849 F.2d 1148, 1152 (9th Cir. 1988) (quoting *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 767 (1984)).  Thus, a "threshold component" in any Section 1 case is "whether there is a contract, combination, or conspiracy."  *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 981 (9th Cir. 2023).  A plaintiff must establish that the defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective."  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984); *see also Twombly*, 550 U.S. at 553 (the "crucial question" is whether the alleged conduct stems from "independent decision" or from an "agreement").

In a Section 1 case, a plaintiff must plead "sufficient facts to provide a plausible basis" from which to infer the existence of an agreement.  *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015).  "[C]laimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts."  *Kendall v. Visa U.S.A, Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).  "At the pleading stage, a complaint claiming conspiracy, to be plausible, must plead 'enough factual matter (taken as true) to suggest that an agreement was made,' *i.e.*, it must provide 'some factual context suggesting [that the parties reached an] agreement,' not facts that would be 'merely consistent' with an agreement."  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012) (alteration in original) (quoting *Twombly*, 550 U.S. at 556).  In other words, a plaintiff must plead specific allegations of "who, did what, to whom (or with whom), where, and when."  *In re Musical Instruments*, 798 F.3d at 1194 n.6; *see also Kendall*, 518 F.3d at 1047.

Additionally, "'[a]llegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy' are insufficient to plead a § 1 violation."  *In re Musical Instruments*, 798 F.3d at 1194 (quoting *Kendall*, 518 F.3d

at 1049).  "[W]hen faced with two possible explanations for a defendant's behavior, a plaintiff cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the defendant's alternative explanation." *Greencycle Paint, Inc. v. Paintcare, Inc.*, No. 15-CV-04059-MEJ, 2016 WL 1402845, at *4, 6 (N.D. Cal. Apr. 8, 2016) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)).

### B.  Plaintiffs Fail To Adequately Allege an Unlawful Agreement

Plaintiffs fail to plead basic facts showing a "conspiracy."  Throughout the Complaints, Plaintiffs repeatedly assert in conclusory fashion that "Energizer *agreed* with Walmart" to (1) "artificially inflate the wholesale prices it charged to Walmart's competitors for Energizer Battery Products to prevent them from undercutting Walmart's retail prices," and (2) "monitor Walmart's competitors to ensure that they did not charge lower retail prices for Energizer Products than Walmart—and to discipline those that did." *Copeland* Compl. ¶ 51 (emphasis added); *see also id.* ¶¶ 73, 92-93.  These assertions are merely "conclusory allegation[s] of agreement." *Twombly*, 550 U.S. at 557.  Nowhere in the Complaints do Plaintiffs set out *any* supporting "facts that make the[se] conclusion[s] plausible." *Name.Space*, 795 F.3d at 1129.

To begin, Plaintiffs fail to plead the evidentiary facts of who, what, where, or when of the alleged "agreement," which by itself requires dismissal of Plaintiffs' Complaints. *See Kendall*, 518 F.3d at 1047-48 (affirming dismissal where "complaint [did] not answer the basic questions: who, did what, to whom (or with whom), where, and when?").  This Court has held that conclusory allegations of a purported "agreement" coupled with allegations about who the agreement "began with" are insufficient to plead a conspiracy. *Cal. Crane Sch., Inc. v. Google LLC*, No. 21-CV-10001-HSG, 2023 WL 2769096, at *5 (N.D. Cal. Mar. 31, 2023) (Gilliam, J.).  Plaintiffs' allegations here do not even reach that level.  None of the basic contextual facts are offered.[2]

---

[2]      Other courts in the Ninth Circuit have likewise found similarly conclusory allegations insufficient to plead a conspiracy. *See, e.g., Frost v. LG Electronics Inc.*, No. 16-CV-05206-BLF, 2018 WL 6256790, at *4 (N.D. Cal. July 9, 2018) (holding that even where plaintiff alleged the agreement was entered into in "Seoul, South Korea" and was reached "at the most senior levels of their *chaebol* corporate control structure," the failure to allege such facts including "detail as to *where* in those very large cities the parties met (if they did)" and the "identi[ty of] any particular officer involved in the alleged conspiracy by name or title . . . doom[ed] their claims under *Kendall* and subsequent Ninth Circuit cases applying *Kendall*"); *Fonseca v. Hewlett-Packard Co.*, No. 19-

1     The Complaints do not identify a single Walmart representative, and the only allegation

2 relating to Walmart's role in the so-called "scheme" is a vague allegation that Walmart agreed to

3 "give Energizer battery products preferential treatment in Walmart stores." *Copeland* Compl. ¶¶

4 35-36. Yet there are no facts offered in support of this allegation, and the Complaints leave

5 unexplained what "preferential treatment" even means. And in the mere four paragraphs in the

6 Complaints (*id.* ¶¶ 49-52) that "describe" the purported agreement, the *only* "evidentiary fact"

7 alleged is that Energizer and Walmart agreed to the so-called scheme "[a]s early as January 2018."[3]

8 *Id.* ¶ 49. That is not sufficient. Plaintiffs' Complaints lack any factual allegations that plausibly

9 suggest an actual "meeting of the minds" or "agreement" between Energizer and Walmart. *See*

10 *William O. Gilley Enterprises, Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 665 (9th Cir. 2009)

11 (affirming dismissal of Section 1 claims where plaintiff failed to "show some meeting of the minds,

12 some 'contract, combination or conspiracy,' between th[e] defendants"); *Kelsey K. v. NFL*

13 *Enterprises, LLC*, 254 F. Supp. 3d 1140, 1147-48 (N.D. Cal. 2017), *aff'd*, 757 F. App'x 524 (9th.

14 Cir. 2018) (granting motion to dismiss Section 1 claim where "complaint contain[ed] several

15 conclusory assertions that cheerleading team defendants agreed to prohibit cheerleaders from

16 seeking employment with other professional cheerleading teams and from discussing their

17 earnings with each other[,] [b]ut . . . contain[ed] no factual allegations actually answering the basic

18 questions of who, did what, to whom (or with whom), where, and when" (internal citations and

19 quotations omitted)).

20     Rather than allege facts plausibly suggesting an agreement, Plaintiffs assert that Energizer

21 entered into the alleged "scheme" and took certain actions in the marketplace "under pressure from

---

22

23 CV-1748-GPC-MSB, 2020 WL 6083448, at *6 (S.D. Cal. Feb. 3, 2020) (holding that plaintiff's allegations "fall short of the standard of specificity as required by *Kendall*" because plaintiff

24 alleged "'executives' entered into the no-poach agreement in 2016, without providing details as to who drafted or entered the agreement, or when and where it was agreed upon," and though plaintiff

25 "reference[d] the relationship between [two executives], he fail[ed] to point to any specific connection or communication between the two with respect to a no-poach agreement").

26 [3]     Allegations that a conspiracy was entered into "as early as" a given date cannot fulfill the "when" requirement under *Kendall*. *See, e.g.*, *Lubic v. Fid. Nat. Fin., Inc.*, No. C08-0401 MJP,

27 2009 WL 2160777, at *5 (W.D. Wash. July 20, 2009) (holding that the allegation in plaintiffs' complaint that "beginning at least as early as February 2004, and continuing thereafter to the

28 present . . . defendants and their co-conspirators engaged in a conspiracy" could not meet the federal pleading standard).

