Rosemary M. Rivas (SBN 209147)
Kyla J. Gibboney (SBN 301441)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
rmr@classlawgroup.com
kjg@classlawgroup.com

Joshua P. Davis (SBN 193254)
Julie Pollock (SBN 346081)
**BERGER MONTAGUE PC**
505 Montgomery St., Ste. 625
Telephone: (800) 424-6690
jdavis@bm.net
jpollock@bm.net

*Counsel for Plaintiffs Portable Power, Inc.,*
*Kimberly Schuman, Kyle Kelley, and the*
*Proposed Direct Purchaser Classes*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| DON COPELAND, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> ENERGIZER HOLDINGS, INC., *et al.*, <br><br> Defendants. | Case No. 5:23-cv-02087-PCP <br><br> **JOINT CASE MANAGEMENT STATEMENT** |
| PORTABLE POWER, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ENERGIZER HOLDINGS, INC., *et al.*, <br><br> Defendants. | Case No. 5:23-cv-02091-PCP |

[Caption continues below]

1  KIMBERLY SCHUMAN, *et al.*,                Case No. 5:23-cv-02093-PCP

2         Plaintiffs,

3     v.

4  ENERGIZER HOLDINGS, INC., *et al.*,

5     Defendants.

Plaintiffs[1] in the above-captioned cases and Defendants Energizer Holdings, Inc. ("Energizer") and Walmart Inc. ("Walmart" and together with Energizer, "Defendants"), jointly submit this Joint Case Management Statement pursuant to this Court's Order Reassigning Case and the Standing Order for All Judges of the Northern District of California.

1.  **JURISDICTION AND SERVICE**

Plaintiffs assert that this Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 (federal question), 1332 (class action diversity jurisdiction), 1337(a) (antitrust), 15 U.S.C. § 15 (antitrust), and supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.  Defendants do not presently contest this Court's jurisdiction. There are also no issues in dispute at this time regarding personal jurisdiction or venue, and no parties remain to be served.

2.  **FACTS**

**Plaintiffs' Position:**

Energizer, the dominant disposable battery manufacturer in the United States, and Walmart, the largest retailer of disposable batteries in the United States, reached agreements that inflated both wholesale and retail prices for disposable batteries and disposable-battery-dominated lighting products (together "Battery Products") above competitive levels. Defendants' scheme (the "Scheme") had two components. First, Defendants agreed to inflate wholesale prices for Battery Products to Walmart's retail competitors. Second, Defendants agreed that Energizer would monitor and discipline Walmart's competitors that attempted to undercut Walmart's retail prices, including through Energizer's "Project Atlas" team.

---

[1] Plaintiffs are Portable Power, Inc. ("Portable Power"); Don Copeland, Joseph Murray, Carol Smith, Patrick Whitney, Phillip Hague, Denise Fotis, Roxann Doriott, Bruce Mims, Lori Ably, Timothy Brown, Peter Costas, and Mike Ballard (the "*Copeland* Plaintiffs"); and Kimberly Schuman and Kyle Kelley (the "*Schuman* Plaintiffs"). Portable Power, the *Copeland* Plaintiffs, and the *Schuman* Plaintiffs are hereinafter referred to as "Plaintiffs."

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 5:23-cv-02087-PCP; 5:23-cv-02091-PCP; 5:23-cv-02093-PCP

The price increases Defendants agreed to started in April 2018 (¶ 40)[2], and defied market dynamics such as flagging demand, innovative technologies, and shifting consumer preferences for smaller devices that rely on rechargeable batteries. ¶¶ 24-27.

For example, in November 2018, Defendants increased wholesale prices on headlamps, a Battery Product, between 50% and 85% when Walmart complained it was being undercut by online retailers such as Portable Power. ¶¶ 48-49. And in early 2019, Energizer announced an additional 8% wholesale price increase for its Energizer® Max Alkaline Batteries and Energizer® Ultimate Lithium Batteries. ¶ 53.

These wholesale price increases reduced retail competition against Walmart and enabled Walmart to increase its prices for these products to obtain supracompetitive margins. For example, Walmart's retail prices for a the 24-pack of Energizer Max Alkaline AAA batteries, one of the most popular disposable battery products, shot up in price starting in 2018. ¶ 55.



