Todd M. Schneider (SBN 158253)
Jason H. Kim (SBN 220279)
Matthew S. Weiler (SBN 236052)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
TSchneider@schneiderwallace.com
JKim@schneiderwallace.com
MWeiler@schneiderwallace.com

*Counsel for Plaintiffs Portable Power, Inc.,*
*Global Exports U.S.A., Inc., dba Micropower*
*Battery, Co., and the Proposed Classes*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PORTABLE POWER, INC., AND GLOBAL EXPORTS U.S.A., INC., dba MICROPOWER BATTERY, CO., *on behalf of themselves and those similarly situated*, | Case No. 5:23-cv-02087-PCP-SVK |
| Plaintiffs, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| ENERGIZER HOLDINGS, INC.; and WAL-MART, INC., | |
| Defendants. | |

Plaintiffs Portable Power, Inc., and Global Exports U.S.A., Inc., dba Micropower Battery, Co. (Micropower), on behalf of themselves and all others similarly situated, bring this action against Energizer Holdings, Inc. (Energizer) and Wal-Mart, Inc. (Walmart) for violating federal and California antitrust and consumer protection laws.

Plaintiffs' claims stem from agreements between Energizer, the largest manufacturer of disposable batteries sold in the United States, and Walmart, the largest retailer of disposable batteries in the United States, to inflate both wholesale and retail prices for disposable batteries and disposable-battery-dominated lighting products (together "Battery Products") above competitive levels.

## I.    INTRODUCTION

1.    Faced with a dismal market outlook for disposable batteries, Energizer and Walmart, its largest customer, agreed to a scheme (the "Scheme") to slow price decline and ensure that both companies could charge higher-than-competitive prices for Battery Products.

2.    The Scheme had two components, to which Energizer agreed under pressure from Walmart.

3.    First, Energizer agreed to inflate its wholesale prices above competitive levels for Energizer Battery Products to its direct customers other than Walmart. Direct purchasers from Energizer, like Plaintiffs, compete with Walmart in selling Energizer Battery Products at retail. The resulting wholesale price inflation enabled Walmart to elevate its retail prices for Battery Products above competitive levels. Energizer's inflated Battery-Product prices forced Plaintiffs and other retailers to charge higher prices at retail than they otherwise would have.

4.    Second, Energizer agreed to provide Walmart *additional* protection from price competition. Energizer agreed not only to inflate its wholesale prices for Battery Products, but also to require its direct purchasers to charge their retail customers no less than the price Walmart charged for Energizer Battery Products, even if Walmart prices

1  were well above the wholesale prices that the non-Walmart direct purchasers paid
2  Energizer.

3  5.     In furtherance of the second component of the Scheme, Energizer created a
4  team known internally as Project Atlas. Project Atlas policed Energizer's customers' retail
5  prices and warned retailers that tried to undersell Walmart on Energizer Battery Products
6  that they had to match or exceed Walmart's prices. If Energizer's direct purchasers
7  nevertheless charged lower prices than Walmart, Energizer would further inflate the
8  wholesale prices it charged to those direct purchasers until it was no longer economically
9  feasible for them to compete with Walmart.

10 6.     These two components—Energizer's agreement with Walmart (1) to inflate
11 its wholesale prices for its Battery Products to direct purchasers other than Walmart and
12 (2) to prevent its wholesale customers from charging retail prices below Walmart's—
13 formed the Scheme.

14 7.     The Scheme was facilitated by Energizer's power in the market for
15 disposable batteries—over 50%—and its duopolistic power with Duracell—together they
16 control about 85% of the market. In a duopolistic market, a price increase by the market
17 actor with the greatest market share—here, Energizer—will often be met by a comparable
18 price increase by the market actor with the next greatest market share—here, Duracell—
19 particularly if a dominant retailer—Walmart—limits Duracell's ability to gain market
20 share by competing on price.

21 8.     The Scheme artificially inflated Energizer's and Duracell's prices. Walmart
22 is a huge, national retail outlet for Battery Products. To support the Scheme, Walmart
23 offered Duracell Battery Products at prices that would not undermine its inflated prices
24 for Energizer Battery Products. That deprived Duracell of a crucial opportunity to
25 compete with Energizer for market share based on price. The Scheme thus decreased
26 Duracell's incentive to compete with Energizer on price and increased Duracell's
27 incentive to match Energizer's inflated prices. The result was that Energizer's and
28 Duracell's wholesale prices were higher than they would have been without the Scheme.

2
AMENDED CLASS ACTION COMPLAINT

9.      The Scheme benefited Energizer, enabling it to charge higher prices than it otherwise would have.

10.     The Scheme caused direct purchasers of Energizer Battery Products from Energizer, like Plaintiffs, to pay higher prices than they otherwise would have.

11.     Plaintiffs bring suit on behalf of themselves, and on behalf of national and California classes of direct purchasers, to recover treble the overcharges they paid and to enjoin Defendants' unlawful conduct.

## II.      THE PARTIES

12.     Plaintiff Portable Power, Inc., sells batteries from its offices in San Fernando, California. Portable Power bought Energizer Battery Products at wholesale from Energizer and sold them in retail competition with Walmart.

13.     Portable Power purchased Energizer Battery Products directly from Energizer since 2013, including during the four years preceding the filing of this lawsuit.

14.     Plaintiff Global Exports U.S.A., Inc., dba Micropower Battery, Co. (Micropower), sells batteries from its offices in Miami, Florida. Micropower bought Energizer Battery Products at wholesale from Energizer and sold them in retail competition with Walmart.

15.     Micropower purchased Energizer Battery Products directly from Energizer at all relevant times, including during the four years preceding the filing of this lawsuit.

16.     Defendant Energizer Holdings, Inc. ("Energizer") is a leading manufacturer of disposable batteries based in St. Louis, Missouri.

17.     Defendant Wal-Mart Inc. ("Walmart") is the largest company in the world by revenue and operates thousands of retail stores in the United States. Walmart is headquartered in Bentonville, Arkansas. Walmart's Corporate eCommerce division is headquartered in San Bruno, California.

## III.      JURISDICTION AND VENUE

AMENDED CLASS ACTION COMPLAINT
Case No. 5:23-cv-02087-PCP-SVK

18.    This action asserts claims under the Sherman Act, 15 U.S.C. §§ 1, 3, and California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16720 *et seq.*, and Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

19.    Venue is appropriate in this District under 28 U.S.C. § 1391 because the claims alleged in this action accrued in California, and Defendants regularly transact business in California, have maintained business offices in California, have directed their conduct towards Portable Power and other direct purchasers in California, and reside in this District.

