THEODORE J. BOUTROUS JR., SBN 132099
   TBoutrous@gibsondunn.com
CHRISTOPHER D. DUSSEAULT, SBN 177557
   CDusseault@gibsondunn.com
SAMUEL G. LIVERSIDGE, SBN 180578
   SLiversidge@gibsondunn.com
SARAH M. KUSHNER, SBN 320077
   SMKushner@gibsondunn.com
COURTNEY L. SPEARS, SBN 329521
   CSpears@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:    213.229.7000
Facsimile:    213.229.7520

RACHEL S. BRASS, SBN 219301
   RBrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:    415.393.8200
Facsimile:    415.393.8306

*Attorneys for Defendant*
*ENERGIZER HOLDINGS, INC.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PORTABLE POWER, INC., AND GLOBAL EXPORTS U.S.A., INC., dba MICROPOWER BATTERY, CO., on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ENERGIZER HOLDINGS, INC.; AND WAL-MART, INC.,<br><br>Defendants. | CASE NO. 5:23-CV-02091-PCP<br><br>**REPLY IN SUPPORT OF ENERGIZER'S MOTION FOR LEAVE TO FILE AMENDED ANSWER ASSERTING COUNTERCLAIMS**<br><br>Date: December 4, 2025<br><br>Time: 10:00 a.m.<br><br>Ctrm: 8<br><br>Judge: Honorable P. Casey Pitts |

1
2

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 2

     A.    Plaintiffs Now Take A Contradictory Position From The Approach Taken In Their Own Motion For Leave To Amend ................................................... 2

     B.    Good Cause Exists To Modify The Case Schedule To Allow Energizer's Amendments ............................................................................................... 3

     C.    Plaintiffs Have Not Carried Their Burden To Establish That Leave To Amend Should Be Denied Under Rule 15(a) .............................................. 8

          1.    Plaintiffs Have Not Made A Showing Of Substantial Prejudice .................... 8

          2.    Energizer Did Not Unduly Delay In Moving To Amend ............................... 12

          3.    The Remaining Rule 15(a) Factors —Which Plaintiffs Do Not Even Argue—Do Not Provide Grounds For Denying Energizer's Motion ............ 12

     D.    Plaintiffs Do Not Contest That Mr. Petretti and Ms. Rice May Be Joined as Counter-Defendants Under Rule 13(h) ......................................................... 12

III.   CONCLUSION ................................................................................................... 12

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPLY IN SUPPORT OF ENERGIZER'S MOTION FOR LEAVE TO FILE AMENDED ANSWER
5:23-CV-02091-PCP

1

**TABLE OF AUTHORITIES**

2

Page(s)

3   **Cases**

4   *Am. Society for the Prevention of Cruelty to Animals v. Ringling Bros.*,
       244 F.R.D. 49 (D.D.C. 2007).................................................................................................11

5

6   *Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*,
       2023 WL 8420896 (N.D. Cal. Dec. 4, 2023) .................................................................2, 5, 8

7   *Bechtel v. Robinson*,
       886 F.2d 644 (3d Cir. 1989)....................................................................................................9

8

9   *DCD Programs, Ltd. v. Leighton*,
       833 F.2d 183 (9th Cir. 1987)...................................................................................................8

10  *Eagle Harbor Holdings, LLC v. Ford Motor Co.*,
       2014 WL 3362454 (W.D. Wash. July 9, 2014) ......................................................................5

11

12  *Eminence Cap., LLC v. Aspeon, Inc.*,
       316 F.3d 1048 (9th Cir. 2003)....................................................................................2, 3, 8, 12

13  *Entangled Media, LLC v. Dropbox Inc.*,
       348 F.R.D. 649 (N.D. Cal. 2025) (Pitts, J.).....................................................................1, 3, 6, 8

14

15  *Erhart v. BofI Holding, Inc.*,
       387 F. Supp. 3d 1046 (S.D. Cal. 2019) ...................................................................................6

16  *Gaston v. Exelon Corp.*,
       247 F.R.D. 75 (E.D. Pa. 2007) ..............................................................................................11

17

18  *Han v. Futurewei Techs., Inc.*,
       2011 WL 5118748 (S.D. Cal. Oct. 28, 2011) .......................................................................10

19  *Hip Hop Beverage Corp. v. RIC Representcoes Importacao*
       *e Comercio Ltda.*, 220 F.R.D. 614 (C.D. Cal. 2003) ...........................................................8

20

21  *IXYS Corp. v. Advanced Power Tech., Inc.*,
       2004 WL 135861 (N.D. Cal. Jan. 22, 2004) ...................................................................10, 11

22  *Johnson v. Hewlett-Packard Co.*,
       809 F. Supp. 2d 1114 (N.D. Cal. 2011) ..................................................................................9

23

24  *Johnson v. Mammoth Recreations, Inc.*,
       975 F.2d 604 (9th Cir. 1992)...................................................................................................3