DEFENDANTS' MOTION TO DISMISS
CASE NOS. 4:23-CV-02087-HSG,
4:23-CV-02091-HSG, 4:23-CV-02093-HSG

Walmart," *Copeland* Compl. ¶¶ 4, 50, or "at Walmart's behest," *id.* ¶¶ 55, 73.  But these allegations do no more to support Plaintiffs' Section 1 claim than the conclusory allegations of an agreement; they "simply restate Plaintiff[s'] unsupported assertion that all of the alleged conduct was the result of an (inadequately pled) conspiracy." *Cal. Crane Sch.*, 2023 WL 2769096, at *6 n.8.  Moreover, all the alleged conduct is consistent with Energizer's unilateral self-interest, and does not permit the inference of an agreement under the antitrust laws.[4]

*Raising Wholesale Prices To Customers.*  Plaintiffs allege that "under pressure from Walmart . . . Energizer agreed to inflate its wholesale prices above competitive levels for Energizer Battery Products to its direct customers other than Walmart." *Copeland* Compl. ¶¶ 4-5. Plaintiffs' allegation of an "agreement" is a conclusion; there are no facts offered to support it. Plaintiffs likewise offer no details about the supposed agreement.  For example, Plaintiffs do not allege which customers would be charged more or how much the prices would be increased.  Nor do they identify the "direct customers other than Walmart" that would be affected by the supposed price increases. Nor is there an allegation that Walmart and Energizer agreed regarding the prices that Walmart would charge for batteries at retail.[5]  Instead, Plaintiffs vaguely assert that Energizer "agreed" to raise prices in some unknown way to some unknown group of customers.  These allegations are insufficient to sustain a conspiracy case at the pleading stage.

Allegations that a manufacturer took actions in response to "pressure" or "demands" from customers, even if accepted as true for pleading purposes, are also insufficient to plead a conspiracy.  In *In re Musical Instruments*, for example, plaintiffs alleged that manufacturers were "'pressured by [a major customer]' to adopt [minimum advertised price] policies that were advantageous to" that major customer.  798 F.3d at 1195.  The court held that neither this allegation, nor the allegation that the manufacturers "heed[ed] similar demands made by [that]

---

[4]     Plaintiffs make numerous allegations about an Energizer program referred to as Project Atlas.  While Defendants strenuously disagree with Plaintiffs' characterizations of Project Atlas, the Court need not reach those issues on this motion because Plaintiffs fail to adequately allege that this alleged Energizer program resulted from an agreement with Walmart, that it unreasonably restrains competition, or that all Plaintiffs have standing to challenge it.

[5]     Nor are there any allegations that Energizer agreed with any other retailer regarding the retail prices that those retailers would set for Energizer battery products.  The absence of such allegations defeats Plaintiffs' claims under either the per se or rule of reason standard.

common, important customer," suggested conspiracy or collusion. *Id.* at 1195-96. So too here, allegations that Energizer raised its prices in response to "pressure from Walmart" are insufficient to suggest a conspiracy or collusion. *See Jeanery,* 849 F.2d at 1160 ("A plaintiff does not establish concerted action . . . merely by proving that the defendant sought agreement. More is required.").

Finally, Plaintiffs' contention that Energizer decided to raise wholesale prices to certain customers does not permit an inference of a conspiracy because this conduct is consistent with an exercise of Energizer's unilateral business judgment. There is a "long recognized right" of a manufacturer or trader "to exercise his own independent discretion as to parties with whom he will deal'" and on what terms. *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)); *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 997 (9th Cir. 2020) ("'[B]usinesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing.'" (quoting *Linkline*, 555 U.S. at 448)). As just one example, Energizer may increase a customer's price if it learns that the customer was receiving prices intended for distributors but then selling those products at retail.[6] A decision by Energizer to raise its wholesale prices does not require an explanation of conspiracy. Energizer does not need an agreement with Walmart to change its wholesale prices—especially where Energizer's alleged market position allows it to profitably do so. Such conduct "could just as easily suggest rational, legal business behavior by" Energizer, and is thus "insufficient to plead a § 1 violation." *In re Musical Instruments*, 798 F.3d at 1194 (quoting *Kendall*, 518 F.3d at 1049).

***Acting Against Price Discounters.*** Plaintiffs also allege that Energizer acted against certain price discounters based on "complaints from Walmart," *Copeland* Compl. ¶ 58, and that "Walmart asked Energizer what it was doing to 'resolve' the issue" of "disruptive pricing" by certain distributors, *id.* ¶ 59. But, again, these allegations do not plead an agreement between Energizer and Walmart to do anything. Distributor "complaints . . . arise in the normal course of business and do not indicate illegal concerted action." *Monsanto*, 465 U.S. at 763. Thus, even

---

[6]     Energizer has the right to charge different prices to different customers in different parts of the retail chain (for example, distributors versus retailers), and to adjust pricing to a customer that is receiving prices intended for distributors but then actually selling those products at retail.

1    when a dealer has been *terminated* following competitor complaints, the Ninth Circuit has held

2    that "[a] plaintiff does not establish an illegal price-fixing agreement solely by proof of complaints

3    by competitors of the terminated dealer, or that the dealer's termination followed or was 'in

4    response to' these complaints, or that the termination of a price-cutter was pursuant to an

5    agreement with the complaining dealer."[7]  *Jeanery*, 849 F.2d at 1154 (citation omitted).  In the

6    "context of manufacturer-distributor relationships, the courts have uniformly held that concerted

7    action between manufacturers and distributors may not be inferred from mere evidence that the

8    manufacturer considered complaints from distributors before enforcing its sales rules against a

9    wayward distributor."  *Toscano v. PGA Tour, Inc.*, 70 F. Supp. 2d 1109, 1116 (E.D. Cal. 1999),

10   *aff'd sub nom. Toscano v. Pro. Golfers Ass'n*, 258 F.3d 978 (9th Cir. 2001).

11          Instead, the Ninth Circuit has made clear that acting on dealer complaints is consistent with

12   "management's exercise of its independent business judgment."  *See Jeanery*, 849 F.2d at 1155.

13   That is because "[c]omplaints about discounters are natural—and from the manufacturer's

14   perspective, unavoidable—reactions by distributors to the activities of their rivals" and "provide a

15   manufacturer with important information necessary to assure an efficient distribution system."  *Id.*

16   at 1154-55 (internal quotation marks and citations omitted).  To impose liability on a manufacturer

17   for acting on complaints would inhibit the exercise of that manufacturer's independent judgment

18   and control over the distribution of its own products.  *Id.* at 1155; *see also In re Musical*

19   *Instruments*, 798 F.3d at 1195 ("Manufacturers' decisions to heed similar demands made by a

20   common, important customer do not suggest conspiracy or collusion.  They support a different

21   conclusion: self-interested independent parallel conduct in an interdependent market.").

22          ***Requiring Customers To Charge Minimum Retail Prices.***  Lastly, Plaintiffs allege that,

23   as part of the so-called "scheme," Energizer "require[d] its direct purchasers to charge their retail

24

---

25   [7]       Although *Jeanery* concerned a motion for summary judgment, the core principles remain
     the same—Plaintiffs cannot "plead" the existence of a conspiracy/agreement solely with
26   "[allegations] of complaints by competitors of the terminated dealer, or that the dealer's
     termination followed or was in response to these complaints, or that the termination of a price-
27   cutter was pursuant to an agreement with the complaining dealer."  *Id.*; *see also In re Musical*
     *Instruments*, 798 F.3d at 1195 (affirming dismissal of Section 1 claim where plaintiff based the
28   complaint on allegations that manufacturers were "pressured by" a common retailer to adopt a
     pricing policy that was advantageous to the retailer).