Defendants knew that Walmart customers would also pay higher retail prices for Battery Products due to the agreements they had reached. *Id.*

Defendants' price increases cannot be explained by conditions in the markets for materials used to manufacture Battery Products (¶ 72); market forces such as increased

---

[2] All "¶__" citations refer to the *Portable Power* Complaint, ECF No. 1, No. 5:23-cv-02091-PCP.

demand (¶ 73); or inflation (¶ 75). Indeed, Battery Product prices soared while consumer price indices were flat. ¶ 74.

Defendants' agreement to wholesale price increases for Battery Products was part of a broader scheme to remove competitive threats to Walmart in the Battery Products market. Defendants agreed that Energizer would monitor price disruptors and punish them by raising their wholesale prices so that they could not possibly compete with Walmart's retail prices. ¶¶ 63-65. Energizer's Project Atlas was a team devoted to this task. *Id.* Project Atlas punished and deterred Walmart's competitors from undercutting Walmart by threatening to terminate distributors who disrupted Defendants' ability to charge supracompetitive prices. ¶¶ 66-68. Although Energizer sometimes claimed it was enforcing a "minimum advertised price" policy, it admitted to Portable Power that these efforts were "1000% about Walmart." ¶¶ 68, 111.

**Defendants' Position:**

Plaintiffs' Complaints vaguely assert an unlawful agreement where none exists. They do not cite to *any* alleged communication between Walmart and Energizer. Nor do they identify a single Walmart individual who supposedly agreed with Energizer to "inflate" Energizer's wholesale prices for other battery purchasers and/or to "force" other retailers to raise their retail prices of Energizer batteries.

Energizer is a leading manufacturer of batteries and portable lighting products, anchored by its globally recognized brands including Energizer and Rayovac. Walmart is a leading in-store and online retailer, guided by its well-known "every day low price" strategy. Energizer and Walmart operate at different levels of the distribution chain: Energizer manufactures batteries and sells them at wholesale to retailers like Walmart; Walmart sells batteries at retail to consumers through its Walmart and Sam's Club stores and websites. Energizer and Walmart do not compete in any market. Instead, pursuant to their supply agreements negotiated at arms' length, Energizer and Walmart bring high-quality batteries and portable lighting products to consumers at low prices.

Energizer faces fierce competition from non-party Duracell, another leading manufacturer of batteries. This is clear from Plaintiffs' own allegations. Specifically, Figure 3 in the Complaints shows that Energizer and Duracell battled for market share during the alleged relevant period—with their respective market shares shifting throughout that period. *See Copeland* Compl. ¶ 96. That fierce competition among competing battery brands is consistent with antitrust laws' focus on *inter*brand competition (*i.e.*, competition among various brands) as opposed to *intra*brand competition (*i.e.*, competition among sellers of the same brand). Indeed, Plaintiffs allege that "Energizer spends an estimated $70-80 million per year in advertising, principally to distinguish itself from Duracell, its chief rival." *Id.* ¶ 37. Likewise, Walmart competes with scores of retailers in the sale of batteries and portable lighting products, including big box retailers (*e.g.*, Costco, Home Depot, Lowe's), online marketplaces (*e.g.*, Amazon), and grocery, convenience, and pharmacy stores. These facts do not add up to an antitrust claim.

It is also worth noting the facts that Plaintiffs fail to allege. As Defendants' Motion to Dismiss explains, Plaintiffs' Complaints lack the factual basis to support a conspiracy claim under Section 1 of the Sherman Act. Specifically, Plaintiffs fail to allege an unlawful agreement between Energizer and Walmart. The Complaints offer only legal conclusions—that certain actions resulted from agreement—without alleging facts to make that conclusion plausible. Moreover, the alleged actions are entirely consistent with rational, unilateral business conduct that does not support an inference of conspiracy. Plaintiffs thus do not allege the threshold requirement of a Section 1 claim—an illegal agreement. *See generally,* Motion to Dismiss (ECF No. 63) at 8-13.[3]

Plaintiffs also fail to allege evidentiary facts demonstrating any injury to competition

---

[3] Defendants' Motion to Dismiss was filed as ECF No. 63 on the *Copeland* docket, Case No. 5:23-cv-02087. The Motion was also filed in the *Portable Power* (ECF No. 43) and *Schuman* (ECF No. 48) actions as well. Defendants' references here are to the *Copeland* docket.