20.    Each Defendant has transacted business, maintained substantial contacts, or committed overt acts in furtherance of the Scheme throughout California. The Scheme has been directed at persons and businesses residing in, located in, and doing business throughout California and the United States.

## IV.    DIVISIONAL ASSIGNMENT

21.    Assignment is proper to the San Francisco or Oakland Division of this District under Local Rule 3-2(c)-(e) because a substantial part of the events giving rise to Plaintiffs' claims occurred in San Mateo County. Walmart's Global eCommerce division is located in San Mateo County. A central part of the Scheme involved eliminating price disruption to Walmart's Global eCommerce platform, and Plaintiffs will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to show that much of the challenged conduct involved Walmart representatives working out of the Global eCommerce division in San Bruno, California. Under Local Rule 3-2(d), "all civil actions that arise in the counties of … San Mateo … shall be assigned to the San Francisco Division or the Oakland Division."

## V.    FACTUAL BACKGROUND

### A.    The Disposable Battery Market

22.    Disposable batteries are single-use power sources and are typically powered by alkaline or lithium. Disposable batteries come in standard sizes (e.g., AA, AAA, or 123), defined according to standards adopted by the American National

AMENDED CLASS ACTION COMPLAINT

Standards Institute or International Electrotechnical Commission. Disposable batteries are used in toys, flashlights, remote controls, smoke detectors, and some power tools. Disposable batteries are mature products that have seen little innovation in the last ten years or more.

23. The disposable batteries industry is characterized by high barriers to entry. Many disposable batteries contain cobalt, lithium, and graphite that are considered critical minerals—minerals with a high supply risk potential and for which there are no easy substitutes—by the United States Geological Survey.

24. Safety concerns and regulations impose additional barriers to entry. Disposable batteries are manufactured using metals such as mercury, lead, cadmium, and nickel. Lead and mercury are hazardous materials, and waste from battery manufacturing creates costly environmental contamination problems.

25. Advertising is another barrier to entry for new entrants into established markets like the disposable battery market. Energizer has invested hundreds of millions of dollars in advertising to build its brand. Energizer spends an estimated $70-80 million a year in advertising, principally to distinguish itself from Duracell, its chief rival. Energizer and Duracell together account for about 85% percent of total U.S. disposable battery sales, and Energizer by itself accounts for over 50% of those sales. Each company has market power.

26. The recent market outlook for disposable batteries has been bleak. The conventional wisdom is that with advances in technology, and the rising popularity of smartphones, videogames, and online games, alkaline battery use will increasingly be limited to flashlights, smoke alarms, and a few other low-tech applications.

27. High technology and advanced circuitry also increasingly produce smaller consumer devices that are powered with rechargeable or renewable power sources, further limiting disposable battery use.

28. Consumer demand for disposable batteries has also been dampened by environmental concerns. Many consumers prefer rechargeable batteries to protect the

environment, and scientific studies have concluded that the use of rechargeable batteries should be encouraged for high consumption devices such as cameras, flashlights, and electronic toys.

29.     Disposable batteries thus face a declining market outlook and have long been predicted to lose sales to renewable batteries or to be displaced by new technology in devices that do not require batteries to operate. According to a news report, "These trends—lower power consumption, better and cheaper rechargeables, new power sources—are squeezing what used to be a lucrative market. Remote controls for televisions, for example, used to be powered by batteries. Now they can be an app on a mobile phone."

**B.     Walmart's dominance in the retail market makes it a critical relationship for battery suppliers.**

30.     At the retail level for Battery Products, there is a single dominant firm, Walmart.

31.     Walmart is the only retailer that is large enough for Energizer to reference in its annual SEC filings: "Although a large percentage of our sales are attributable to a relatively small number of retail customers, in fiscal year 2020, only Wal-Mart Stores, Inc. accounted for ten percent or more (14.1%) of the Company's annual sales."

32.     Walmart has historically been a large part of Energizer's revenues.

33.     In 2013, Energizer lost an exclusive contract with Walmart to supply batteries to Walmart's discount chain, Sam's Club.

34.     The effect that losing the contract had on Energizer's sales illustrates Walmart's dominance as a retailer and its importance to Energizer as a client.

35.     As the below table illustrates, the year before losing the contract, Walmart purchases constituted 20% of Energizer's overall sales. Just one year later, that percentage dropped to 13.3%, and the next, to 8.5%.

| Fiscal Year | % Sales to Walmart |
|---|---|

AMENDED CLASS ACTION COMPLAINT
Case No. 5:23-cv-02087-PCP-SVK

| 2012 | 20.0 |
|------|------|
| 2013 | 13.3 |
| 2014 | 8.5 |
| 2015 | 10.0 |
| 2016 | 10.4 |
| 2017 | 12.1 |
| 2018 | 11.5 |
| 2019 | 13.8 |
| 2020 | 14.1 |
| 2021 | 13.7 |

36.     The drops in sales to Walmart had corresponding effects on Energizer's bottom line: Energizer missed earnings and profit estimates in 2014 and 2015, and its share price suffered.

**C.    Energizer and Walmart agree to the Scheme.**

37.     As early as January 2018, Walmart and Energizer again agreed to a deal that would give Energizer products preferential treatment in Walmart stores, and the downward trend reversed. As illustrated above, after going as low as 8.5%, Energizer's Walmart sales rebounded to around 14% of all Energizer sales starting in 2019.

38.     Walmart and Energizer's agreement extended beyond Walmart giving Energizer Battery Products preferential treatment at its stores. Under pressure from Walmart, Energizer agreed to the Scheme, which shielded Walmart from price competition from other retail sellers of Energizer Battery Products and allowed both Walmart and Energizer to charge supracompetitive prices.

39.     The Scheme had two components. First, Energizer agreed with Walmart to artificially inflate the wholesale prices it charged to Walmart's competitors for Energizer Battery Products to prevent them from undercutting Walmart's retail prices. Second, Energizer agreed with Walmart to monitor Walmart's competitors to ensure that they did not charge lower retail prices for Energizer Battery Products than Walmart—and to discipline those that did.