25  *Logtale, Ltd. v. IKOR, Inc.*,
       2014 WL 1247896 (N.D. Cal. Mar. 26, 2014)......................................................................11

26

27  *Lou v. Ma Lab'ys, Inc.*,
       2013 WL 3989425 (N.D. Cal. Aug. 2, 2013)..........................................................................9

28

REPLY IN SUPPORT OF ENERGIZER'S MOTION FOR LEAVE TO FILE AMENDED ANSWER
5:23-CV-02091-PCP

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*Macias v. Cleaver*,
    2016 WL 8730687 (E.D. Cal. Apr. 8, 2016)................................................................6

*Sporting Supplies Int'l, Inc. v. Tulammo USA, Inc.*,
    2012 WL 12892310 (C.D. Cal. Mar. 5, 2012) ...........................................................12

*Storz Mgmt. Co. v. Carey*,
    2021 WL 848768 (E.D. Cal. Mar. 5, 2021) .................................................................3

*Synchronoss Techs., Inc. v. Dropbox Inc.*,
    2019 WL 95927 (N.D. Cal. Jan. 3, 2019) ....................................................................8

*Trimble Navigation Ltd. v. RHS, Inc.*,
    2007 WL 2727164 (N.D. Cal. Sept. 17, 2007) ..........................................................12

*Weingand v. Harland Fin. Sols., Inc.*,
    2012 WL 2327660 (N.D. Cal. June 19, 2012) ...........................................................10

*Williams v. Progressive Cnty. Mut. Ins. Co.*,
    2020 WL 7078888 (S.D. Cal. Dec. 3, 2020)..............................................................11

*Wizards of the Coast LLC v. Cryptozoic Ent. LLC*,
    309 F.R.D. 645 (W.D. Wash. 2015) .............................................................................9

**Rules**

Fed. R. Civ. P. 13(h) .......................................................................................................12

Fed. R. Civ. P. 20 ...........................................................................................................12

REPLY IN SUPPORT OF ENERGIZER'S MOTION FOR LEAVE TO FILE AMENDED ANSWER
5:23-CV-02091-PCP

1 | **I.     INTRODUCTION**

2           When Plaintiffs moved for leave to file an amended complaint under Rules 15 and 16 in May

3    2025—nearly eleven months after the deadline to amend pleadings—they argued that "leave to amend

4    should be freely given," ECF No. 101 at 3, and that "waiting to amend a complaint or answer until a

5    strong evidentiary basis for the amended claims has been developed is preferable to prematurely

6    asserting those claims on the basis of a limited record that may or may not support them," *id.* at 5

7    (quoting *Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649, 655 (N.D. Cal. 2025) (Pitts, J.)).

8    Now that Plaintiffs' amended complaint is on file and Energizer is the one seeking this Court's

9    permission to amend, Plaintiffs ask the Court to disregard these exact same principles and deny

10   Energizer's motion (the "Motion").  The Court should reject that invitation.

11          Portable Power waited over a year after receiving Energizer's requests for production of

12   documents—and nine months after the deadline to amend the pleadings—before producing the

13   incriminating text messages and emails at the heart of Energizer's Counterclaims.  Those documents

14   show that Portable Power's owner (Rick Petretti) and the contractor assigned to manage the Portable

15   Power account on Energizer's behalf (Stephanie Rice) conspired to steal Energizer's trade secrets and

16   privileged information and to enrich themselves and harm Energizer.  Plaintiffs now rely on their own

17   delay to claim Energizer's requested amendment is too late and would prejudice them.  These

18   arguments fail out of the gate.

19          As an initial matter, Energizer acted diligently in investigating and pursuing its Counterclaims.

20   After receiving Portable Power's incriminating documents, Energizer promptly analyzed whether they

21   supplied a factual basis for asserting any counterclaims against Portable Power, and promptly moved

22   for leave to amend once it determined they did.  ECF No. 108-1 ("Original Dusseault Decl.") ¶ 8.  Rule

23   16's standard for modifying the scheduling order requires nothing more.  Plaintiffs nonetheless argue

24   that Energizer should have searched its computer servers with Ms. Rice's emails and pieced together

25   sooner that Ms. Rice and Mr. Petretti were stealing its highly confidential and privileged information.

26   But Plaintiffs ignore that Ms. Rice and Mr. Petretti intentionally limited their most incriminating

27   communications to text messages and personal emails.  ECF No. 109-4 ("Counterclaim") ¶ 49.  None

28   of this information was in Energizer's possession at any time before it was produced by Portable Power.

REPLY IN SUPPORT OF ENERGIZER'S MOTION FOR LEAVE TO FILE AMENDED ANSWER
5:23-CV-02091-PCP

1    Plaintiffs also ignore that "having a suspicion and having sufficient information to plead are two very

2    different matters." *Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*, 2023 WL 8420896, at *9 (N.D.