DEFENDANTS' MOTION TO DISMISS
CASE NOS. 4:23-CV-02087-HSG,
4:23-CV-02091-HSG, 4:23-CV-02093-HSG

customers no less than the price Walmart charged for Energizer Battery Products." *Copeland* Compl. ¶ 6.  Again, there are no facts pleaded to suggest an agreement.  And even accepting this conclusory allegation about Energizer's "require[ments]" as true, Energizer has every right to unilaterally choose to do business only with retailers who charge a minimum price for its battery products.  *See Colgate*, 250 U.S. at 307.  The Supreme Court long ago established "[t]he rule [in] *Colgate* that a manufacturer can declare a resale price policy and refuse to deal with pricecutters," which "is firmly entrenched in antitrust jurisprudence."  *Jeanery*, 849 F.2d at 1154; *id.* at 1159 ("[T]he manufacturer has every right to set the price at which it wants its goods resold and to terminate a dealer who undercuts that price.").  A decision to set (and enforce) a minimum price does not suggest a conspiracy, and is equally consistent with a unilateral decision by Energizer to prevent price erosion and protect its brand.  Nothing in the Complaints suggests that this conduct would not have been in Energizer's unilateral self-interest.

In short, Plaintiffs fail to allege the basic evidentiary facts to support their allegation of an agreement.  Instead, they rely on alleged conduct that is entirely consistent with everyday unilateral action by Energizer in the marketplace rather than any alleged "scheme."  Merely alleging in conclusory fashion that independent business decisions were taken pursuant to a "scheme" is not enough to make it so, even at the pleading stage.  Accordingly, the allegations in the Complaints fail to state a claim under the standards of *Twombly* and *Iqbal* and require dismissal.

### C.    Plaintiffs Fail to Adequately Allege Harm to Competition

As independent grounds for dismissal, Plaintiffs' claims should be dismissed because they fail to allege the required element of injury to competition.  *See*, *e.g.*, *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012) ("In order to state a Section 1 claim under the rule of reason, plaintiffs must plead," among other things, an agreement "which actually injures competition.").  Plaintiffs fail to adequately plead facts showing injury to competition in their alleged "market for disposable battery products" from the admittedly intrabrand (*i.e.*, Energizer-brand only) restraint.  Additionally, Plaintiffs cannot establish a harm to competition because the alleged "scheme" at most results in the same outcome that Energizer "can achieve without the aid of [Walmart]."  *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 30 (2d Cir. 2006).

1        **1.      The Rule of Reason Governs Plaintiffs' Claims**

Any alleged agreement between Energizer and Walmart should be analyzed under the rule of reason.  Antitrust law imposes "a presumption in favor of a rule-of-reason standard."  *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 726 (1988).  Courts do not depart from that standard unless a restraint has "'manifestly anticompetitive' effects" and "lack[s] … any redeeming virtue."  *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (citations omitted).  Application of the per se rule is thus only appropriate "after courts have had considerable experience with the type of restraint at issue" and if they "can predict with confidence that it would be invalidated in all or almost all instances."  *Id.* at 877-78.  That is not the case here.

The alleged two-part "scheme" relates to parties in a vertical supply relationship.  Energizer manufactures disposable batteries; Walmart buys those products and sells them at retail.  *Copeland* Compl. ¶¶ 26-27.[8]  The alleged restraint—*i.e.*, Energizer supposedly raising its wholesale prices to other customers, so that Walmart can offer the lowest retail prices—relates exclusively to this vertical relationship.  The law is clear that "[v]ertical agreements … are analyzed under the rule of reason."  *In re Musical Instruments*, 798 F.3d at 1191; *see also Pac. Steel Grp. v. Com. Metals Co.*, No. 20-CV-07683-HSG, 2021 WL 2037961, at *7 (N.D. Cal. May 21, 2021) (Gilliam, J.) ("[V]ertical restraints should nearly always be analyzed under the rule of reason.").

Plaintiffs briefly try to invoke the per se rule by claiming that Walmart also offers a private label brand of disposable batteries, and therefore "compete[s] directly and horizontally with Energizer."  *Copeland* Compl. ¶¶ 145-48.  That per se claim should be dismissed outright.  There is **no** allegation that Walmart manufactures and sells its private label batteries at wholesale, or that Energizer sells batteries at retail, and thus no allegation that Energizer and Walmart compete to sell batteries at the same level of the distribution chain.  And even if Walmart did manufacture its private label batteries, agreements between entities in a mixed vertical and horizontal relationship are subject to the rule of reason.  *Cf. Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1480-81 (9th

---

[8]      Plaintiffs allege that Energizer is a "manufacturer of disposable batteries," and do not allege that it sells batteries at retail.  *Copeland* Compl. ¶ 26.  Plaintiffs then allege that Walmart "operates thousands of retail stores in the United States," and do not allege that it manufactures batteries.  *Id.* ¶ 27.  Plaintiffs also allege several times that Walmart is a customer of Energizer.  *See, e.g.*, *id.* ¶ 3 ("Energizer and Walmart, its largest customer, agreed to a scheme . . . .").

Cir. 1986), *opinion modified on denial of reh'g*, 810 F.2d 1517 (9th Cir. 1987) (rule of reason governed alleged agreement between entities in "a 'hybrid' arrangement composed of both a dual distributorship and a horizontal relationship").  The alleged restraint at issue arises out of the manufacturer-retailer relationship, and the rule of reason governs.  *See Bus. Elecs. Corp.*, 485 U.S. at 730 (whether agreement is horizontal or vertical depends on whether defendants entered the agreement as "competitors" or as "firms at different levels of distribution"); *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 986-87 (W.D. Wash. 2022) (rule of reason applied because, although Amazon and third-party sellers competed in online sales, the relevant relationship was "a vertical arrangement … involv[ing] different levels of the supply chain").

Because Plaintiffs allege rule of reason claims, they must plausibly allege "that the challenged restraint has a substantial anticompetitive effect that harms [plaintiffs] in the relevant market," and must do so by pleading either direct or indirect effects.  *See Epic Games*, 67 F.4th at 983.  A direct showing of anticompetitive harm requires facts that show "actual detrimental effects" on competition, "such as reduced output, increased prices, or decreased quality in the relevant market."  *Id*.  To plead "substantial anticompetitive effects *indirectly*, the plaintiff must [plead] that the defendant has market power and present 'some evidence that the challenged restraint harms competition.'"  *Id*. at 18 (citing *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018)).  Plaintiffs fail to make either showing.

### 2.      Plaintiffs' "Anticompetitive Effects" Allegations Do Not Plead the Requisite Injury in the Alleged Market

In near verbatim language, the three Complaints repeat the same six paragraphs in a section called "Anticompetitive Effects."  But Plaintiffs' allegations fail to plead injury to competition in their alleged relevant market.