from this alleged *intra*-brand "scheme" to inflate wholesale prices only for Energizer battery products. *See id.* at 13-18. The antitrust laws are concerned with interbrand—not intrabrand—competition, and Plaintiffs' conclusory attempt to allege an effect on a market for disposable battery products from the alleged Energizer-only restraint fall far short. *See id.* at 18-21. The *Copeland* Plaintiffs also allege no facts to establish Article III standing to bring claims in 22 of the jurisdictions where they purport to assert claims because they do not allege that a named plaintiff resides or purchased Energizer batteries in those states. *See id.* at 21-25. And the *Schuman* Plaintiffs (alleged purchasers of Energizer and Duracell batteries from Walmart retail stores) lack antitrust standing because their claimed injury is impermissibly indirect, as they did not purchase goods at prices that Plaintiffs allege were agreed upon by Defendants. *See id.* at 25-28. Finally, Plaintiffs' state law antitrust and consumer protection claims, which are based on the same facts as their federal Sherman Act claims, also fail under those various states' laws. *See id.* at 28-29, Appendices A-B.

### 3. LEGAL ISSUES

**Plaintiffs' Position:**

The central issues in dispute are whether Defendants' Scheme violated federal and state antitrust laws, including Section 1 of the Sherman Act (28 U.S.C. § 1), and California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16720 et seq., as well as other "*Illinois Brick*" repealer state laws that provide a cause of action for damages to indirect purchasers. From Plaintiffs' perspective, the legal issues raised herein are as follows:

1. Whether the Scheme violates the Sherman Act or similar state laws because it is *per se* illegal;

2. Whether the Scheme, in the alternative, is unlawful under the rule of reason;

3. Whether direct and indirect purchasers were injured by the Scheme;

4. Whether the Court should certify classes of direct and indirect purchasers;

5. The appropriate measure of classwide damages for direct and indirect

purchasers; and

6.   Whether the Court should grant injunctive relief to prevent the Scheme from recurring, and, if so, what injunctive relief is appropriate.

Defendants filed motions to dismiss on July 31, 2023, that address what they believe are deficiencies in Plaintiffs' claims.

**Defendants' Position:**

Plaintiffs bring claims for violations of Section 1 of the Sherman Act (28 U.S.C. § 1), California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16720 et seq., and in the case of the *Copeland* complaint, numerous violations of state antitrust and consumer protection laws, all based on an alleged agreement between Energizer and Walmart supposedly intended to raise the prices of Energizer battery products.  From Defendants' standpoint, the issues are as follows:

1.   Whether Defendants entered into a vertical agreement to "inflate" wholesale prices to other purchasers of batteries and/or to "force" other retailers to raise their retail prices;

2.   Whether the alleged vertical agreement is unlawful under the rule of reason, including whether it causes harm to competition in the relevant market;

3.   Whether Defendants entered into a horizontal agreement that is *per se* unlawful;

4.   Whether Plaintiffs can define and establish a relevant market;

5.   Whether Plaintiffs can establish antitrust injury;

6.   Whether Plaintiffs suffered injury because of an alleged agreement between Defendants;

7.   Whether the *Copeland* Plaintiffs have standing to bring their state law antitrust and consumer protection claims;

8.   Whether the *Schuman* Plaintiffs are direct purchasers;

9.   Whether the Court should certify the proposed classes;

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 5:23-cv-02087-PCP; 5:23-cv-02091-PCP; 5:23-cv-02093-PCP

1    10. The appropriate measure of damages, if any; and

2    11. Whether injunctive relief is appropriate, and if so, what injunctive relief is

3        appropriate.

4    As explained above, Defendants filed a Motion to Dismiss on July 31, 2023 to address

5    the deficiencies in Plaintiffs' pleadings.   To the extent these cases are permitted to

6    proceed, Defendants plan to move for summary judgment on the foregoing issues.

7    **4.  <u>MOTIONS</u>**

8    On June 9, 2023, counsel for plaintiffs in the *Copeland* matter filed a motion to appoint

9    interim class counsel (ECF No. 26). Walmart opposed this motion on June 23 (ECF No.

10   37). Plaintiffs filed a reply on June 30 (ECF No. 48).

11   Defendants filed a Motion to Dismiss all Plaintiffs' Complaints on July 31, 2023 (ECF

12   No. 63, Case No. 5:23-cv-02087; ECF No. 43, Case No. 5:23-cv-02091; and ECF No. 48, Case

13   No. 5:23-cv-02093).   On September 7, 2023, a Clerk's Notice Resetting Motion Hearing

14   was entered setting the hearing date on Defendants' Motion to Dismiss for November 30,

15   2023 at 10:00 am.  (*See* ECF No. 78.)