AMENDED CLASS ACTION COMPLAINT

Case No. 5:23-cv-02087-PCP-SVK

40.     Energizer created a group called Project Atlas to fulfill its obligations to Walmart under the agreement. Project Atlas policed Energizer's customers' retail prices and raised wholesale prices as necessary to force Energizer's customers to maintain retail prices that did not undercut Walmart's.

**D.    Energizer and Walmart implement the Scheme.**

41.     The Scheme has been in effect from as early as January 2018 and continues to the present (the "Relevant Time Period").

42.     By April 2018, Energizer had increased its prices by over 8% from the prior year.

43.     That same year, at Walmart's behest, Energizer's Project Atlas policed Walmart's competitors' retail prices for Energizer Battery Products and disciplined Portable Power and other retailers for underselling Walmart, in furtherance of the Scheme.

44.     For example, in November 2018, Project Atlas disciplined Portable Power for its pricing of Energizer headlamps, a Battery Product sold by Walmart and, at that time, Portable Power.

45.     Acting on complaints from Walmart, Energizer raised its wholesale prices for headlamps to Portable Power to force it to raise its retail prices to match or exceed Walmart's.

46.     As explained in an internal email sent by Energizer manager Jeffrey Stoll, Energizer had received complaints from Walmart regarding "disruptive pricing on Amazon & Wal-Mart.com on headlights and specialty batteries."[1] Walmart asked Energizer what it was doing to "resolve" the issue.

47.     Mr. Stoll mentioned Portable Power by name as a driver of the "disruptive pricing."

---

[1] Wal-Mart.com, like Amazon, is a marketplace that allows third-party retailers to sell products.

AMENDED CLASS ACTION COMPLAINT
Case No. 5:23-cv-02087-PCP-SVK

48.    Mr. Stoll's email highlighted Portable Power as selling at "disruptive" prices—i.e., lower and more competitive prices—and noted the link between reining in Portable Power's retail pricing and Energizer's efforts to maintain high prices across retail distribution channels.

49.    Energizer recognized the disruption that competitors such as Portable Power would have on Walmart's business and sales of Energizer Battery Products generally. Raising prices to Portable Power and its other direct purchasers would have the effect of diminishing competition in the retail market—to the benefit of Walmart. Energizer understood that raising its wholesale prices to Portable Power and members of the Classes would increase retail prices.

50.    Energizer explained that, with headlamps as well as other Battery Products:

> [W]e are selling to Portable Power, Inc. at [wholesale] pricing that would allow them to be disruptive on e-commerce.  Anything we can do to influence pricing with Portable Power will be key to reducing the disruption in the [North American] market.

51.    To bring Portable Power's retail pricing up to the level of Walmart's, Energizer raised its wholesale prices to Portable Power for headlamps by about 50-85% for certain models, as illustrated by the below spreadsheet Energizer sent to Portable Power in November 2018:

| HDA32E.1 NA VISION HEADLIGHT | 98165982 | E300276500 | 10/01/18 | 09/30/19 | $5.00 | $7.68 | $2.68 | Increase |
|---|---|---|---|---|---|---|---|---|
| HDB32E.1 NA VISION HD HEADLIGHT | 98165982 | E300276800 | 10/01/18 | 09/30/19 | $6.00 | $9.84 | $3.84 | Increase |
| HDBIN32E.1 NA VISION HD IND HEADLGT | 98165982 | E300423100 | 10/01/18 | 09/30/19 | $6.00 | $9.84 | $3.84 | Increase |
| HDC32E.1 NA VISION HD+ HEADLIGHT | 98165982 | E300277100 | 10/01/18 | 09/30/19 | $7.00 | $13.02 | $6.02 | Increase |
| HDD32E.1 NA VISION HD+ FOCUS HEADLIG | 98165982 | E300277400 | 10/01/18 | 09/30/19 | $8.00 | $15.02 | $7.02 | Increase |
| HDDIN32E.1 VISION HD+FOCUS IND HDL | 98165982 | E300423200 | 10/01/18 | 09/30/19 | $8.00 | $15.02 | $7.02 | Increase |

52.    At that time, November 2018, Energizer's Stephanie Rice, a sales representative that worked with Portable Power, told Portable Power's CEO that Energizer was raising Portable Power's prices to align them with Energizer pricing policy. Energizer did not tell Portable Power that the price increases Energizer was imposing were because of the Scheme. (See below, § IX.B., for allegations of fraudulent concealment.)

53.     This policy was new to Portable Power, which had purchased Battery Products from Energizer for years, and represented a change in Energizer's pricing policy.

54.     Energizer also began rolling out widespread wholesale price increases for direct purchasers other than Walmart in accordance with the Scheme.

55.     For example, in the second quarter of 2019, Energizer announced an 8% price increase for its Energizer® Max Alkaline Batteries and Energizer® Ultimate Lithium Batteries.

56.     This announced price increase enabled Walmart to increase its prices for these batteries by an even greater margin: nearly 20% in the third quarter of 2019, and by nearly 40% by the first quarter of 2020.

57.     For example, in May 2019, the month before the price increase was announced, Walmart priced a 24-pack of Energizer Max Alkaline AAA batteries at $12.78. By July 2019, just two months later, Walmart had raised the price to $16.24, *a 27-percent increase*. This price change was non-transitory; the average price of this product in the 12 months before the wholesale price increase was $12.71, and the average price in the 12 months after the wholesale price increase was $16.18. Figure 1 shows the quarterly retail prices.

AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



FIGURE 1: ENERGIZER MAX ALKALINE AAA 24 PACK WALMART RETAIL PRICE

58.    Energizer continued to impose similar price hikes at regular intervals in 2020 and 2021.

59.    In September and October 2020, Energizer raised prices across its product lines by at least 10%; in April 2021, Energizer raised prices on its MAX line of batteries by at least 10%; and in June 2021, Energizer raised prices across its household battery portfolio by 11%.

60.    Energizer implemented its price increases because of its agreement with Walmart and at Walmart's behest.

61.    Energizer understood that raising its wholesale prices to its direct customers would, in turn, increase the retail prices its direct customers charged at retail. These price increases were intended to force retailers competing with Walmart in selling Energizer Battery Products to increase their retail prices up to or above Walmart's.

62.    In January 2021, Energizer again targeted Portable Power for underselling Walmart.

63.    Ms. Rice forwarded an email from Energizer's Project Atlas team to Portable Power's CEO that informed him that Portable Power was among the top-ten

AMENDED CLASS ACTION COMPLAINT

Amazon sellers "in violation" of Energizer's "pricing policies"—*i.e.*, that Portable

Power's retail prices were below the price floor Energizer had set with Walmart—for

December 2020.