3    Cal. Dec. 4, 2023) (citation modified).

4        Plaintiffs also have not carried their burden to establish that leave to amend should be denied

5    under the "extreme[ly]" liberal amendment standard of Rule 15(a)(2). *Eminence Cap., LLC v. Aspeon,*

6    *Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted).  Plaintiffs grasp for arguments of supposed

7    "prejudice," claiming variously that Energizer's Counterclaims are prejudicial because (1) Defendants

8    might use them to support an argument that Portable Power is not an appropriate class representative;

9    (2) allowing the Counterclaims to be filed at this juncture will somehow preclude Plaintiffs from

10   "testing" their "sufficiency" prior to class certification; and (3) the Counterclaims raise issues that are

11   distinct from the issues raised by Plaintiffs' antitrust claims against Energizer.  None of these arguments

12   establishes the type or level of prejudice that would warrant denial of this Motion.  And Plaintiffs point

13   to no authority that supports the notion that it is prejudicial to allow a defendant to assert counterclaims

14   against a named plaintiff in a putative class action where, as here, class discovery is ongoing and the

15   fact discovery cutoff is more than nine months away.

16       The Court should grant Energizer's Motion and allow Energizer to file its Amended Answer

17   and Counterclaims.

18   **II.    ARGUMENT**

19        By opposing Energizer's Motion, Plaintiffs ask this Court to abandon the exact same legal

20   principles that Plaintiffs touted in their May 2025 motion for leave to file an amended complaint.  The

21   Court should reject that invitation.  Energizer has established good cause to modify the case schedule

22   for purposes of Rule 16(b) under Plaintiffs' own May 2025 articulation of what constitutes "diligence"

23   in this context, ECF No. 101 at 5, and Plaintiffs have not carried their burden to show that Rule

24   15(a)(2)'s admittedly "liberal amendment standard," *id.* at 6, disfavors allowing Energizer's

25   amendments.  Lastly, the joinder of Mr. Petretti and Ms. Rice is appropriate under Rule 13(h).

26       **A.    Plaintiffs Now Take A Contradictory Position From The Approach Taken In
              Their Own Motion For Leave To Amend**

27       As Plaintiffs' counsel put it when Plaintiffs moved in May 2025—approximately eleven months

28

2

REPLY IN SUPPORT OF ENERGIZER'S MOTION FOR LEAVE TO FILE AMENDED ANSWER
5:23-CV-02091-PCP

after the June 2024 deadline to amend pleadings—for leave to name Global Exports USA Inc., dba Micropower Battery, Co. ("Micropower") as an additional plaintiff and proposed class representative: "leave shall be freely given when justice so requires."  ECF No. 101 at 6 (quoting *Eminence*, 316 F.3d at 1051).  Plaintiffs' counsel also correctly represented to this Court at that time that "waiting to amend a complaint or answer until a strong evidentiary basis for the amended claims has been developed is preferable to prematurely asserting those claims on the basis of a limited record that may or may not support them," *id.* at 5 (quoting *Entangled Media*, 348 F.R.D. at 655), and that a moving party does not "lack[] diligence by waiting to seek leave to amend until [it] [is] able to review the evidence thoroughly," *id.* (quoting *Storz Mgmt. Co. v. Carey*, 2021 WL 848768, at *2 (E.D. Cal. Mar. 5, 2021)).  Now that Energizer is the one moving for leave to amend, Plaintiffs ask this Court to disregard these principles and hold Energizer to a stricter standard than the law demands.  The Court should not do so, particularly given that Plaintiffs relied on these exact principles to justify their own request for leave to amend filed just a few months before the present Motion.

**B.    Good Cause Exists To Modify The Case Schedule To Allow Energizer's Amendments**

Energizer's Motion establishes good cause to modify the case schedule under Rule 16(b) because Energizer has acted diligently in seeking amendment after discovering the facts that form the basis of and provide compelling support for its Counterclaims.  "[T]he diligence of the party seeking the amendment" is the primary consideration under Rule 16.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); ECF No. 119 ("Opp.") at 5.  Defendants were more than diligent here.  Defendants served Requests for Production on Portable Power on April 30, 2024—three months before the deadline to amend pleadings.  Original Dusseault Decl. ¶ 6.  Portable Power then waited nearly a year before making its first document production—nearly nine months after the deadline to amend pleadings.  *Id.* ¶ 7.  Those productions included communications between Mr. Petretti and Ms. Rice—including from Ms. Rice's personal devices and personal email account—that are "smoking gun" evidence of a conspiracy.  These communications showed for the first time that Mr. Petretti "coerced and manipulated Ms. Rice, an Energizer contractor who managed his accounts, to illegally obtain confidential and privileged Energizer information for his own financial benefit, and eventually

REPLY IN SUPPORT OF ENERGIZER'S MOTION FOR LEAVE TO FILE AMENDED ANSWER
5:23-CV-02091-PCP

to support his planned lawsuit against Energizer." Counterclaim ¶ 26. This "coercion included expensive personal gifts, manipulative and unprofessional personal communications, and repeated acknowledgements that the information Mr. Petretti obtained was confidential and not generally available to the public." *Id*. These contemporaneous documents also make it impossible for Mr. Petretti and Ms. Rice to deny improper conduct that they clearly tried to conceal. Within a few months after Plaintiffs' delayed document production, and after Energizer had an opportunity to thoroughly review the production, Energizer filed its motion for leave to amend so it could pursue its Counterclaims.