To begin with, Plaintiffs plead a relevant market disconnected from the alleged restraint. They allege that Energizer and Duracell collectively have market power in a supposed "market for disposable battery products."  *Copeland* Compl. ¶¶ 100, 102; *see also id.* ¶ 9.  But Plaintiffs allege a restraint limited to intrabrand pricing for *Energizer* brand products only:  the scheme "inflate[d] wholesale prices *for Energizer Battery Products*," and "reduced competition on the retail level by

1   reducing price competition among retailers *who sell Energizer Battery Products*." *Id.* ¶¶ 111, 116

2   (emphases added).  The problem for Plaintiffs is that antitrust law is fundamentally concerned with

3   interbrand—not intrabrand—competition, which is why courts generally refuse to define markets

4   limited to a single brand.  *See Leegin*, 551 U.S. at 890; *Pac. Steel Grp.*, 2021 WL 2037961, at *10

5   (Gilliam, J.) ("interbrand competition" is "the primary concern of antitrust law"); *Reilly v. Apple

6   Inc.*, 578 F. Supp. 3d 1098, 1107 (N.D. Cal. 2022) (pointing out that "[s]ingle-brand markets are,

7   at a minimum, extremely rare").[9]  As a result, courts often dismiss Sherman Act claims alleging

8   harm only to intrabrand competition.  *See, e.g.*, *Brantley*, 675 F.3d at 1200 (affirming dismissal of

9   antitrust claims because, while vertical "restraints limit intrabrand competition, they may increase

10  interbrand competition").

11       Tacitly recognizing this problem, Plaintiffs try to manufacture a theory of harm to

12  competition in a broader "market for disposable battery products" from the alleged intrabrand

13  restraint, but this fails too.  First, they point to a news article stating that retail pricing for batteries

14  across brands increased during the relevant period.  *Copeland* Compl. ¶ 91.  But that says nothing

15  about the cause of price increases; many factors—such as raw material pricing and availability,

16  shipping and distribution costs, and changes in demand or business strategy, or macroeconomic

17  factors like inflation—can influence price.  Plaintiffs' vague and unsupported claims about

18  commodity price trends and "competition from disruptive technologies" (like rechargeable

19  batteries) (*see id.* ¶¶ 88-89) do not "nudge [their] claims … across the line from conceivable to

20  plausible."  *Iqbal*, 556 U.S. at 680; *see also Top Rank, Inc. v. Haymon*, No. 15-cv-4961-JFW

21  (MRWx), 2015 WL 9948936, at *8-9 (C.D. Cal. Oct. 16, 2015) (dismissing antitrust claims where

22  plaintiff "fail[ed] to allege any evidentiary facts plausibly suggesting … supracompetitive prices");

23  *Bio-Rad Labs, Inc. v. 10X Genomics, Inc.*, 483 F. Supp. 3d 38, 59 (D. Mass. 2020) ("Claiming that

24

25

---

26  [9]      *See also Reilly*, 578 F. Supp. 3d at 1107 ("The Supreme Court and Ninth Circuit have only
    found single-brand markets plausible in the context of *aftermarkets* which are 'wholly derivative
27  from and dependent on the primary market.'"); *In re Am. Express Anti-Steering Rules Antitrust
    Litig.*, 361 F. Supp. 3d 324, 343 (E.D.N.Y. 2019) ("It is an understatement to say that single-brand
28  markets are disfavored.  From nearly the inception of modern antitrust law, the Supreme Court has
    expressed skepticism of single-brand markets[.]").

DEFENDANTS' MOTION TO DISMISS
CASE NOS. 4:23-CV-02087-HSG,
4:23-CV-02091-HSG, 4:23-CV-02093-HSG

prices are supra-competitive is a legal conclusion rather than a fact, however, and must be supported by specific factual allegations").

Next, Plaintiffs allege harm in a "disposable batteries market" because the scheme "incentivize[d]" Duracell to inflate its own wholesale prices. *Copeland* Compl. ¶¶ 9-11.  But Plaintiffs do not allege any agreement between Energizer and Duracell.  Instead, they claim that, because "Walmart offered Duracell battery products at [retail] prices that would not undermine its inflated prices for Energizer Battery Products," Duracell was "deprived … of a crucial opportunity to compete with Energizer for market share based on [wholesale] price."  *Id.* ¶ 10; *see also id.* ¶¶ 11, 94-96.  In other words, the scheme supposedly "reduc[ed] Duracell's incentive to attempt to compete with Energizer on wholesale pricing."  *Id.* ¶ 106.

This theory is factually unsupported and rests on a series of remote and speculative assumptions about a causal link between the alleged conduct and Duracell's independent pricing decisions:  that Walmart's pricing at retail (a downstream market in which Duracell does not compete) impacted Duracell's wholesale pricing; that Duracell knew that Walmart would not reduce retail prices for Duracell products even if Duracell lowered its wholesale prices; that Duracell inflated its wholesale prices to its entire distribution network in response to the alleged scheme; that all retailers uniformly passed on increased wholesale prices; and that competition at the retail level for all disposable batteries would not discipline Walmart's retail prices.  Courts routinely reject such speculative theories of harm.  *See, e.g.*, *Stearns v. Select Comfort Retail Corp.*, No. 08-cv-2746 JF, 2009 WL 1635931, at *13 (N.D. Cal. June 5, 2009) ("Injuries … where causation is highly speculative are not an appropriate basis for an antitrust claim.").

Plaintiffs' theory also fails because it depends on <u>Walmart</u> having market power in the retail market for sales of batteries—which Plaintiffs do not, and cannot, allege with any facts.  Only if it had market power could Walmart control retail prices and prevent Duracell from competing with Energizer by offering lower wholesale prices to other retailers.  But Plaintiffs do not even allege a separate market for retail sales, let alone Walmart's share of that market.  Likewise, there are no allegations about Walmart's share of sales of any Duracell-branded disposable batteries, Duracell's pricing to retailers other than Walmart, or how those other retailers priced Duracell-

branded or other competing battery products at their own stores.  Without an allegation that Walmart controls Duracell's access to retail customers, Plaintiffs' theory of harm to competition in a "disposable batteries market" makes no sense.  There is nothing that prevented Duracell from lowering wholesale prices to other retailers (and other retailers from lowering retail prices for sales of Duracell batteries to their customers) to gain market share and undercut the alleged scheme.

In fact, Plaintiffs' selected recital of purported market share numbers is self-defeating.  The Complaints each include a Figure 3 to show that "Duracell has not, in fact, stolen market share in response to the Scheme." *Copeland* Compl. ¶ 96.  But what that Figure 3 shows is that Energizer took significant market share from Duracell during the alleged relevant period.  *See id.* (showing Energizer's share going from roughly 41% in 2017 to 52.4% by 2022, while Duracell's share went down from roughly 43% to 33.9% during the same period).  Such material changes in market shares undermine Plaintiffs' theory of harm to interbrand competition.  *See In re Citric Acid Litig.*, 996 F. Supp. 951, 961 (N.D. Cal. 1998), *aff'd*, 191 F.3d 1090 (9th Cir. 1999) ("It is impossible to draw an inference of conspiracy from Cargill's market share when it changed so much more than would have been allowed had it been participating in the conspiracy."); *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1318 (11th Cir. 2003) (shifts in market share between competitors undermined alleged coordination); *see also Copeland* Compl. ¶ 37 ("Energizer spends an estimated $70-80 million a year in advertising, principally to distinguish itself from Duracell, its chief rival.").  If anything, Figure 3 reflects fierce interbrand competition between Energizer and Duracell.  And that interbrand competition is exactly what the antitrust laws seek to protect.