16   Defendants also filed a Motion to Stay Discovery on August 3, 2023, which seeks a

17   stay of all disclosures and discovery pending the Court's ruling on Defendants' Motion

18   to Dismiss.  (ECF No. 66, Case No. 5:23-cv-02087; ECF No. 46, Case No. 5:23-cv-02091;

19   and ECF No. 51, Case No. 5:23-cv-02093).  The Clerk's Notice Resetting Motion Hearing

20   also set the hearing for Defendants' Motion to Stay for November 30, 2023 at 10:00 am.

21   The parties have met and conferred several times regarding a potential resolution to

22   Defendants' motion to stay and accordingly, filed several joint stipulations and proposed

23   orders requesting that the Court extend the deadline for Plaintiffs' opposition to the

24   motion until September 21, 2023.  The Court has granted these requests (e.g., ECF Nos.

25   55, 56).

26   There are no other pending motions at this time.

27   Plaintiffs also intend to file motions for class certification and will consider the

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 5:23-cv-02087-PCP; 5:23-cv-02091-PCP; 5:23-cv-02093-PCP

appropriateness of further dispositive motion practice, or motions related to the class certification proceedings.

Defendants intend to file motions for summary judgment and may file evidentiary motions related to the class certification proceedings and summary judgment motions, if necessary.

**5. <u>AMENDMENT OF PLEADINGS</u>**

Plaintiffs may seek to amend the pleadings to add additional class representatives.

**6. <u>EVIDENCE PRESERVATION</u>**

The Parties certify that their counsel have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and confirm that they met and conferred pursuant to Federal Rule of Civil Procedure 26(f) on July 17, 2023 (the "Rule 26(f) conference"). At the Rule 26(f) conference the parties discussed a number of the topics in the Northern District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information (the "Checklist"). The parties discussed numerous issues related to preservation of ESI, including the scope of preservation efforts. These discussions are ongoing.

**7. <u>DISCLOSURES</u>**

**<u>Plaintiffs' Position:</u>**

Plaintiffs believe initial disclosures should proceed as provided for in the Federal Rules, and made their initial disclosures on August 1, 2023.

**<u>Defendants' Position:</u>**

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(C), the 14-day deadline for initial disclosures does not apply because Defendants stated their objection during the Rule 26(f) conference that initial disclosures are premature and repeat their objection here. As set forth above, Defendants also filed a motion to stay all disclosures and discovery on August 3, 2023.

1

**8. DISCOVERY**

2

    a. Discovery Taken to Date

3

On July 21, 2023, Plaintiffs served their First Set of Requests for Production of

4

Documents on both Energizer and Walmart; Defendants' objections and responses are

5

due on September 26, 2023, per agreement of the parties.

6

    b. Scope of Anticipated Discovery

7

**Plaintiffs' Position:**

8

Plaintiffs anticipate discovery into at least the following: (1) Communications within

9

Energizer and Walmart, and between Energizer and Walmart, about wholesale prices to

10

be charged by Energizer, any monitoring or punishment of Walmart's competitors, and

11

retail prices to be charged by Walmart; (2) Energizer's communications with other direct

12

purchasers, including any monitoring of price and any disciplinary action taken; (3)

13

Contracts and other agreements between Walmart and Energizer; (4) Energizer's policies

14

and procedures concerning Project Atlas; (5) Energizer's policies and procedures

15

concerning setting wholesale prices, including price increases, for Battery Products; (6)

16

Energizer's prices for Battery Products, including analysis related thereto, and the

17

reasons for price increases from at least 2018 to 2023 in Battery Products; (7) Energizer's

18

policies and procedures concerning allowing retailers like Walmart to influence its

19

pricing of wholesale prices for Battery Products; (8) Walmart's policies and procedures

20

relating to the promotion and sale of Energizer batteries at Walmart and Sam's Club

21

stores; (9) the market for Battery Products and Energizer's market share of the Battery

22

Product market; (10) Energizer's revenues and financial condition from 2013 to 2017 after

23

it lost its contract with Sam's Club in 2013; (11) Defendants' antitrust compliance policies;

24

(12) transactional data from Energizer and Walmart regarding the production and sale of

25

Battery Products; (13) expert discovery on relevant markets, anticompetitive agreements

26

between manufacturers and retailers, damages, and topics related to class certification;

27

(14) the effects of Defendants' conduct on retail prices for Battery Products; and (15) any

28

other issues raised in or implicated by Defendants' motion to dismiss.