64.    The email included the following chart reflecting the "top ten" violators on

Amazon (which refers to Portable Power under the name "HB Wholesale"):

### Top Amazon Sellers in Violation for December 2020

| # | SELLER | STATUS | VIOLATIONS | AVG % | ALEXA | RATINGS | LAST ACTION | DATE |
|---|--------|--------|-----------|-------|-------|---------|-------------|------|
| 1 | amazon.com | Authorized [amazon | 274 | -13.6% | 10 | N/A | New | --- |
| 2 | bestdealsupply.com | Unauthorized Indire | 127 | -19.0% | NA | N/A | Escalated Enforcement - New | 08/01/20 |
| 3 | MYBATTERYSUPPLIER [Amazon US] | Unauthorized Indire | 109 | -11.6% | NA | 379910 | Escalated Enforcement - New | 08/01/20 |
| 4 | National Deals [Amazon US] | Unauthorized Indire | 68 | -22.1% | NA | 85184 | Letter Sent - New | 12/15/20 |
| 5 | Another Day in ParadisePCB [Amazon US] | Unauthorized Indire | 34 | -12.8% | NA | 2294 | New | --- |
| 6 | Tzohar Inc [Amazon US] | Unauthorized Indire | 31 | -15.9% | NA | 1257 | Letter Sent - New | 11/20/20 |
| 7 | Quiverr [Amazon US] | Authorized | 17 | -24.6% | NA | 85647 | New | --- |
| 8 | JustCalculators [Amazon US] | Unauthorized Indire | 14 | -39.8% | NA | 46232 | Letter Sent - New | 10/20/20 |
| 9 | 718 Sold It [Amazon US] | Unauthorized Indire | 14 | -7.6% | NA | 6347 | Letter Sent - New | 12/14/20 |
| 10 | HB Wholesale [Amazon US] | Unauthorized Direc | 10 | -26.5% | NA | 48175 | New | --- |

65.    The chart shows that Energizer's Project Atlas had a system in place to

monitor and discipline its direct-purchaser retailers: it sent letters, escalated enforcement,

and as Portable Power's experience illustrates, subjected noncompliant sellers to repeated

price increases.

66.    An internal email communication from Energizer's Colby Mowery, a

member of Energizer's trade and price strategy team, to Energizer manager Brad

Sellenriek attaching the top-ten list confirmed that Energizer's Project Atlas had

contacted Portable Power because of Energizer's agreement with Walmart.

67.    Mr. Sellenriek forwarded the message to Ms. Rice and clarified that Portable

Power was being asked to raise its retail prices:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Stephanie- Please see the latest situation on [Portable Power]. Before we shut them off on these [products], let's see if he's willing [to] revise his pricing and get him off the radar.

68.    Following these messages in January 2021, Energizer increased various wholesale prices to Portable Power for Energizer Battery Products in accordance with its agreement with Walmart. Energizer also told Portable Power the minimum price it had to charge—Walmart's price—to avoid being terminated as a distributor.

69.    Energizer repeatedly warned Portable Power that if it did not increase its retail prices to match or exceed Walmart's, it would be cut off from purchasing Battery Products from Energizer.

70.    On or about February 1, 2021, Ms. Rice warned Portable Power that, because Portable Power had not raised its retail prices to match Walmart's, Energizer would stop shipping certain Energizer Battery Products to Portable Power. When Portable Power's CEO discussed Energizer's decision with Ms. Rice later that day, she admitted that Energizer had adjusted its pricing policies at Walmart's request, telling him "This is 1000% about Walmart and wanting the best price."

71.    According to Ms. Rice, Energizer inflated its wholesale prices for Energizer Battery Products to Portable Power and other wholesalers to force them to sell at or above Walmart's retail prices.

AMENDED CLASS ACTION COMPLAINT

72.    Later that month, Energizer again quoted wholesale prices to Portable Power that were based on Walmart's prices, this time for Ray-O-Vac hearing aid batteries. Ms. Rice again said that Energizer was requiring Portable Power to match a floor created by Walmart's price for these products. In an email message dated February 16, 2021, she offered Portable Power a wholesale price that would allow it a 20% markup if it matched Walmart's retail price: "If the items are priced to match the Walmart selling price minus 20% would that work for you?" Her email included the following chart:

| Rayovac Part | Description | List | Case Qty | Matrix cost | Walmart selling price | Seller | 20% | Walmart selling price minus 20% |
|---|---|---|---|---|---|---|---|---|
| 10-16 | RAYOVAC RETAIL SIZE 10 16PK | | | $8.80 | $10.81 | Walmart direct | $2.16 | $8.65 |
| 10-24 | RAYOVAC RETAIL SIZE 10 24PK | | 24 | $12.72 | $18.76 | Walmart direct | $3.75 | $15.01 |
| 10-48 | RAYOVAC RETAIL SIZE 10 48PK | | 6 | $24.48 | $29.75 | Local Battery | $5.95 | $23.80 |
| 10-8 | RAYOVAC RETAIL SIZE 10 8PK | | 24 | $4.56 | $4.99 | Walmart direct | $1.00 | $3.99 |
| 13-16 | RAYOVAC RETAIL SIZE 13 16PK | | 24 | $7.68 | $7.49 | Walmart direct | $1.50 | $5.99 |
| 13-24 | RAYOVAC RETAIL SIZE 13 24PK | | 24 | $10.80 | $9.79 | Walmart direct | $1.96 | $7.83 |
| 13-48 | RAYOVAC RETAIL SIZE 13 48PK | | 6 | $18.72 | $17.99 | DZEE Suppliers | $3.60 | $14.39 |
| 13-8 | RAYOVAC RETAIL SIZE 13 8PK | | 24 | $3.76 | $6.87 | Walmart direct | $1.37 | $5.50 |
| 312-16 | RAYOVAC RETAIL SIZE 312 16PK | | 24 | $7.68 | $7.49 | Walmart direct | $1.50 | $5.99 |
| 312-24 | RAYOVAC RETAIL SIZE 312 24PK | | 24 | $11.04 | $9.79 | Walmart direct | $1.96 | $7.83 |
| 312-48 | RAYOVAC RETAIL SIZE 312 48PK | | 6 | $21.12 | $16.89 | Walmart direct | $3.38 | $13.51 |
| 312-6 | RAYOVAC RETAIL SIZE 312 6PK | | 24 | $3.12 | $5.87 | Walmart direct | $1.17 | $4.70 |
| 312-8 | RAYOVAC RETAIL SIZE 312 8PK | | 24 | $4.00 | $6.87 | Walmart direct | $1.37 | $5.50 |
| 13-6 | Not in bid tool | $4.86 | | | $5.87 | Walmart direct | $1.17 | $4.70 |
| 13-32 | Not in bid tool | $18.88 | | | $16.97 | Walmart direct | $3.39 | $13.58 |

73.    Ms. Rice was offering a wholesale price to Portable Power that was 20% below Walmart's retail price so that Portable Power could have a sufficient markup if it set its retail prices at or above Walmart's retail prices.