Plaintiffs' primary argument in opposition is to claim that "Energizer knew or should have known all the facts that it relies on in its counterclaims years ago." Opp. at 7. They claim that "Energizer is vague about which facts are essential to the five counterclaims it proposes to add to its answer," *id*. at 6, which they use as an excuse to attack a strawman version of what they claim are the "relevant underlying facts" and when they think "Energizer knew or should have known" them, *id*. at 9. The truth is that Energizer's Counterclaims cite or reference 24 documents—16 of which contain new information unknown to Energizer until Portable Power and/or Alta Resources Corp. made document productions. Each document is described in the chart below:

| Document & Paragraph and/or Figure of Counterclaim | Bates Number(s) | Production Date(s) |
|---|---|---|
| September 2019 text exchange between Ms. Rice and Mr. Petretti (Counterclaim ¶¶ 31–32, 49 & Figure 1) | PORTABLEPOWER031565 | June 2, 2025 |
| November 2019 text from Ms. Rice (Counterclaim ¶¶ 33, 49–50 & Figure 2) | PORTABLEPOWER033394 | June 2, 2025 |
| September 2020 email from Ms. Rice's personal email account (Counterclaim ¶¶ 35–36, 49) | PORTABLEPOWER080554; PORTABLEPOWER079983 | July 17, 2025 July 3, 2025 |
| September 2020 text from Ms. Rice (Counterclaim ¶¶ 35, 49 & Figure 3) | PORTABLEPOWER047219 | June 2, 2025 |
| September 2020 email from Ms. Rice's personal email account (Counterclaim ¶ 37) | PORTABLEPOWER079968 | July 3, 2025 |
| September 2020 text exchange between Ms. Rice and Mr. Petretti (Counterclaim ¶ 37) | PORTABLEPOWER049169 | June 2, 2025 |
| September 2020 email exchange between Mr. Petretti and Ms. Rice (Counterclaim ¶¶ 38, 49) | PORTABLEPOWER047827 | June 2, 2025 |

REPLY IN SUPPORT OF ENERGIZER'S MOTION FOR LEAVE TO FILE AMENDED ANSWER
5:23-CV-02091-PCP

| September 2020 text exchange between Mr. Petretti and Ms. Rice (Counterclaim ¶ 38 & Figure 4) | PORTABLEPOWER047794 | June 2, 2025 |
| October 2020 text exchange between Mr. Petretti and Ms. Rice (Counterclaim ¶ 39) | PORTABLEPOWER049890 | June 2, 2025 |
| February 2021 email from Mr. Petretti to Amicus Capital and attachment (Counterclaim ¶¶ 40, 51) | PORTABLEPOWER080550; PORTABLEPOWER080553 | July 17, 2025 |
| February 2023 text exchange between Mr. Petretti and Ms. Rice (Counterclaim ¶¶ 41, 52) | PORTABLEPOWER021418 | May 23, 2025 |
| October 2020 email from Mr. Petretti to Amicus Capital and attachment (Counterclaim ¶ 48) | PORTABLEPOWER050793; PORTABLEPOWER050797 | June 2, 2025 |
| Counterclaim ¶ 54 | Alta Resources Corp. Response to Subpoena | October 1, 2025 |

Declaration of Christopher D. Dusseault in Support of Energizer's Reply ("Dusseault Reply Decl.") ¶¶ 2–14. All sixteen of these documents contain information wholly outside of Energizer's possession, custody, or control, such as emails from Mr. Petretti forwarding internal Energizer documents to a litigation funder, personal text messages where Mr. Petretti promises gifts to Ms. Rice for her cooperation, and emails from Ms. Rice's personal email address forwarding Energizer's internal privileged emails. *Id*. Once Plaintiffs' counsel belatedly produced these documents, Energizer promptly investigated the misconduct they revealed and filed its motion for leave. The law requires nothing more.

Rather than address the documents Energizer actually relies on in its Amended Answer and Counterclaims, Plaintiffs spend most of their brief speculating about how Energizer could have discovered Mr. Petretti and Ms. Rice's conspiracy to steal Energizer's internal records sooner. Opp. at 9–11. Plaintiffs' argument boils down to the proposition that Energizer "had access" to Ms. Rice's work emails, and *if* Energizer had reviewed all of them, it could have pieced together their misconduct. *Id*. at 13. This argument fails as a legal matter because it far exceeds the standard of diligence that applies in this Court—"having a suspicion and having sufficient information to [plead] are two very different matters." *Amarte USA*, 2023 WL 8420896, at *9 (holding that the defendant "did not have knowledge sufficient to state a counterclaim" until deposition testimony confirmed the relevant facts); *Eagle Harbor Holdings, LLC v. Ford Motor Co.*, 2014 WL 3362454, at *1 (W.D. Wash. July 9, 2014) (finding good cause under Rule 16 because even though the moving party "possessed some documents

that may have shown possible trade secret misappropriation," later discovery revealed "the facts necessary to support [that] claim"); *Macias v. Cleaver*, 2016 WL 8730687, at *4 (E.D. Cal. Apr. 8, 2016) ("Suspicions aside, discovery was needed to confirm [the] proposed amendment."); *accord Entangled Media*, 348 F.R.D. at 655.  None of the cases Plaintiffs cite contradicts this legal principle.