### 3.     The Alleged Conduct Has No Unreasonable Effect on Competition

Plaintiffs' claims also fail because the alleged "scheme" would not lead to any unreasonable effect on competition.  Years ago, the Supreme Court "recognized that Congress intended to outlaw only unreasonable restraints." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). For rule of reason claims, this means there must be an "unreasonable . . . effect on competition." *E & L Consulting*, 472 F.3d at 29 (affirming dismissal of Section 1 claim based on a vertical restraint and holding "[plaintiffs'] hypothesizing of an unreasonable effect on competition fails because such a vertical arrangement provides no monopolistic benefit to [the manufacturer] that it

does not already enjoy and would not continue to enjoy if the exclusive distributorship were enjoined.").  Plaintiffs cannot meet that bar.

As the manufacturer of a trademarked product, Energizer has the right to exclude everyone and manufacture, distribute, and retail its Energizer Battery Products by itself.  Even crediting Plaintiffs' unsupported allegations that Energizer agreed to place Walmart in a favored retailer position, that vertical agreement would not lead to any effect to competition beyond what the antitrust laws already allow based on what Energizer "can achieve without the aid of [Walmart]." *Id.* at 30.  *See also Real Selling Grp. LLC v. ESN Grp., Inc.*, No. 20-cv-1468 (NRB), 2021 WL 535748, at \*5 (S.D.N.Y. Feb. 12, 2021) (denying motion to amend to add antitrust claims where the "conduct, even if true, would not have an effect on the pricing and availability of [defendant]'s products beyond what [defendant] [could] accomplish through its natural manufacturing monopoly of those products and ability to exclusively contract with preferred retailers"); *Stubhub, Inc. v. Golden State Warriors, LLC*, No. 15-cv-1436 MMC, 2015 WL 6755594, at \*4 (N.D. Cal. Nov. 5, 2015) (dismissing Sherman Act claims where the "natural monopoly every manufacturer has in the production and sale of its own product cannot be the basis for antitrust liability").[10]

The antitrust laws do not prevent a manufacturer like Energizer from contracting exclusively with one retailer and terminating all other distributors.  *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735-36 (9th Cir. 1987) ("An agreement between a manufacturer and a distributor to establish an exclusive distributorship is not, standing alone, a violation of antitrust laws, and in most circumstances does not adversely affect competition in the market."); *Kingray, Inc. v. NBA, Inc.*, 188 F. Supp. 2d 1177, 1197 (S.D. Cal 2002) (dismissing antitrust claims based on NBA's exclusive distributorship with DirecTV for NBA League Pass because "[a] manufacturer can terminate distributors and agree to an exclusive distributorship without implicating Section 1").  If Energizer can enter into an exclusive agreement with a single retailer to distribute its products without unreasonably harming competition, then it can agree with a single

---

[10]     *See also, e.g.*, *Trixler Brokerage Co. v. Ralston Purina Co.*, 505 F.2d 1045, 1051 (9th Cir. 1974) ("[A] manufacturer … has a natural monopoly over its own products, especially when the products are sold under trademark."); *E & L Consulting*, 472 F.3d at 29-30 ("The power to restrict output to maximize profit is complete in the manufacturing monopoly, and there is no additional monopoly profit to be made by creating a monopoly in the retail distribution of the product.").

retailer to provide it the best wholesale pricing available without unreasonably harming competition either.  That is because it is an alleged intrabrand restraint on wholesale sales of Energizer's own products, and there is a "long recognized right" of businesses to deal with partners of their choosing on terms of their choosing.  *Verizon Commc'ns*, 540 U.S. at 408.

Further, although characterized as a "scheme" for Energizer to raise prices to other retailers, the alleged conduct effectively amounts to a complaint that Energizer and Walmart agreed to some form of most-favored nation ("MFN") provision.  But vertical MFNs are not unlawful under the Sherman Act where, as here, the party receiving the MFN lacks market power. *See, e.g.*, *Nat'l Recycling, Inc. v. Waste Mgmt. of Mass., Inc.*, No. 03-cv-12174-NMG, 2007 WL 9797531, at *5 (D. Mass. July 2, 2007) ("WMMA's market share is alleged to be no higher than 20.5%.  As a matter of law, that percentage is insufficient evidence of market power. … The Court concludes, therefore, that as a matter of law, [plaintiff]'s claim that WMMA's MFN agreement unreasonably restrained the waste hauling market fails.").  This is because there are many recognized procompetitive benefits from intrabrand retailer terms like MFNs, including brand protection, promotional investment, and advertising.  *See Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995), *as amended on denial of reh'g* (Oct. 13, 1995) (referring to MFNs as "standard devices by which buyers try to bargain for low prices").

Plaintiffs allege that only 11.5% to 14.1% of Energizer's sales during the class period were to Walmart, and there are no allegations about Walmart's share of retail sales of Duracell-branded disposable batteries or its share of disposable batteries generally.  *Copeland* Compl. ¶¶ 44, 47. That is plainly insufficient to confer market power.  There are also scores of other retailers that sell disposable batteries that the Complaints never mention, including big box retailers (*e.g.*, Costco, Home Depot, Lowe's), online marketplaces (*e.g.*, Amazon), and grocery, convenience, and pharmacy stores.  *See Bus. Elecs. Corp.*, 485 U.S. at 727 n.2 ("Retail market power is rare, because of the usual presence of interbrand competition and other dealers."); *Pac. Steel Grp.*, 2021 WL 2037961, at *6 (Gilliam, J.) (even "a market share of somewhere between 15% and 30% does not appear to be enough to establish market power").  Finally, Plaintiffs' vague allegation that "Walmart has market power in many local 'brick and mortar' retail markets" (*Copeland* Compl. ¶

153) is conclusory, unsupported by facts, and disconnected from the alleged market for "disposable battery products." *Id.* ¶ 100.[11]

### D.    Certain Plaintiffs Lack Standing To Bring Their Claims

#### 1.    The *Copeland* Plaintiffs Cannot Bring Claims Under the Laws of States Where They Did Not Purchase Energizer Batteries

The *Copeland* Plaintiffs are 12 indirect purchasers who assert a patchwork of 44 different state-law claims arising under the laws of 33 states, Puerto Rico, and the District of Columbia. *Id.* ¶¶ 165-517.  Yet they allege no connection between themselves and 22 of those jurisdictions.[12] *See id.* ¶¶ 14-25.  Because no named plaintiff alleges he or she resides in or purchased Energizer Battery Products in these jurisdictions, 20 of their state antitrust[13] and 11 of their state consumer protection[14] claims should be dismissed for lack of standing.

#### a.    The Court Should Dismiss the *Copeland* Claims for Jurisdictions Where No Named Plaintiff Alleges Injury

A party invoking federal jurisdiction must plead Article III standing by alleging, at a minimum, three elements:  (1) injury-in-fact; (2) causation (or traceability); and (3) redressability.

---

[11]    Plaintiffs' allegations about an alternative market encompassing "disposable battery dominated lighting products" are also deficient.  Plaintiffs claim that "Energizer's power in the market for disposable batteries also gives it power over price – and hence market power – over disposable battery dominated lighting products, such as headlamps and flashlights, because disposable batteries are their largest cost component." *Id.* ¶ 103.  But Plaintiffs do not allege which products are "lighting products," who competes in the separate product markets for headlamps and flashlights (or other unidentified lighting products), or what Energizer's or Walmart's share is in any of those separate markets.

[12]    The *Copeland* Complaint fails to allege any connection between any of the named plaintiffs and the following jurisdictions: Arizona, Connecticut, Hawaii, Iowa, Idaho, Kansas, Maryland, Mississippi, North Carolina, North Dakota, Nebraska, New Mexico, Nevada, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Wisconsin, Puerto Rico, or the District of Columbia. *See id.* ¶¶ 14-25.