On July 21, 2023, Plaintiffs served Defendants with a document request seeking contracts between Walmart and Energizer; and policies and training materials related to Project Atlas. Plaintiffs' requests are narrowly tailored, do not require burdensome searches or production of ESI, and should proceed notwithstanding Defendants' motion to dismiss.

**Defendants' Position:**

As explained in Defendants' Motion to Dismiss, this case rests on implausible claims that warrant dismissal with prejudice, and discovery should be stayed pending resolution of Defendants' Motion to Dismiss. Plaintiffs' above list of 15 very broad topics for discovery underscores the need for a stay in this case. Beginning discovery prior to the resolution of Defendants' Motion to Dismiss would place the parties at risk of accruing unnecessary expenses from costly discovery into claims and issues that this Court may ultimately dismiss. After serving their first sets of Request for Production on Defendants, Plaintiffs stated that these document requests were "all Plaintiffs plan to serve in the near future (the next few months)." However, Plaintiffs stated that they "may need to serve additional discovery to start the process of negotiating further discovery" depending on how long Defendants' Motion to Dismiss is pending.

For these reasons, and those set forth more fully in Defendants' Motion to Stay Discovery, the Court should stay all disclosures and discovery until after it has resolved Defendants' pending Motion to Dismiss. Further, in order to advance the cases should the Court deny any portion of Defendants' Motion to Dismiss, Defendants have already agreed with Plaintiffs to negotiate a stipulated Protective Order and ESI protocol.

c. Limitations or Modifications of Discovery Rules

The Parties jointly propose to meet and confer about this and any other modifications of discovery rules at the appropriate time.

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 5:23-cv-02087-PCP; 5:23-cv-02091-PCP; 5:23-cv-02093-PCP

**Plaintiffs' Position:**

Plaintiffs anticipate that this case will require them to take more than the presumptive limit of 10 depositions under Rule 30(a).

**Defendants' Position:**

Given that the Court may dismiss some or all of Plaintiffs' claims in whole or in part, Defendants believe it is premature to take a position on specific modifications of the discovery rules, including the presumptive deposition limit.

      d.  <u>Entry of an E-Discovery Order</u>

The Parties discussed at the Rule 26(f) Conference agreeing to an appropriate e-Discovery order/ESI protocol at the appropriate time.

      e.  <u>Proposed Discovery Plan</u>

The Parties do not propose a discovery schedule, as they have opposing views on whether discovery is appropriate prior to resolution of Defendants' motion to dismiss.

      f.  <u>Identified Discovery Disputes</u>

The Parties disagree whether initial disclosures and any discovery is appropriate prior to resolution of Defendants' motion to dismiss.

**9.  <u>CLASS ACTIONS</u>**

The parties have read the Procedural Guidance for Class Action Settlements.

**Plaintiffs' Position**

Plaintiffs have brought their respective cases on behalf themselves and proposed classes defined as follows:

**Direct Purchasers**

<u>California Class</u>:

All persons and entities that purchased Energizer Battery Products directly from Energizer in California from January 1, 2018 until the anticompetitive effects of Defendants' challenged conduct cease.

National Class:

All persons and entities that purchased Energizer Battery Products directly from Energizer in the United States from January 1, 2018 until the anticompetitive effects of Defendants' challenged conduct cease.

Retail California Class:

All persons who purchased Energizer or Duracell Battery Products directly from a Walmart brick-and-mortar store in California from January 1, 2018 until the anticompetitive effects of Defendants' challenged conduct cease, and who did not use the Walmart Plus Program when making their purchases.

Retail National Class:

All persons who purchased Energizer or Duracell Battery Products, directly from a Walmart brick-and-mortar store in the United States from January 1, 2018 until the anticompetitive effects of Defendants' challenged conduct cease, and who did not use the Walmart Plus Program when making their purchases

**Indirect Purchasers**

All persons and entities in Repealer Jurisdictions[4] who indirectly purchased Energizer Battery Products for their own use and not for resale, at any time during the period from January 1, 2018 until the anticompetitive effects of Defendants' challenged conduct cease.

Plaintiffs propose that the Court resolve Plaintiffs' motions for class certification after the parties have completed fact and expert discovery, including all merits expert reports.