**E.    Market forces cannot explain Energizer's price increases.**

74.    Energizer's price increases cannot be explained by other market forces. For example, the price of lithium was flat or declining for the periods before and after the

announced price increases. The cost of the four other commodities that make up 90% of the inputs to disposable batteries—steel, graphite, manganese, and zinc—also do not explain Energizer's price increases.

75.    Increased demand does not explain Energizer's wholesale price increases either. Energizer Battery Product prices, like disposable battery product prices generally, have been increasing in the last four or five years despite a *reduction* in demand because of competition from disruptive technologies, such as rechargeable batteries.

76.    On April 17, 2018, the *Wall Street Journal* reported that price increases at both Energizer and Duracell—together controlling about 85% of the market for Alkaline batteries—were at odds with competitive market forces: "Batteries on average cost 8.2% more than a year ago, while prices in the overall household-care segment rose only 1.8%, according to Nielsen. At a time when prices are stagnating on everything from toilet paper to diapers, such pricing power for a product that is increasingly obsolete has confounded shoppers."

77.    Nor can the price increases be explained by general inflation. Inflation was under 2% when Energizer announced its 2019 and 2020 price increases, 2.6% in March 2021 when Energizer announced its 10% price increase, and 5% in May 2021 when it announced its 11% price increase.

**F.    The scheme benefited both Walmart and Energizer to the detriment of competition in the wholesale and retail markets for Battery Products.**

78.    The Scheme benefited both Walmart and Energizer. First, Energizer agreed to inflate its wholesale prices to Walmart's competitors. That enabled Energizer to enjoy inflated prices. It also enabled Walmart to artificially inflate its retail prices for Energizer Battery Products without being undercut by other retail sellers of Energizer Battery Products.

79.    Second, Energizer agreed to prevent its direct purchasers from undercutting Walmart's retail prices. Energizer further inflated its prices to retailers, like Portable Power, that chose to compete on price, ultimately driving them out of the market

1    if they did not comply. That enabled Walmart to artificially inflate its prices by an
2    additional increment.

3         80.    The greatest potential threat to the Scheme was Duracell. It could have
4    attempted to steal market share from Energizer through pricing. But Walmart deprived
5    Duracell of the single largest opportunity to compete: Walmart stores. Walmart protected
6    its own inflated prices for Energizer Battery Products by charging similarly inflated prices
7    for Duracell Battery Products. That benefited Walmart. It also protected Energizer from
8    its greatest competitive threat. With Walmart stores unavailable for price competition,
9    Duracell had incentive to charge higher prices to its direct purchasers than it would have
10   charged in the absence of the Scheme.

11        81.    In this way, the Scheme facilitated inflated duopolistic pricing and vice-
12   versa. On one hand, the anticompetitive agreement supported higher duopolistic prices
13   than Energizer and Duracell would have otherwise charged. The Scheme distorted
14   Duracell's incentives, making it less attractive for Duracell to compete on price and more
15   attractive to match Energizer's prices. On the other hand, the duopolistic Battery Products
16   market was particularly susceptible to the Scheme. Conspiracies to artificially inflate
17   prices are more likely to succeed and more stable in markets with small numbers of
18   dominant market players.

19        82.    The graph below shows that Duracell has not, in fact, stolen market share
20   in response to the Scheme:

21
22
23
24
25
26
27
28

AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13



14    **G.    The Scheme caused and continues to cause antitrust injury to direct**
15    **purchasers from Energizer and Walmart.**

16    83.    The Scheme caused antitrust injury to both companies' direct purchasers in
17    the form of higher prices.

18    84.    Energizer's policing of its direct-purchaser retailers' prices pursuant its
19    agreement with Walmart had a market-wide effect of raising retail prices for Battery
20    Products.

21    85.    Energizer's policing also enabled Walmart to inflate its retail prices for
22    Battery Products higher than they otherwise would have been, protecting Walmart from
23    competition on price from other retailer sellers of Battery Products.

24    86.    Plaintiffs and other direct purchasers from Energizer paid higher prices at
25    wholesale for Energizer Battery Products than they otherwise would have, forcing them
26    to charge higher prices at retail. That allowed Walmart to raise the prices it charged at
27    retail. Then, Energizer's policing of its customers' retail prices allowed Walmart to charge

28

even higher prices for Energizer and Duracell Battery Products than it would have without the Scheme.

## VI.    MARKET POWER AND MARKET DEFINITION

87.    The relevant product market consists of the market for disposable battery products. There are no reasonable substitutes for disposable batteries for the vast majority of uses for which they are purchased. Rechargeable batteries are not reasonable substitutes for disposable batteries because they are much more expensive and do not hold a charge as long. This makes them an impractical choice for the types of applications for which disposable batteries are usually used, particularly applications that require low power output or infrequent power draws for a longer period of time than rechargeable batteries, such as for smoke alarms, children's toys, and remote controls.

88.    The relevant geographic market consists of the United States, and its territories, possessions, and the Commonwealth of Puerto Rico (in conjunction with the relevant product market above, the "Relevant Market").

89.    Energizer has substantial market share within the Relevant Market, controlling more than 50% of the market. Most of the rest of the market belongs to Duracell. Together with Duracell, Energizer has duopoly power, as explained above.

90.    Energizer's power in the market for disposable battery products also gives it power over price—and hence market power—over disposable-battery dominated lighting products, such as headlamps and flashlights, because disposable batteries are their largest cost component.

91.    Direct evidence establishes Defendants' combined power in the Relevant Market and over all Battery Products. That direct evidence includes Defendants' ability to profitably and sustainably inflate prices above competitive levels. It also includes: (1) Energizer's numerous large price increases since January 2018 that it implemented under its agreement with Walmart and that cannot be explained based on competitive forces; and (2) the decrease in the number of retail sellers that purchase Battery Products directly

AMENDED CLASS ACTION COMPLAINT

from Energizer even though the retail prices for those Products are inflated above competitive levels.