Plaintiffs' argument is also wholly unsupported as a factual matter.  Plaintiffs claim that Ms. Rice's personal email forwarding to Mr. Petretti a privileged Energizer email is "unimportant to . . . Energizer's counterclaims." Opp. at 13.  This remarkable claim is false.  Ms. Rice's personal email—which was completely unknown and unavailable to Energizer until Plaintiffs produced documents referencing it in July of this year—is an independent act of conversion that is a central part of the Counterclaims.  The Counterclaims allege that "in September 2020, Ms. Rice used her personal email address to forward an attorney-client privileged internal Energizer email chain discussing legal advice with Energizer's General Counsel regarding pricing policies. In a contemporaneous text thread, Ms. Rice explicitly notes that she was not allowed to send the email from her work address."  *See* Counterclaim ¶ 35.  This allegation shows the importance of Ms. Rice's personal email account, as well as the contemporaneous text messages showing this was no accidental leak, but an intentional and deliberate "wrongful act." *Erhart v. BofI Holding, Inc.*, 387 F. Supp. 3d 1046, 1060 (S.D. Cal. 2019) (reciting elements of claim for conversion) (citation omitted).  Plaintiffs claim that there were other communications from Ms. Rice's company email account "on this topic that Energizer was aware of in real time." Opp. at 13 (citing Pls.' Exs. I, J, K, L).  But, none of these other documents disclosed that Ms. Rice had forwarded the privileged email at issue to Mr. Petretti.

Plaintiffs also claim their Complaint should have put Energizer on notice of its claims, arguing that "Portable Power repeatedly made clear in its complaint that it had obtained these documents and information *from* Ms. Rice." Opp. at 8.  While the Complaint certainly mentions communications involving Ms. Rice, it never states that she is the one who provided the documents to Plaintiffs' counsel. Furthermore, the Complaint never states that Mr. Petretti was providing gifts in exchange for confidential information or discloses the existence of personal emails or text messages intended to evade Energizer's detection.  Moreover, allegations are not evidence or facts.  A defendant exhibits diligence—not a lack of diligence —when it investigates potential claims based on documents

6

1     produced in the case rather than jumping to conclusions based on the self-interested allegations of its

2     opponent.

3          Plaintiffs go so far as to claim that "Energizer did not learn ***any*** new facts relevant to its

4     counterclaims from Portable Power's document productions."  Opp. at 12 (emphasis added).  This

5     claim is absurd, and wholly unsupported by any documents they cite.  For example, Plaintiffs claim

6     Energizer "should have known that Mr. Petretti purchased gifts for Ms. Rice," citing a single email as

7     an example.  Opp. at 14.  The email they cite mentions that Ms. Rice received wine, but does not

8     disclose that the wine was a gift, or even that it was sent by Mr. Petretti (it uses the pronoun "he"), and

9     it certainly does not disclose that the wine was part of a quid pro quo arrangement.  *See* Pls.' Ex. Q

10    ("My husband texted me and said the wine arrived!  He also said 'He sent you a whole case! I have to

11    meet this guy!'").  By contrast, the personal emails and texts from Ms. Rice and Mr. Petretti made clear

12    that the case of wine referred to was given in exchange for the privileged internal documents Ms. Rice

13    had forwarded.  Counterclaim ¶ 37.  And it was only previously withheld text messages that showed

14    Mr. Petretti responded to Ms. Rice providing confidential inside information by writing "I owe you

15    wine."  *Id*. ¶ 38.  Plaintiffs cannot point to *any* emails on Energizer's servers showing this quid pro quo

16    arrangement: by design, Ms. Rice kept this core evidence of the conspiracy on her personal accounts.

17    *Id*. ¶ 49 ("Ms. Rice explicitly acknowledged that her disclosures were 'off the record,' and that she

18    'gave a few more details than [she] was supposed to' …. from her 'personal email' because she was

19    not allowed to send it from her work [email].").