[13]    Count II (Arizona); Count IV (Connecticut); Count V (D.C.); Count VII (Iowa); Count VIII (Kansas); Count X (Maryland); Count XIII (Mississippi); Count XIV (Nebraska); Count XV (Nevada); Count XVI (New Hampshire); Count XVII (New Mexico); Count XIX (North Carolina); Count XX (North Dakota); Count XXI (Oregon); Count XXII (Puerto Rico); Count XXIII (Rhode Island); Count XXIV (South Dakota); Count XXV (Tennessee); Count XXVI (Utah); Count XXVIII (Wisconsin).

[14]    Count XXX (D.C); Count XXXII (Hawaii); Count XXXIII (Idaho); Count XXXVII (Nebraska); Count XXXVIII (Nevada); Count XXXIX (New Hampshire); Count XL (New Mexico); Count XLI (North Carolina); Count XLII (Rhode Island); Count XLIII (South Carolina); Count XLIV (Utah).

1    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The Ninth Circuit has followed Supreme

2    Court precedent in holding that a "'plaintiff must demonstrate standing for each claim' and 'for

3    each form of relief sought.'"  *Haro v. Sebelius*, 747 F.3d 1099, 1108 (9th Cir. 2014) (quoting

4    *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

5         In a class action, Article III standing requires that the named plaintiff "allege and show that

6    [it] personally ha[s] been injured, not that injury has been suffered by other, unidentified members

7    of the class to which [it] belong[s] and which [it] purport[s] to represent."  *Simon v. E. Ky. Welfare

8    *Rts. Org.*, 426 U.S. 26, 40 n.20 (1976); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996); *Martinez

9    *v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022).  It is the "well-established rule that standing in class

10   actions must be 'analyzed based on the allegations of personal injury by the named plaintiffs.'"

11   *Ellis v. Experian Info. Sols., Inc.*, No. 17-CV-07092-LHK, 2018 WL 3036682, at *4 (N.D. Cal.

12   June 19, 2018) (quoting *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017)).  And so "'[i]n a

13   class action, standing is satisfied if at least one named plaintiff meets the requirements.'"  *Haro*,

14   747 F.3d at 1108 (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007))).

15   And the standing question must be evaluated separately "with respect to each claim the class

16   representatives seek to bring."  *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107

17   (N.D. Cal. 2007) (citing *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)).  The *Copeland*

18   Plaintiffs, therefore, may only sue as class representatives for claims that at least one of the named

19   plaintiffs could bring on his or her own behalf in an individual action.

20        As a general matter, "a plaintiff in a putative class action lacks standing to assert claims

21   under the laws of states other than those where the plaintiff resides or was injured."  *Jones v.

22   Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908 (N.D. Cal. 2019).  Thus, the *Copeland* Plaintiffs can

23   bring a state-law claim on behalf of a class in federal court only if a named plaintiff resided or

24   purchased Energizer batteries in the jurisdiction whose laws the plaintiff seeks to invoke.  *See Los

25   Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, No. 13-cv-01180-BLF, 2014 WL

26   4774611, at *4 (N.D. Cal. Sept. 22, 2014).  Otherwise, "dismissal is appropriate with respect to

27   claims asserted under the laws of states in which no Plaintiff resides or has purchased products."

28   *Id.*; *see also In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 925 (N.D. Cal. 2015)

1    ("Consequently, at least one of the five named plaintiffs must have Article III standing for each of

2    the state law antitrust and consumer protection claims alleged in the [indirect purchaser] complaint.

3    Otherwise, the Court lacks jurisdiction over the claim and must dismiss it.").[15]

4         Accordingly, the Court should dismiss 20 of the *Copeland* Plaintiffs' antitrust claims and

5    11 of their consumer protection claims for lack of Article III standing.

6         **b.    Article III Standing Is a "Threshold Inquiry" Appropriate for
           Resolution on a Motion to Dismiss**

7

8         "Article III standing is a threshold jurisdictional question" to be resolved on a motion to

9    dismiss. *See In re Apple Processor Litig.*, No. 5:18-cv-00147-EJD, 2019 WL 3533876, at *4 (N.D.

10   Cal. Aug. 2, 2019) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)); *see also*

11   *Lee v. State of Or.*, 107 F.3d 1382, 1390 (9th Cir. 1997), *as amended* (Apr. 16, 1997) ("Standing

12   is a jurisdictional element that must be satisfied prior to class certification." (internal quotations

13   marks omitted)).  "In the class action context, there must be a named plaintiff who has standing at

14   the time a complaint is filed and at the time the class action is certified pursuant to Rule 23."

15   *Hawecker v. Sorensen*, No. 1:10-CV-00085 OWW, 2011 WL 98757, at *3 (E.D. Cal. Jan. 12,

16   2011) (citing *Sosna v. Iowa*, 419 U.S. 393, 402 (1975)).

17        Because Article III standing is a threshold issue, it should be decided now, not deferred for

18   consideration in connection with class certification.  This Court acknowledged in a previous

19   putative antitrust class action that a plaintiff's request to defer the issue of standing to class

20   certification should be rejected because "[t]he Ninth Circuit has made clear that the district courts

21   can—and usually should—resolve the issue of Article III standing at the outset of a case."  *In re*

22   *Capacitors*, 154 F. Supp. 3d at 923 (quoting *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir.

23

24   [15]  *See also Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal.
     2013) (dismissing state-law claims based on laws of states where no named plaintiff resided or
25   was injured); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009)
     ("Where, as here, a representative plaintiff is lacking for a particular state, all claims based on *that*
26   state's laws are subject to dismissal."); *In re Ditropan XL*, 529 F. Supp. 2d at 1107 (dismissing
     claims for lack of standing under laws of twenty-four states in which "none of the named plaintiffs
27   reside [ ] or are alleged to have personally purchased Ditropan XL"); *In re Graphics Processing
     Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026–27 (N.D. Cal. 2007) (dismissing for lack of
28   standing plaintiffs' antitrust and consumer claims under laws of states where "there is no named
     plaintiff from those states who has suffered injury as a result of defendants' conduct").

DEFENDANTS' MOTION TO DISMISS
CASE NOS. 4:23-CV-02087-HSG,
4:23-CV-02091-HSG, 4:23-CV-02093-HSG

2004)); *see Los Gatos Mercantile*, 2014 WL 4774611, at *3 ("The trend in the Northern District of California is to consider Article III issues at the pleading stage in antitrust cases and to dismiss claims asserted under the laws of states in which no plaintiff resides or has purchased products.").[16]

The Supreme Court's language addressing a different issue in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612 (1997), does not counsel a different result. There, in a settlement-only class action case, the Supreme Court held that a court of appeals had properly declined to reach issues of standing before vacating class certification because class certification was "logically antecedent" to standing in the class settlement context. Importantly, the parties in *Amchem* never sought to litigate their case. Rather, within a single day, the parties filed a complaint, answer, proposed settlement agreement, and joint motion for conditional class certification. After objectors to the settlement appealed the district court's certification of the class and approval of the settlement, a Third Circuit panel addressed the class-certification issues before addressing other issues, including standing, because "'the jurisdictional issues in [*Amchem*] would not exist but for the [class-action] certification.'" *Id.* at 608 (quoting *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 623 (3d Cir. 1996)) (second alteration in original).