These actions meet the prerequisites of Federal Rule of Civil Procedure 23(a):

-   *Numerosity*: While the exact number is unknown to Plaintiffs at this time, they

---

[4] According to Plaintiffs, a Repealer Jurisdiction is a state or district that has repealed the bar on indirect purchaser plaintiffs recovering under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), and includes the following: Arizona, California, Connecticut, District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

estimate the total number of class members to be at least in the hundreds, if not in the hundreds of thousands, for each of the identified classes above. The identity of Class members is readily ascertainable from Defendants' records and by documents (such as credit card statements, bank records, and receipts) in the possession of putative class members.

- *Typicality*: Plaintiffs' claims are typical of those of their respective classes because they arise from the same Scheme and seek redress based on the same legal and remedial theories.

- *Adequacy*: Plaintiffs will fairly and adequately represent the interests of the proposed classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other class members. Plaintiffs are represented by attorneys experienced in the prosecution of class action litigation generally, and in antitrust litigation specifically, who will vigorously prosecute this action on behalf of both Plaintiffs and the proposed classes.

- *Commonality*: There are a multitude of law and fact common to the proposed class, including but not limited to whether (a) Defendants entered into agreements to fix or inflate the prices of Battery Products, (b) Defendants agreed to reduce or suppress competition in the market for Battery Products, (c) the agreements are per se illegal, and (d) in the alternative, the agreements violate the Rule of Reason; (3) absent the Scheme, prices of Battery Products would have been lower.

Plaintiffs further contend that these actions are maintainable as a class action as set forth in paragraphs (b)(2) and (b)(3) of Federal Rule of Civil Procedure 23.

- *Appropriateness of Class-wide Injunctive Relief*: Defendants has acted or refused to act on grounds generally applicable to the proposed class, making injunctive relief and corresponding declaratory relief appropriate with respect to the proposed class as a whole.

- *Superiority*: A class action will permit numerous similarly situated persons to

prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort, or expense. A class action will provide injured persons a method for obtaining redress on claims that could not practicably be pursued individually. Plaintiffs know of no manageability or other issue that would preclude maintenance of this case as a class action.

**Defendants' Position:**

Defendants dispute that Plaintiffs can certify any class in these cases pursuant to Rule 23 of the Federal Rules of Civil Procedure and will oppose Plaintiffs' motions for class certification. This case should not proceed on a class basis.

In addition, although Defendants believe that discussion of a case schedule is premature pending resolution of their Motion to Dismiss (*see* Section 16 below), Defendants disagree with Plaintiffs' proposal to brief class certification "after the parties have completed fact and expert discovery, including all merits expert reports." Plaintiffs' proposal would have the parties serve their Rule 26 expert reports on the merits—which will address liability, causation, and damages—prior to a ruling by this Court on Plaintiffs' motions for class certification. That sequencing makes no sense and is contrary to Rule 23's instruction that courts must decide whether to certify an action as a class action "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). Rather, consistent with typical practice in antitrust cases, Defendants believe that any ultimate case schedule should be sequenced so that briefing and a decision on class certification occurs first, prior to exchange of expert reports on the merits. That straightforward approach affords the Parties and their experts the benefit of this Court's ruling on class certification, including whether any class will be certified, who may be in that class, whether there are subclasses, etc., prior to having their experts submit final reports on merits and damages issues— which must necessarily take into account the final class definition.

There are several practical reasons why courts regularly decide class certification before parties are required to serve final expert reports. A class certification decision

frames the scope of the class and claims, and final expert opinions cannot be drafted without knowing who is in (and who is out) of any class. For instance, an expert cannot reasonably opine on the existence or quantum of any damages without knowing the size (if any) of the class. That would lead to the scenario where the parties' experts are offering competing damages calculations for the wrong group of plaintiffs. An expert's role is to assist the jury in interpreting the facts and applying them to the claims of any class to address issues like liability and damages. Locking experts into reports and opinions without clarity on the scope of what class is at issue would serve only to confuse the jury and render the expert's opinions less useful.

Further, if the Court denies class certification (as Defendants will contend it should), then the scope of any expert reports on the merits will likely be substantially different.

**10. <u>RELATED CASES</u>**

There are currently three related cases pending before this Court. These cases are:

(1) *Copeland, et al. v. Energizer Holdings, Inc. et al.*, 5:23-cv-02087-PCP;

(2) *Portable Power, Inc. v. Energizer Holdings, Inc. et al.*, 5:23-cv-02091-PCP;

(3) *Schuman, et al. v. Energizer Holdings, Inc., et al.*, 5:23-cv-02093-PCP;

There is another action covering similar subject matter, pending in state court in Missouri.