92.     Defendants' conduct had a significant impact on prices for Energizer and Duracell Battery Products, and has inflated Energizer's, Duracell's, and Walmart's prices above competitive levels and driven distributors off the market. Reducing competition from retail sellers reduces price competition at the retail level.

93.     As shown by Energizer's significant price inflation alleged herein, inter-brand competition did not restrain Energizer from inflating its prices. On the contrary, Energizer's agreement with Walmart reduced price competition between Energizer and Duracell by encouraging Duracell to follow Energizer's price increases and reducing Duracell's incentive to compete with Energizer on wholesale pricing. Walmart's agreement with Energizer made it easier for Duracell to observe Energizer's price changes and prevented Duracell from competing with Energizer for market share by lowering its prices to Walmart, as Walmart would not sell Duracell Battery Products at prices that would undermine the effects of the Scheme.

94.     During the Relevant Time Period, Energizer had market power in the wholesale market for Battery Products because Energizer had the power to profitably exclude competition and to inflate and maintain the prices for those products at supracompetitive levels.

95.     In January 2018, Energizer had around 40% of the U.S. market share for disposable batteries. Its market share has since grown to above 50%. Energizer's market power is enhanced by its agreement with the largest retailer in the United States, Walmart.

96.     The fact that Energizer was able to profitably inflate the prices of Energizer Battery Products shows that there are no sufficiently reasonable substitutes, and therefore that disposable battery products are a relevant market.

97.     Walmart has a dominant position with respect to both other retail outlets and manufacturers.

1

## VII.    ANTICOMPETITIVE EFFECTS

2      98.    The Scheme caused Plaintiffs and other Energizer direct purchasers to pay

3    inflated wholesale prices for Energizer Battery Products, impairing their ability to

4    compete effectively with Walmart in the retail market.

5      99.    The Scheme also enabled Walmart to charge higher prices for Energizer and

6    Duracell Battery Products to its direct purchasers than it would have charged without the

7    Scheme.

8      100.    Defendants' Scheme increased Energizer's market power by reducing

9    competition between Energizer and Duracell, augmenting Duracell's incentive to match

10    Energizer's price increases, and reducing the risk that Energizer would lose market share

11    if it inflated its prices above competitive levels.

12      101.    The Scheme enabled Energizer to implement a series of anticompetitive

13    wholesale price increases. The price increases started in 2018 and accelerated in 2020 and

14    2021. The wholesale prices Energizer charged direct purchasers increased by more than

15    30% since 2018, and the number of retail sellers of Energizer Battery Products in the

16    market decreased during that time.

17      102.    The price increases identified above cannot be adequately explained by

18    general inflation in the economy or other competitive market forces.

19      103.    The Scheme also reduced competition on the retail level by impairing

20    retailers, such as Plaintiffs, from gaining market share by offering retail prices for

21    Energizer Battery Products lower than Walmart's. As a result, the Scheme increased

22    Walmart's market power. Walmart used that market power to inflate prices above

23    competitive levels for Energizer and Duracell Battery Products. For example, Walmart

24    inflated and maintained its retail prices above competitive levels for alkaline and lithium

25    disposable batteries after Energizer inflated its wholesale price in June and July 2021, as

26    indicated in Figure 2:

27

28

AMENDED CLASS ACTION COMPLAINT

Case No. 5:23-cv-02087-PCP-SVK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIGURE 2: ENERGIZER ALKALINE AND LITHIUM PRODUCTS INDEXED WALMART RETAIL PRICE, (2020Q4 = 100)



## VIII.  STATUTES OF LIMITATIONS DO NOT BAR PLAINTIFFS' CLAIMS

### A. Continuing Violation

104.    During the Relevant Time Period, Defendants' Scheme was a continuing violation in which Defendants repeatedly invaded Plaintiffs' and proposed Class members' interests by taking overt acts in furtherance of the Scheme.

105.    Throughout the Relevant Time Period, Defendants discussed the Scheme, adjusted it to match new Walmart prices, agreed to new wholesale price increases, and repeatedly enforced their agreement against retailers who attempted to undercut Walmart's retail prices for Energizer Battery Products.

106.    Throughout the Relevant Time Period, Defendants' Scheme repeatedly injured Plaintiffs and proposed Class members by causing them to pay overcharges each time they purchased Energizer Battery Products.

AMENDED CLASS ACTION COMPLAINT
Case No. 5:23-cv-02087-PCP-SVK

**B. Fraudulent Concealment**

107.    The statute of limitations is tolled because Defendants fraudulently concealed their Scheme.

108.    Defendants actively concealed their Scheme by having Energizer offer pretextual justifications to Walmart's competitors when it raised their wholesale prices and forced them to raise their retail prices; in reality, Energizer was enforcing the terms of the Scheme.

109.    One pretext Energizer used was that retailers selling at low prices were violating Energizer's pricing policies, including a "Minimum Advertised Price" or "MAP" policy.

110.    A MAP policy is a unilateral policy a supplier enacts that prohibits retailers from advertising the supplier's products for sale below a specified, or minimum-advertised, price. Retailers that violate the MAP risk being cut off from making further purchases of the supplier's products.

111.    As early as July 2019, Energizer's Stephanie Rice told retailer Portable Power's CEO that Energizer was enforcing a MAP policy and taking actions to cut off retailers that violated that policy.

112.    But in September 2020, Portable Power's CEO received an internal Energizer email chain that revealed that Energizer did not actually have a MAP policy. In the email chain, an Energizer senior manager told an Energizer sales manager to enforce Energizer's MAP policy with Portable Power. The sales manager responded that it had been difficult to implement the MAP policy with other customers in the past, because Energizer did not consistently enforce any MAP policy. The senior manager then apologized for potentially being misleading and acknowledged that Energizer did not really have a formal MAP policy in place.

113.    Later, in a phone conversation on or about February 1, 2021, Energizer's Stephanie Rice finally revealed to Portable Power's CEO that Energizer's pricing policies were not about a MAP policy or any other pretext, but were "1000% about Walmart," and

1    that Energizer's Project Atlas was driving Energizer's wholesale prices and policing
2    Walmart's competitors' prices in accordance with the Scheme.