20         Plaintiffs also claim that Energizer "does not explain any efforts it undertook to discover the

21    basis for its counterclaims at any time."  Opp. at 8.  That claim simply ignores Energizer's description

22    of its timely discovery targeting communications with Ms. Rice.  The declaration accompanying

23    Energizer's motion explains that "Defendants served Requests for Production ('RFPs') on Portable

24    Power on April 30, 2024, approximately three months before the deadline to amend pleadings," but

25    "Portable Power did not make its first document production until April 8, 2025—nearly a year after

26    Defendants served their RFPs, and nearly nine months after the deadline to amend pleadings."  Original

27    Dusseault Decl. ¶¶ 6–7.  Portable Power made additional productions in May, June, and July.  *Id*. ¶ 8.

28    Those later "productions contain substantial evidence of the tortious conduct described in Energizer's

7

counterclaim, including text messages sent and received by Ms. Rice on her personal phone, as well as emails sent and received by Ms. Rice through her personal email account." *Id*. ¶ 9. These efforts are more than sufficient to establish good cause under Rule 16. *Synchronoss Techs., Inc. v. Dropbox Inc.*, 2019 WL 95927, at *1 (N.D. Cal. Jan. 3, 2019) ("[C]ourts are more willing to modify scheduling orders and allow parties to amend their pleadings based on newly discovered information that parties could not have discovered before with reasonable diligence[.]"); *Amarte USA*, 2023 WL 8420896, at *9. Plaintiffs' refusal to timely produce documents cannot show Energizer's lack of diligence.

As Plaintiffs put it when seeking leave, "waiting to amend a complaint or answer until a strong evidentiary basis for the amended claims has been developed is preferable to prematurely asserting those claims on the basis of a limited record that may or may not support them." ECF No. 101 at 5 (quoting *Entangled Media*, 348 F.R.D. at 655). The "strong evidentiary basis" for Energizer's counterclaims simply did not exist until the summer of 2025, when Energizer received productions containing the documents cited in the Counterclaims.

### C.    Plaintiffs Have Not Carried Their Burden To Establish That Leave To Amend Should Be Denied Under Rule 15(a)

Despite acknowledging in their own motion for leave to amend that the Rule 15(a)(2) amendment standard "is to be applied with extreme liberality," ECF No. 101 at 6 (quoting *Eminence*, 316 F.3d at 1051), Plaintiffs contend that this Court should disallow Energizer's proposed amendments. But Plaintiffs have not shown that Energizer's amendments will cause them prejudice (let alone substantial prejudice). They also have not shown that Energizer has unduly delayed. Notably, they do not argue the remaining Rule 15(a)(2) factors (i.e., bad faith and futility).

### 1.    Plaintiffs Have Not Made A Showing Of Substantial Prejudice

"Prejudice is the touchstone of the inquiry under Rule 15(a)." *Eminence*, 316 F.3d at 1052. Prejudice in this context means "***substantial*** prejudice or ***substantial*** negative effect" on the opposing party. *Entangled Media*, 348 F.R.D. at 656 (quoting *Hip Hop Beverage Corp. v. RIC Representcoes Importacao e Comercio Ltda.*, 220 F.R.D. 614, 622 (C.D. Cal. 2003)) (emphasis added). As the parties opposing amendment, Plaintiffs bear the burden of showing substantial prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). Plaintiffs have not come even close to carrying that burden.

1    Plaintiffs first say it would be prejudicial to allow Energizer to amend because it "could enable

2    Energizer—and Walmart—to argue that because Portable Power is encumbered with individual

3    counterclaims, Plaintiffs cannot satisfy Rule 23 and Portable Power should not serve as a class

4    representative." Opp. at 17. This argument is untenable: The mere fact that counterclaims may create

5    a typicality or adequacy problem for a proposed class representative cannot possibly justify denying a

6    motion for leave to amend on grounds of prejudice (or otherwise). If that were the law, defendants

7    would never be able to amend their answers to assert counterclaims in putative class actions. Not

8    surprisingly, Plaintiffs point to no authority that supports this farfetched argument. And the cases

9    Plaintiffs do cite (Opp. at 16–17) are inapposite. *Lou v. Ma Lab'ys, Inc.*, 2013 WL 3989425, at *3

10   (N.D. Cal. Aug. 2, 2013) does not even mention Rule 15(a)'s "prejudice" factor, let alone apply it. *See*

11   *id.* (dismissing the defendants' counterclaims for lack of subject matter jurisdiction). And in *Johnson*

12   *v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1122 (N.D. Cal. 2011), the court denied the plaintiffs'

13   request for leave to amend not because granting the motion would "complicate[] the question of class

14   certification" (as Plaintiffs misleadingly suggest at Opp. at 17), but because the defendant had already

15   moved for summary judgment on the theory that the defendant "(and the Court) believed was Plaintiffs'

16   theory of the case," after the parties conducted "extensive discovery" into that theory.