*Amchem* and the Supreme Court's later similar decision in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), have no bearing here because the jurisdictional issues exist *regardless* of whether a class is ever certified—the issue is the Article III standing of the *named* plaintiffs to raise claims in the Complaint. *See Rivera v. Wyeth-Ayerst Lab'ys.*, 283 F.3d 315, 319 n.6 (5th Cir. 2002) (finding that class certification is not "logically antecedent" to "the standing question" because standing concerns "would exist whether [plaintiff] filed her claim alone or as part of a class; class certification did not create the jurisdictional issue"); *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522,

---

[16]    *See also In re Capacitors*, 154 F. Supp. 3d at 923-28 (deferring inquiry until class certification is "the exception to the rule," and "the strong trend in this district and in other courts is to require an in-state purchase to establish Article III standing for state antitrust and related consumer protection claims like the ones alleged in this case"); *Pardini*, 961 F. Supp. 2d at 1061 (dismissing consumer protection claims in states where named plaintiff did not have standing); *In re Flash Memory*, 643 F. Supp. 2d at 1164 ("A class cannot assert a claim on behalf of an individual that they do not represent. Where . . . a representative plaintiff is lacking for a particular state, all claims based on *that* state's laws are subject to dismissal."); *In re Apple AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008) (granting motion to dismiss plaintiffs' consumer protection claims in all jurisdictions except where the named plaintiffs resided).

531 (S.D.N.Y. 2008) ("Significant authority in this circuit has limited *Ortiz* (and *Amchem*) to the unique context of global-mass settlements. . . .  Unlike *Ortiz*, Plaintiffs' case cannot be entirely disposed of by merely addressing class certification, and accordingly the constitutional question cannot be avoided by merely addressing the question of class certification.").  The lack of Article III standing for the *Copeland* Plaintiffs' claims under the laws of the 22 "Repealer Jurisdictions" where no named plaintiff resides or purchased disposable battery products should be addressed now and cannot be deferred until class certification.

### 2. The *Schuman* Plaintiffs Also Lack Antitrust Standing

The Plaintiffs in *Schuman*—alleged purchasers of Energizer and Duracell batteries from Walmart—lack the requisite antitrust standing because their claimed injury is speculative and indirect.  To bring an action for damages under the Sherman Act, the *Schuman* Plaintiffs must have not only Article III standing but also antitrust standing, which requires that the plaintiff's claimed injury have an adequate connection to the alleged wrongful conduct.  *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 455 (9th Cir. 2021).  The *Schuman* Plaintiffs, who did not purchase any products directly from Energizer, did not pay any price that is alleged to have been inflated by the claimed conspiracy.  In attempting to nonetheless bring a federal antitrust suit, they have constructed a convoluted theory of harm that relies on a never-identified series of logical leaps, leaving Walmart and Energizer to guess at the allegations against them.  The apparent causation theory underlying the *Schuman* Complaint seems to be that as a result of the alleged agreement, through which Energizer allegedly agreed that it would raise its wholesale prices to other entities and require certain retail pricing from third parties, Walmart decided that it would charge more for Energizer (and, apparently, Duracell) batteries than it otherwise would have to its customers (including the members of the putative class).  *Schuman* Compl. ¶ 1, 3-4, 8.

This tenuous "chain of causation" on which this theory depends is too indirect and speculative to be actionable under the antitrust laws.  *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 540 (1983) ("*AGC*").  In *AGC*, the Supreme Court identified factors bearing on whether a claimed injury is remediable under the antitrust laws; most relevant here, the Court highlighted "the directness or indirectness of the asserted injury," as

well as other problems associated with indirect injuries, such as speculative harm, the risk of duplicative recovery, and complexity in apportioning damages.  *Id.*[17]  Where, as here, the alleged chain of causation "contains several somewhat vaguely defined links," any damages claim is "speculative," both because the claimed injury is indirect and "because the alleged effects on the [Plaintiff] may have been produced by independent factors."  *Id*. at 540-42.  The Supreme Court held that such "indirect" injuries raised the "same concerns" that led it to bar damages claims by indirect purchasers in *Illinois Brick*, addressed *supra* Section IV.D.1.  *See also City of Oakland*, 20 F.4th at 461 (affirming dismissal for lack of antitrust standing "in light of the indirectness of the [plaintiff's] injuries, the existence of more direct victims, the speculative measure of harm, and the difficulty in calculating damages").

The analysis in *AGC* and *City of Oakland* supports dismissal here.  To determine whether the *Schuman* Plaintiffs suffered an injury proximately caused by an agreement between Energizer and Walmart requires speculation about how Walmart responded to prices by certain retailers, as well as apportionment of any damages among not only purchasers of Energizer batteries from Energizer (*i.e.*, direct purchasers) but purchasers like the *Schuman* Plaintiffs who purchased from an entirely different distribution chain and in some cases purchased an entirely different product (*i.e.*, Duracell batteries).  Nothing in the Complaints provides a factual basis for the conclusion that the alleged agreement as to *different* sales would lead to the overcharge the *Schuman* Plaintiffs posit.  Even if those allegations existed, the Court would still need to undertake "'additional long and complicated proceedings involving massive evidence and complicated theories'" to determine whether, and to what extent, the *Schuman* Plaintiffs paid an overcharge.  *AGC*, 459 U.S. at 544.

This indirect and tenuous link is particularly stark with respect to the purchasers of Duracell batteries.  As outlined above, the Complaint lacks any factual allegations suggesting any harm to interbrand competition in the alleged relevant market:  the "market for disposable battery

---

[17]  As identified by later courts, the five *AGC* factors are "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages."  *Garabet, M.D., Inc. v. Autonomous Tech. Corp.*, 116 F. Supp. 2d 1159, 1169 (C.D. Cal. 2000).  The factors are overlapping; in *AGC* itself, the Court noted how the "indirectness of the alleged injury" could cause a "danger of complex apportionment."  *Associated Gen. Contractors*, 459 U.S. at 543-44.

products." *Schuman* Compl. ¶ 86; *supra* Section IV.C.2.

The Ninth Circuit has rejected claims at the pleading stage where similar issues of indirectness are present. In *City of Oakland*, the City sued the NFL and its teams, alleging, among other things, that the NFL and its teams limited the supply of teams and, by so doing, had driven up the price of a franchise. 20 F.4th at 451. While it concluded that the City had pled an antitrust injury, the Court held that the City had not adequately pled antitrust standing because of the indirect and speculative nature of its claimed injury. *Id.* at 458-61. Because the City was not an "actual purchaser[]" of an NFL franchise, its claimed injuries were "less direct than those of actual purchasers," who pay "supracompetitive prices." *Id.* at 459, 459 n.12. So too here; direct purchasers from Energizer should be able to plead a more direct injury than that pled by the *Schuman* Plaintiffs. Moreover, the *City of Oakland* court held that the City's allegation that, without the challenged conduct, it "would have retained the Raiders (or acquired another team)" was "too speculative to establish antitrust standing." *Id.* at 459. The Court reasoned that the "City has not alleged—and there is no way of knowing—what would have occurred in a more competitive marketplace." *Id.* Here, Walmart could have responded to the lower prices that the *Schuman* Plaintiffs speculate Energizer would have charged to third parties without the agreement by no longer purchasing Energizer batteries at all, by choosing to seek a higher margin on those batteries, or by selling at the same price the *Schuman* Plaintiffs actually paid with a possibility of selling fewer. As in *City of Oakland*, there are simply "too many speculative links in the chain of causation" between Defendants' alleged agreement about Energizer's prices to third parties and the prices the *Schuman* Plaintiffs paid to Walmart. *Id.* at 460.