**11. <u>RELIEF</u>**

**<u>Plaintiffs' Position:</u>**

Each of the Plaintiffs seek the same or nearly the same relief, namely that the Court:

    1. Award Plaintiffs and members of the Classes treble damages based on the overcharges they paid as a result of the Scheme, in an amount to be proven at trial, including pre- and post-judgment interest at the statutory rates.

    2. Award Plaintiffs and members of the Classes equitable relief in the nature of disgorgement, restitution, and the creation of a constructive trust to remedy Defendants' unjust enrichment.

3.  Award Plaintiffs and members of the Classes their reasonable costs and expenses, including attorneys' fees; and

4.  Award all other legal or equitable relief as the Court deems just and proper.

Plaintiffs seek to recover all damages flowing from the Scheme, including at least overcharges paid for Battery Products.  The amount and calculation of such damages will be calculated by Plaintiffs' experts following discovery.

**Defendants' Position:**

Defendants dispute that Plaintiffs are entitled to any relief and reserve all their defenses to liability and damages.

**12. <u>SETTLEMENT AND ADR</u>**

As indicated in their ADR certifications, the Parties prefer to discuss ADR selection and any related schedule with the Court at the initial case management conference.

**13. <u>OTHER REFERENCES</u>**

At this time, the Parties do not believe these cases are suitable for arbitration, reference to a special master, or the Judicial Panel on Multidistrict Litigation.

**14. <u>NARROWING OF ISSUES</u>**

Issues raised in Defendants' Motion to Dismiss, filed on July 31, 2023, raise threshold legal questions that will need to be resolved.  The Parties agree that discussions regarding how resolution of these issues may be expedited will be more productive after briefing on Defendants' Motion to Dismiss is complete.

**15. <u>EXPEDITED TRIAL PROCEDURE</u>**

The Parties do not believe these cases are of the type to be handled under the Expedited Trial Procedure of General Order 64, Attachment A.

**16. <u>SCHEDULING</u>**

Due to competing obligations of Plaintiffs' counsel on November 30, 2023, the parties have agreed to request that the Court continue the hearing on Defendants' motions to dismiss and to stay discovery to December 7, 2023, or as soon thereafter as the motions

may be heard.  The parties have also agreed to request that the Court extend the briefing deadlines for Defendants' motion to dismiss to September 21, 2023 (for Plaintiffs' opposition) and October 26, 2023 (for Defendants' reply), in light of an unexpected medical situation affecting Plaintiffs' counsel's family.

In addition, in light of Defendants' pending motion to dismiss, the parties have agreed to request that the Court set the initial case management conference for January 11, 2024, which is "the first available date falling no earlier than 21 days after the hearing on [Defendants' Motion to Dismiss]."  *See* Standing Order for Civil Cases, Section VI ("Case Management Conferences").[5]

**Plaintiffs' Position**:

The Parties have exchanged their respective proposals concerning scheduling and will be prepared to discuss their differences of views, if any remain, at the initial case management conference.

**Defendants' Position**:

Defendants believe that a case schedule should not be set until after a ruling on Defendants' Motion to Stay Discovery and Motion to Dismiss.  The parties will be in a better position to present to the Court an appropriate case schedule once those motions are resolved.

**17. TRIAL**

Plaintiffs have all demanded a jury trial and will seek to have their claims tried before a jury or juries.  The parties do not currently have a proposal for the length of trial proceedings.

**18. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

The Parties have all filed a "Certification of Interested Entities or Persons," as required by Civil Local Rule 3-15.

---

[5] Although December 28, 2023, is 21 days after the December 7, 2023 hearing, given the holidays, the parties jointly request that the Initial Case Management Conference be set for January 11, 2024.