3        114.    Plaintiffs did not have actual or constructive knowledge of the facts
4    constituting their claim for relief before that February 1, 2021 phone conversation, and
5    did not discover, and could not have discovered through the exercise of reasonable
6    diligence, the existence of the Scheme until that time.

## IX.    CLASS ACTION ALLEGATIONS

8        115.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23
9    and seek certification of the following Classes:

10        116.    California Class:

11            *All persons and entities that purchased Energizer Battery Products directly from*
12            *Energizer in California from January 1, 2018 until the anticompetitive effects of*
13            *Defendants' challenged conduct cease.*

14        117.    National Class:

15            *All persons and entities that purchased Energizer Battery Products directly from*
16            *Energizer in the United States from January 1, 2018 until the anticompetitive*
17            *effects of Defendants' challenged conduct cease.*

18        118.    Excluded from the Classes are Defendants, their officers and directors, and
19    members of their immediate families or their legal representatives, heirs, successors, or
20    assigns and any entity in which Defendants have or had a controlling interest. Also
21    excluded is the judge presiding over this matter, the judge's staff members, and the
22    judge's and the judge's staff members' immediate families and their legal representatives,
23    heirs, successors, or assigns.

24        119.    **Numerosity.** The members of the Classes are so numerous that joinder of
25    all members is impracticable. After a reasonable opportunity for further investigation or
26    discovery, the evidence is likely to show that the Class members number in the hundreds
27    or thousands.

28

120.    **Typicality.** The claims of Plaintiffs are typical of the claims of members of the Classes, entities and persons that are similarly affected by Defendants' wrongful conduct in violation of the laws complained of herein. Plaintiffs purchased Battery Products directly from Energizer during the Relevant Time Period and were injured thereby. Plaintiffs' injuries are typical of injuries of the members of the Classes, all of which also purchased Energizer Battery Products directly from Energizer during the Relevant Time Period.

121.    The interests of Plaintiffs do not conflict with those of other members of the Classes.

122.    **Commonality.** Questions of law and fact common to the members of the proposed Classes include:

      a.    Whether Defendants agreed to the Scheme;

      b.    The nature, scope, and extent of the Scheme;

      c.    Whether retail competition for sales of Energizer and Duracell Battery Products was impaired by the Scheme;

      d.    Whether the Scheme violates the Sherman Act or the Cartwright Act because it is per se illegal;

      e.    Whether the Scheme, in the alternative, is unlawful under the rule of reason;

      f.    Whether Plaintiffs and Class members were injured by the Scheme;

      g.    The appropriate measure of classwide damages for each Class; and

      h.    Whether the Court should grant injunctive relief to prevent the Scheme from recurring, and, if so, what injunctive relief is appropriate.

123.    **Predominance.** The above common issues predominate over any issues affecting only individual Class members.

124.    **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the

AMENDED CLASS ACTION COMPLAINT
Case No. 5:23-cv-02087-PCP-SVK

1    Classes is impracticable. Furthermore, as the damages suffered by some of the individual

2    Class members is relatively small, the expense and burden of individual litigation makes

3    it impractical for members of the Classes to redress the wrongs done to them. Litigating

4    hundreds of individual cases also would inevitably lead to inconsistent rulings and

5    results, unnecessarily burden the judicial and legal system, and magnify the delay and

6    expense to all the parties.

7    X.    CAUSES OF ACTION

8    COUNT I

9    Violation of Section 1 of the Sherman Act

10   15 U.S.C. §§ 1, 3

11   Against All Defendants on Behalf of the National Class

12   125.    Plaintiffs incorporate by reference each preceding and succeeding

13   paragraph as though fully set forth herein.

14   126.    Defendants violated and continue to violate 15 U.S.C. §§ 1 and 3 by entering

15   into, furthering, and enforcing an unreasonable restraint of trade. More specifically,

16   Energizer agreed with Walmart to fix, increase, inflate, or stabilize wholesale prices of

17   Energizer Battery Products (the Scheme).

18   127.    The Scheme stifles intra-brand competition by eliminating price

19   competition from discount retailers, such as Portable Power and other direct purchasers,

20   that compete with Walmart in the retail market.

21   128.    Defendants' agreement also reduces inter-brand competition between

22   Energizer and Duracell.

23   129.    Defendants' violations of sections 1 and 3 of the Sherman Act are per se

24   illegal because Defendants are horizontal competitors who reached an agreement to fix

25   the wholesale prices of Energizer Battery Products for all direct purchasers from

26   Energizer.

27   130.    As Energizer's annual S.E.C. filings acknowledge, one factor that affects

28   Energizer's ability to compete effectively is the risk that Energizer might "lose market

share to certain retailers . . . which may offer 'private label' brands that are typically sold at lower prices and compete with the Company's products in certain categories."[2] Similarly, Energizer acknowledges that "a move by one or more of our large customers to sell significant quantities of private label products, which we do not produce on their behalf and which *directly compete with our products*, could have a material adverse effect on our business."[3]

131.    Walmart was one of these retailers that competed directly and horizontally with Energizer by offering its own private label brand of Battery Products.

132.    Therefore, the agreement between Energizer and Walmart to fix and inflate the prices paid by direct purchasers for Energizer Battery Products was a horizontal agreement between competitors.

133.    Defendants' conduct is unlawful under the rule of reason.

134.    Energizer has market power in a relevant market.

135.    The market for Battery Products is a relevant antitrust market. Disposable batteries are distinguished from rechargeable batteries based on technology, and from specialty batteries due to their specific use in powering household appliances, toys, flashlights, and other consumer electronic products.

136.    Energizer has power in the market for Battery Products. Disposable batteries are distinct from other types of batteries because they power cheaper, smaller consumer products than rechargeable batteries or other potential substitute products. Disposable batteries are routinely used in inexpensive toys, key fobs, flashlights, and calculators.

137.    Rechargeable or renewable power sources are not substitutes for disposable batteries because they are used in different devices and are more expensive.

---

[2] 2019 Energizer Form 10-K at 7.
[3] *Id.* (emphasis added).

AMENDED CLASS ACTION COMPLAINT
Case No. 5:23-cv-02087-PCP-SVK

138.    Energizer's power in the market for disposable battery products translates to power in the market for the lighting products it sells, as the dominant components in those products are disposable batteries.

139.    Energizer's market power was enhanced by the Scheme in that it is an agreement with the largest retail outlet in the United States, Walmart.