17    The narrower argument that Plaintiffs advance about *the timing of* Energizer's proposed

18   amendments fares no better. Specifically, Plaintiffs say that because Energizer moved for leave to

19   amend "[j]ust weeks before class-certification briefing was set to begin," they will suffer prejudice if

20   the amendments are allowed because they will be "prevent[ed] … from testing the sufficiency of

21   [Energizer's] counterclaims prior to class certification." Opp. at 17. But Plaintiffs do not even attempt

22   to explain what evidence they supposedly require to "test" Energizer's proposed counterclaims that the

23   timing of Energizer's Motion supposedly prevents them from obtaining. "A non-moving party must

24   do more than merely assert prejudice; 'it must show that it was unfairly disadvantaged or deprived of

25   the opportunity to present facts or evidence which it would have offered had the ... amendments been

26   timely.'" *Wizards of the Coast LLC v. Cryptozoic Ent. LLC*, 309 F.R.D. 645, 652 (W.D. Wash. 2015)

27   (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)). As the foregoing makes clear,

28   Plaintiffs clearly have not made such a showing.

9

1    In any event, Energizer's Motion is now fully briefed and ripe for decision approximately *five*

2  *months* before Plaintiffs are scheduled to file their reply brief in support of their motion for class

3  certification, and approximately *nine months* before the close of fact discovery.  Thus, plenty of time

4  remains for Plaintiffs to serve and obtain whatever as-yet unspecified discovery they believe they need

5  to test the sufficiency of Energizer's counterclaims for purposes of class certification (and otherwise).

6  This is particularly true given that Defendants have not even noticed—let alone taken—the deposition

7  of Portable Power owner Rick Petretti, whose misconduct is at the heart of Energizer's Counterclaims.[1]

8    Lastly, Plaintiffs contend they will be prejudiced if the Motion is granted because Energizer's

9  counterclaims will supposedly require them to "consider a new line of legal argument."  Opp. at 18–

10  19 (quoting *IXYS Corp. v. Advanced Power Tech., Inc.*, 2004 WL 135861, at *3 (N.D. Cal. Jan. 22,

11  2004)).  In effect, Plaintiffs are complaining that Energizer's counterclaims raise issues that are distinct

12  from the issues raised by Plaintiffs' antitrust claims against Energizer.  But that fact alone does not

13  give rise to prejudice, as Energizer already pointed out.  ECF No. 108 ("Mot.") at 7; *see Weingand v.*

14  *Harland Fin. Sols., Inc.*, 2012 WL 2327660, at *9 (N.D. Cal. June 19, 2012) ("[T]he fact that Defendant

15  seeks to assert counterclaims that differ in scope from Plaintiff's initial pleadings does not demonstrate

16  prejudice.").  In other words, "[a]lthough the counterclaims will introduce new issues, a plaintiff has

17  no right to pre-emptive protection from counterclaims merely because she wishes the litigation to focus

18  on her own claims." *Han v. Futurewei Techs., Inc.*, 2011 WL 5118748, at *3 (S.D. Cal. Oct. 28, 2011).

19  While Plaintiffs say these cases are distinguishable because they were not putative class actions (Opp.

20  at 18), Plaintiffs' argument that Energizer's counterclaims would require them to consider a "new line

21  of legal argument" concerns the relationship between those counterclaims and Plaintiffs' antitrust

22  claims—not the status of this case as a putative class action.  These cases are thus directly on point.

23  _____

24  [1] Plaintiffs' position on the briefing schedule for this Motion calls into question the sincerity of
    Plaintiffs' timing-related concerns.  Energizer filed the Motion on October 2, 2025—more than seven

25  weeks before Plaintiffs' deadline to move for class certification.  When the parties first discussed a
    briefing schedule, Plaintiffs took the position that they needed *nine weeks* to prepare their opposition

26  (i.e., until December 5, 2025).  Dusseault Reply Decl. ¶ 15.  While Plaintiffs eventually abandoned that
    unreasonable position, they insisted they needed three weeks beyond the two-week default provided

27  for under the local rules.  ECF Nos. 114 & 116.  All the while, Energizer made clear to Plaintiffs its
    view that the Motion is straightforward and could be briefed under the default deadlines.  *See, e.g.*,

28  ECF No. 114-2 (Oct. 8, 2025 Email from S. Kushner).

By contrast, Plaintiffs' case is of no help to them, as the court there *rejected* the plaintiffs' new-legal-theory assertion of prejudice. *IXYS Corp.*, 2004 WL 135861, at *3 ("Despite [the plaintiff]'s strident protestations, the 'new legal theory' to which [the plaintiff] points would not force it to undertake quite the 'radical shift in direction' or 'entirely new course of defense' described in several of the cases that relied upon the presentation of new legal avenues as grounds for refusing to allow amendment.").