Similarly, in *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 691 F.2d 1335, 1338-41 (9th Cir. 1982), the Ninth Circuit rejected a theory that purchasers from non-conspiring competitors could bring an antitrust claim for an overcharge even though the prices of the goods sold by non-conspiring competitors were set under the "price umbrella" that the conspiracy set. The court refused to permit this so-called "umbrella standing" theory because it would require the court to "speculate that plaintiffs were injured solely as the result of umbrella pricing" and "sanction complex judicial inquiry into the pricing decisions of

1   sellers remote from plaintiffs." *Id.* at 1341.  So too here; this Court could not resolve the *Schuman*

2   Plaintiffs' claim without a separate inquiry into *Duracell*'s pricing decisions, as well as Walmart's

3   purchasing decisions about products not alleged to part of any unlawful agreement.  The *Schuman*

4   Plaintiffs' theory depends on a theory that, like umbrella standing, requires speculation that a price

5   *not* itself subject of an antitrust conspiracy was raised as an indirect result of the higher prices in

6   the market.  *Petroleum Products* does not permit such a complaint to survive a pleading challenge.

7   *See also Garabet*, 116 F. Supp. 2d at 1167 (holding that the Ninth Circuit had "explicitly rejected"

8   an umbrella theory of overcharge "as creating too great a risk of speculative and/or complex

9   damages").  Dismissal of the *Schuman* Plaintiffs' claims is warranted.

10      **E.      Plaintiffs' State Antitrust and Consumer Protection Claims Fail for the Same**

11              **Reasons Their Sherman Act Claims Fail**

12           Plaintiffs' state-law claims fail for the same reasons that their federal antitrust claims fail.

13   As several courts have recognized, where federal antitrust claims are dismissed, then the "claims

14   under the antitrust laws of various states—based on the same factual allegations—fail too."  *In re*

15   *Bystolic Antitrust Litig.*, 583 F. Supp. 3d 455, 497 (S.D.N.Y. 2022) (citing *In re Tamoxifen Citrate*

16   *Antitrust Litig.*, 277 F. Supp. 2d 121, 139 (E.D.N.Y. 2003), *aff'd*, 466 F.3d 187 (2d Cir. 2006)

17   ("[S]ince Plaintiffs fail to state a claim under the Sherman Act, and since the state antitrust law

18   claims are based on the same allegations, those claims are also dismissed")); *In re Androgel*

19   *Antitrust Litig. (No. II)*, 687 F. Supp. 2d 1371, 1382 (N.D. Ga. 2010) (dismissing state law antitrust

20   claims with Sherman Act claim where "the factual allegations for both types of claims are the

21   same") (collecting authorities).  Plaintiffs acknowledge that their state antitrust law claims rely on

22   the same underlying conduct, and that those claims rise or fall with the federal Sherman Act claims.

23   *See Copeland* Compl. ¶ 164.  As a result, "Plaintiffs' state antitrust claims premised on the identical

24   actions that form the basis of the Sherman Act claims are similarly deficient."  *In re Suboxone*

25   *Antitrust Litig.*, 13-MD-2445, 2017 WL 4642285, at *12 (E.D. Pa. Oct. 17, 2017); *see also In re*

26   *German Auto. Mfrs. Antitrust Litig.*, 392 F. Supp. 3d 1059, 1073-74 (N.D. Cal. 2019) ("In addition

27   to their Sherman Act claims, the IPPs also assert that Defendants violated various state laws.  The

28   factual bases and theories of injury for these claims are the same as those for the Sherman Act

claims.  Like the Sherman Act claims, then, the state law claims are not well pled.")  This applies to all Plaintiffs' Cartwright Act claims under Cal. Bus. & Prof. Code § 16700, *et seq.*, and the other state antitrust law claims that the *Copeland* Plaintiffs allege.  *See* **Appendix A**.

The seventeen state consumer protection claims (Counts XXIX to XLV) in *Copeland* similarly fall.  *Copeland* alleges that, "[b]y reason of the conduct alleged herein, Defendants violated" the various state statutes.  *See Copeland* Compl. ¶¶ 356-517; *id.* ¶ 357 ("Defendants' above-described Scheme and conduct constitutes unfair competition, unconscionable conduct, and deceptive acts and practices in violation of the state consumer protection statutes set forth below.")  Having failed to allege any distinct conduct from the underlying antitrust allegations, *Copeland* "cannot simply enumerate a long list of state-law claims for states where they might otherwise have no available antitrust recovery and rely on the defendants and the court to sort out whether or how those laws can act as surrogates for antitrust law."  *In re Bystolic*, 583 F. Supp. 3d at 498 (quoting *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 255 (D. Conn. 2015).  As a result, the *Copeland* Plaintiffs "have not provided a basis on which these claims survive when federal antitrust claims based on the same factual foundation fail."  *Id.*  This failure applies to all Plaintiffs' claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and to the various other state consumer protection claims alleged in *Copeland*.  *See* **Appendix B**.

## V.   CONCLUSION

For these reasons, Defendants respectfully request that the Court grant this Motion and dismiss Plaintiffs' Complaints with prejudice.


Dated:  July 31, 2023                                        Respectfully submitted,

                                                            LATHAM & WATKINS LLP

                                                 By:   */s/ Christopher S. Yates*
                                                       Christopher S. Yates
                                                         *chris.yates@lw.com*
                                                       Belinda S Lee (Bar No. 199635)
                                                         *belinda.lee@lw.com*
                                                       Brendan A. McShane (Bar No. 227501)
                                                         *brendan.mcshane@lw.com*
                                                       Alicia R. Jovais (Bar No. 296172)

1

alicia.jovais@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

2

3

4

Lawrence E. Buterman (*pro hac vice*)
lawrence.buterman@lw.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1.212.906.1747

5

6

7

*Attorneys for Defendant Walmart Inc.*

8

9

GIBSON, DUNN & CRUTCHER LLP

10

By: */s/ Samuel G. Liversidge*
Theodore J. Boutrous, Jr. (Bar No. 132099)
tboutrous@gibsondunn.com
Christopher D. Dusseault (Bar No. 177557)
cdusseault@gibsondunn.com
Samuel G. Liversidge (Bar No. 180578)
sliversidge@gibsondunn.com
Jillian N. London (Bar No. 319924)
jlondon@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: +1.213.229.7000

11

12

13

14

15

16

17

Rachel S. Brass (Bar No. 219301)
rbrass@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: +1.415.393.8200

18

19

20

21

*Attorneys for Defendant Energizer
Holdings, Inc.*

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS
CASE NOS. 4:23-CV-02087-HSG,
4:23-CV-02091-HSG, 4:23-CV-02093-HSG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing

Motion to Dismiss.  Pursuant to L.R. 5-1(h)(3) regarding signatures, I, Christopher S. Yates,

attest that concurrence in the filing of this document has been obtained.

Dated:  July 31, 2023                                        /s/  Christopher S. Yates
                                                                     Christopher S. Yates

DEFENDANTS' MOTION TO DISMISS
CASE NOS. 4:23-CV-02087-HSG,
4:23-CV-02091-HSG, 4:23-CV-02093-HSG