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 5:23-cv-02087-PCP; 5:23-cv-02091-PCP; 5:23-cv-02093-PCP

19. **PROFESSIONAL CONDUCT**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated: September 11, 2023   Respectfully submitted,

             **GIBBS LAW GROUP LLP**

             By:  */s/ Kyla J. Gibboney*

             Rosemary M. Rivas (SBN 209147)
             Kyla J. Gibboney (SBN 301441)
             1111 Broadway, Suite 2100
             Oakland, California 94607
             Telephone: (510) 350-9700
             Facsimile: (510) 350-9701
             rmr@classlawgroup.com
             kjg@classlawgroup.com

             Todd M. Schneider (SBN 158253)
             Jason H. Kim (SBN 220279)
             Matthew S. Weiler (SBN 236052)
             **SCHNEIDER WALLACE**
             **COTTRELL KONECKY LLP**
             2000 Powell Street, Suite 1400
             Emeryville, CA 94608
             Telephone: (415) 421-7100
             TSchneider@schneiderwallace.com
             JKim@schneiderwallace.com
             MWeiler@schneiderwallace.com

             Joshua P. Davis (SBN 193254)
             Julia Pollock (SBN
             **BERGER MONTAGUE PC**
             505 Montgomery St., Ste. 625
             Telephone: (800) 424-6690
             jdavis@bm.net
             jpollack@bm.net

             Michael Dell'Angelo (*pro hac vice*)
             1818 Market St., Ste. 3600
             Philadelphia, PA 19103
             Telephone: (215) 875-3000

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 5:23-cv-02087-PCP; 5:23-cv-02091-PCP; 5:23-cv-02093-PCP

mdellangelo@bm.net

*Counsel for Plaintiffs Portable Power, Inc.,*
*Kimberly Schuman, Kyle Kelley, and the Proposed*
*Direct Purchaser Classes*

Dated: September 11, 2023

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By:    */s/ Daniel H. Silverman*

Daniel H. Silverman (*pro hac vice*)
769 Centre Street, Suite 207
Boston, MA 02130
Tel: (202) 408-4600
Fax: (202) 408-4699
dsilverman@cohenmilstein.com

Alison Deich (*pro hac vice*)
Richard Koffman (*pro hac vice*)
John Bracken (*pro hac vice*)
Leonardo Chingcuanco (SBN 308640)
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
adeich@cohenmilstein.com
rkoffman@cohenmilstein.com
jbracken@cohenmilstein.com
lchingcuanco@cohenmilstein.com

*Counsel for Plaintiffs Don Copeland, Joseph*
*Murray, Carol Smith, Patrick Whitney, Phillip*
*Hague, Denise Fotis, Roxann Doriott, Bruce Mims,*
*Lori Ably, Timothy Brown, Peter Costas, and Mike*
*Ballard and Proposed Lead Counsel for Indirect*
*Purchaser Class*

Sarah Grossman-Swenson (SBN 259792)
Kimberley C. Weber (SBN 302894)
**MCCRACKEN STEMERMAN &**
**HOLSBERRY LLP**
475 14th Street, Suite 1200
Oakland, CA 94612
(415) 597-7200

19

sgs@msh.law
kweber@msh.law

*Local Counsel for Copeland Plaintiffs*

Dated: September 11, 2023

**LATHAM & WATKINS LLP**

By:    */s/ Brendan McShane*

Christopher S. Yates (Bar No. 161273)
chris.yates@lw.com
Belinda S Lee (Bar No. 199635)
belinda.lee@lw.com
Brendan A. McShane (Bar No. 227501)
brendan.mcshane@lw.com
Alicia R. Jovais (Bar No. 296172)
alicia.jovais@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Lawrence E. Buterman (pro hac vice)
lawrence.buterman@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1747

*Counsel for Defendant Walmart Inc.*

Dated: September 11, 2023

**GIBSON, DUNN & CRUTCHER LLP**

By:    */s/ Samuel G. Liversidge*

THEODORE J. BOUTROUS, JR., SBN 132099
TBoutrous@gibsondunn.com
CHRISTOPHER D. DUSSEAULT, SBN 177557
CDusseault@gibsondunn.com
SAMUEL G. LIVERSIDGE, SBN 180578
SLiversidge@gibsondunn.com
JILLIAN N. LONDON, SBN 319924
JLondon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197

Telephone:   213.229.7000
Facsimile:   213.229.7520

RACHEL S. BRASS, SBN 219301
RBrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:   415.393.8200
Facsimile:   415.393.8306

*Counsel for Defendant Energizer Holdings, Inc.*

21

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 5:23-cv-02087-PCP; 5:23-cv-02091-PCP; 5:23-cv-02093-PCP

**ECF ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I attest that the concurrence in the filing of this document has been obtained from all other signatories.

Dated: September 11, 2023                    */s/ Kyla J. Gibboney*

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 5:23-cv-02087-PCP; 5:23-cv-02091-PCP; 5:23-cv-02093-PCP