140.    Walmart has market power in the "brick-and-mortar" retail market, as it is the largest retailer in the United States.

141.    Walmart used its market power to cause Energizer to agree to limit price competition from Energizer's other direct purchasers and to discourage Duracell from competing with Energizer on wholesale prices.

142.    There is no pro-competitive justification for the Scheme. For example, Energizer Battery Products are not specialized products that require retailers to expend resources to explain their use to consumers or to maintain a skilled sales staff that is familiar with their products.

143.    The Scheme violates the rule of reason under a "quick look" analysis because its anticompetitive effects are plain and obvious.

144.    The Scheme violates the full-blown rule of reason because the agreement harms competition without providing any procompetitive benefits.

145.    As a result of the Scheme, wholesale and retail prices for Energizer and Duracell Battery Products were inflated above competitive levels in the Relevant Market.

146.    As a result of the Scheme, Plaintiffs and National-Class members have been injured in their businesses and property in that they have paid more for Energizer Battery Products than they would have paid in the absence of the Scheme.

147.    With respect to the claim under the Sherman Act, Plaintiffs and National-Class members seek injunctive relief, treble damages, and attorneys' fees and costs.

**COUNT II**

**Violation of California's Cartwright Act**

**Cal. Bus. & Prof. Code §§ 16720 et seq.**

**(Vertical Price Fixing)**

**Against All Defendants on Behalf of the California Class**

148.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

149.    The Scheme has occurred in substantial part in the State of California, Defendants all reside in the State of California, and Plaintiffs bring this claim for violation of the Cartwright Act on behalf of members of the California Class.

150.    Defendants violated and continue to violate the Cartwright Act by entering into, furthering, and enforcing an unreasonable restraint of trade. More specifically, Energizer agreed with Walmart to fix, increase, inflate, or stabilize prices of Energizer Battery Products.

151.    The Scheme caused Plaintiff Portable Power, and California-Class members to pay inflated prices for Energizer Battery Products on purchases in California.

152.    The Scheme inflated above competitive levels the wholesale prices at which Portable Power and California-Class members purchased Energizer Battery Products directly from Energizer in California.

153.    Defendants' conduct is per se unlawful under the Cartwright Act because it involves an agreement to restrain prices.

154.    As a result of Defendants' violation of the Cartwright Act, Plaintiff Portable Power and California-Class members seek treble damages and the costs of suit, including reasonable attorneys' fees. *See* Cal. Bus. & Prof. Code § 16750(a).

**COUNT III**

AMENDED CLASS ACTION COMPLAINT

Case No. 5:23-cv-02087-PCP-SVK

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200 et seq.**

**Against All Defendants on Behalf of the California Classes**

155.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

156.    Defendants violated and continue to violate California's Unfair Competition Law, which prohibits unlawful, unfair, and fraudulent business practices.

157.    Defendants' practice of artificially inflating wholesale and retail prices of Energizer Battery Products above supra-competitive levels, including through the Scheme, constitutes an unlawful and unfair business practice.

158.    Defendants' practice is unlawful in that it violates the Sherman Act, 15 U.S.C. §§ 1 and 3, and California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16720 et seq., as alleged in Counts I and II, above.

159.    Defendants' practice is unfair for at least the following reasons:

    a.  Defendants' conduct undermines or violates the stated public policies and spirit underlying the Sherman and the Cartwright Acts;

    b.  Defendants' conduct is unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff Portable Power and California-Class members; and

    c.  The gravity of harm to Plaintiff Portable Power and California-Class members from Defendants' practice far outweighs any legitimate utility of that conduct.

160.    As a direct and proximate cause of Defendants' conduct, including the Scheme, Plaintiff Portable Power and California-Class members suffered injury in fact and have lost money or property because they paid artificially inflated, supra-competitive prices to Defendants for Energizer and Duracell Battery Products.

161.    Plaintiff Portable Power and California-Class members are entitled to restitution, injunctive relief, and reasonable attorneys' fees and costs.

AMENDED CLASS ACTION COMPLAINT

Case No. 5:23-cv-02087-PCP-SVK

162.    Injunctive relief is needed because Plaintiff Portable Power and many California-Class members would like to purchase Energizer Battery Products in the future and would continue to suffer harm in the form of artificially inflated prices unless and until Defendants' unlawful and unfair practices are stopped. Restitution is an incomplete remedy that would only partially address Plaintiff Portable Power and California-Class members' grievances.

163.    Plaintiff Portable Power and California-Class members lack an adequate remedy at law to redress certain conduct of Defendants' that violates the unfair prong of the UCL.

## XI.    DEMAND FOR JUDGMENT

WHEREFORE, Plaintiffs and members of the Classes demand judgment against Defendants, as follows:

1.    Awarding Plaintiffs and members of the Classes treble damages based on the overcharges they paid as a result of the Scheme, in an amount to be proven at trial, including pre- and post-judgment interest at the statutory rates.

2.    Awarding Plaintiffs and members of the Classes equitable relief in the nature of disgorgement, restitution, and the creation of a constructive trust to remedy Defendants' unjust enrichment.

3.    Awarding Plaintiffs and members of the Classes their reasonable costs and expenses, including attorneys' fees; and

4.    Awarding all other legal or equitable relief as the Court deems just and proper.

## XII.    JURY DEMAND

Plaintiffs and members of the Classes demand a jury trial on all claims so triable under Federal Rule of Civil Procedure Rule 38(b).

DATED:  May 27, 2025             **SCHNEIDER WALLACE
                                 COTTRELL KONECKY LLP**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Matthew S. Weiler*
Todd M. Schneider (SBN 158253)
Jason H. Kim (SBN 220279)
Matthew S. Weiler (SBN 236052)
2000 Powell Street
Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
TSchneider@schneiderwallace.com
JKim@schneiderwallace.com
MWeiler@schneiderwallace.com

Joshua P. Davis (SBN 193254)
Kyla J. Gibboney (SBN 301441)
**BERGER MONTAGUE PC**
505 Montgomery St., Ste. 625
Telephone: (800) 424-6690
jdavis@bm.net
kgibboney@bm.net

Rosemary M. Rivas (SBN 209147)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
rmr@classlawgroup.com

*Counsel for Plaintiffs Portable Power, Inc., Global
Exports U.S.A., Inc., dba Micropower
Battery, Co., and the Proposed Classes*

AMENDED CLASS ACTION COMPLAINT

Case No. 5:23-cv-02087-PCP-SVK