None of the remaining cases that Plaintiffs rely on to substantiate their assertions of prejudice is on point, either. In *Williams v. Progressive Cnty. Mut. Ins. Co.*, 2020 WL 7078888, at *9 (S.D. Cal. Dec. 3, 2020) (Opp. at 16), the court held that allowing the defendant to assert a counterclaim *after the close of discovery* would have prejudiced the plaintiff because it would have required the court to "either reopen discovery, or allow the addition of the [counter]claim without discovery." That is not the case here, as more than nine months remain before the close of fact discovery. In *Logtale, Ltd. v. IKOR, Inc.*, 2014 WL 1247896, at *7 (N.D. Cal. Mar. 26, 2014) (Opp. at 18), the proposed counterclaims were the defendants' "fourth attempt to assert counterclaims against" the plaintiff—a situation in which courts have "particularly broad discretion to deny leave to amend." Here, this is Energizer's first request to amend its answer to assert counterclaims. Moreover, in *Logtale*, the proposed counterclaims would have required "extensive additional discovery," including "costly and time-consuming" discovery into "patent and trademark issues." *Id.* The same cannot be said of discovery into Energizer's counterclaims, which will likely be limited to the ordinary tools of fact discovery (i.e., written discovery requests and depositions). In *Am. Society for the Prevention of Cruelty to Animals v. Ringling Bros.*, 244 F.R.D. 49, 52 (D.D.C. 2007) (Opp. at 18), the defendant moved for leave to amend when the case was "winding down"—*i.e.*, the defendant had already moved for summary judgment, and "[v]ery limited discovery remain[ed]" to be completed before trial. Not so here. And in *Gaston v. Exelon Corp.*, 247 F.R.D. 75, 85 (E.D. Pa. 2007) (Opp. at 18), the plaintiffs' proposed amended complaint included changes that would require the parties to engage in some—if not "significant"—additional discovery "after the close of class discovery." Here, as noted, discovery remains open.

In sum, Plaintiffs have not made the requisite showing of substantial prejudice.

**2.    Energizer Did Not Unduly Delay In Moving To Amend**

Plaintiffs do not expressly address the Rule 15(a) "undue delay" factor in their opposition.  To the extent their position is that this factor disfavors granting Energizer's Motion for the same reasons they claim Energizer has not established good cause under Rule 16(b), their position is not persuasive for the reasons discussed *supra* pp. 3–8.  *See Trimble Navigation Ltd. v. RHS, Inc.*, 2007 WL 2727164, at \*10 (N.D. Cal. Sept. 17, 2007) ("The court also finds . . . that defendants have acted reasonably diligently in bringing their motion to amend [for purposes of Rule 16(b)], thereby obviating any concerns over unreasonable delay [for purposes of Rule 15(a)].").

**3.    The Remaining Rule 15(a) Factors —Which Plaintiffs Do Not Even Argue—Do Not Provide Grounds For Denying Energizer's Motion**

Plaintiffs do not argue bad faith or futility in their opposition.  Plaintiffs have thus necessarily failed to make the "strong showing" that is required before a motion for leave to amend may be denied on these grounds.  *Eminence*, 316 F.3d at 1052.  In any event, these factors favor granting Energizer leave to amend.  That is, Energizer seeks to assert its counterclaims soon after discovering the wrongful conduct at issue, precluding any allegation of bad faith.  Mot. at 6–8; *see also supra* pp. 3–8.  Nor are Energizer's counterclaims futile: Energizer more than adequately alleges claims for conversion, civil conspiracy, misappropriation of trade secrets, and unfair competition.  Mot. at 8–10.

**D.    Plaintiffs Do Not Contest That Mr. Petretti and Ms. Rice May Be Joined as Counter-Defendants Under Rule 13(h)**

Plaintiffs' opposition is also silent regarding Energizer's request to join Mr. Petretti and Ms. Rice as counter-defendants under Fed. R. Civ. P. 13(h) and 20.  That being so, and because joinder is proper for the reasons articulated in Energizer's Motion (Mot. at 10–12), the Court should order that Mr. Petretti and Ms. Rice be joined as counter-defendants.  *See Sporting Supplies Int'l, Inc. v. Tulammo USA, Inc.*, 2012 WL 12892310, at \*3 (C.D. Cal. Mar. 5, 2012) (finding it "appropriate under Rules 20 and 13(h)" to join a third party as a counter-defendant where the Rule 20 standard was satisfied and the plaintiff did "not dispute" the matter).

**III.    CONCLUSION**

Plaintiffs' opposition seeks to turn on their head the exact legal principles that Plaintiffs touted in their own motion for leave to amend filed in May 2025.  The law, of course, has not changed since

Plaintiffs moved for leave to amend.  Rather, what has changed is the identity of the party seeking this Court's permission to amend.  But there is no principled reason to hold Energizer to a stricter standard than Plaintiffs.  Accordingly, Energizer respectfully requests that the Court grant Energizer leave to file its Amended Answer and Counterclaims.

Dated:  November 20, 2025                    Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: */s/ Christopher D. Dusseault*

Theodore J. Boutrous, SBN 132099
    TBoutrous@gibsondunn.com
Christopher D. Dusseault, SBN 177557
    CDusseault@gibsondunn.com
Samuel G. Liversidge, SBN 180578
    SLiversidge@gibsondunn.com
Sarah M. Kushner, SBN 320077
    SMKushner@gibsondunn.com
Courtney L. Spears, SBN 329521
    CSpears@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:       213.229.7000
Facsimile:       213.229.7520

Rachel S. Brass, SBN 219301
    RBrass@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:       415.393.8200
Facsimile:       415.393.8306

*Attorneys for Defendant Energizer Holdings, Inc.*

13