United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PORTABLE POWER, INC., et al.,
Plaintiffs,
v.
ENERGIZER HOLDINGS, INC., et al.,
Defendants.

Case No. 23-cv-02091-PCP

**ORDER DENYING MOTIONS TO DISMISS AND STRIKE**

Re: Dkt. Nos. 178, 179

Counterplaintiff Energizer Holdings accuses counterdefendants Portable Power, Richard Petretti, and Stephanie Rice (counter-defendants) of conversion, civil conspiracy, misappropriation of trade secrets under federal and California law, and violating California's Unfair Competition Law. Energizer alleges that Rice, a third-party representative of Energizer, gave Portable Power owner Richard Petretti confidential information about Energizer's internal operations, including pricing and strategic information. Portable Power and Petretti now move to dismiss Energizer's countercomplaint for failure to state a claim and move to strike the countercomplaint under California's anti-SLAPP statute, arguing that Energizer's claims are barred by *Noerr-Pennington* immunity and California's litigation privilege, and that the California Uniform Trade Secret Act (CUTSA) preempts Energizer's non-CUTSA state law claims. For the reasons stated below, Portable Power's motions are denied.

**BACKGROUND**

Energizer's counterclaims originate out of an antitrust lawsuit against Energizer, one of the country's largest battery makers, and Walmart, one of the country's largest battery retailers, claiming that Energizer and Walmart drove up the price of batteries in the United States. According to three groups of consumers—wholesale resellers of batteries, Walmart end consumers, and consumers of overcharged retailers—Walmart demanded that Energizer ensure

that competing retailers not undercut Walmart's prices, and Energizer complied with Walmart's demands by raising prices for or excluding retailers who undercut Walmart.

On January 6, 2026, Energizer filed its amended answer and included with its answer counterclaims against counterdefendants Portable Power, Richard Petretti, and Stephanie Rice. Based on documents produced in discovery, Energizer alleges that from 2016 to 2023, Portable Power owner Richard Petretti "coerced and manipulated [Stephanie] Rice, an Energizer contractor who managed his accounts," into giving him confidential information for Portable Power and Petretti's gain. Petretti allegedly did so by giving Rice "expensive personal gifts" and "flattery and professions of love." Rice allegedly gave Petretti "date code charts" and "code shelf-life" information about Energizer's "Internet Sales Authorization Program," internal Energizer email threads discussing pricing, and internal emails containing legal discussions about pricing policies, often in exchange for wine. Energizer alleges that the information Rice gave to Petretti was subject to Energizer's reasonable efforts to maintain its secrecy.

Petretti allegedly gave Energizer's confidential information to "a litigation funder, Amicus Capital, which on information and belief is involved in bankrolling Portable Power's antitrust lawsuit, as well as to his lawyers." Energizer alleges that Petretti used the confidential information he obtained from Rice to file Portable Power's lawsuits against Energizer. Energizer only discovered Rice's leaks to Petretti on June 3, and July 17, 2025, when Portable Power produced documentation of Petretti's and Rice's conduct in discovery.

Energizer's answer asserts counterclaims for conversion, civil conspiracy, misappropriation of trade secrets in violation of the California Uniform Trade Secrets Act (CUTSA) and the federal Defend Trade Secrets Act, and violations of California's Unfair Competition Law (UCL). Energizer requests a jury trial and damages, as well as injunctive relief including the "imposition of a constructive trust to prevent Richard Petretti and Portable Power and their agents from profiting from their wrongful acquisition and use of Energizer's privileged and confidential information."

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." If the complaint does not do so, the defendant may move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## ANALYSIS

### I. The *Noerr-Pennington* doctrine does not bar Energizer's counterclaims.

The counterdefendants first assert that Energizer's counterclaims are barred by *Noerr-Pennington* immunity. That doctrine provides that "litigation activity … cannot form the basis of liability unless the litigation is a 'sham.'" *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 347 n.1 (9th Cir. 2014) (citing *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965)). To determine whether a claim is barred by *Noerr-Pennington* immunity, a defendant must establish that: 1) "the lawsuit imposes a burden on petitioning rights," 2) "the alleged activities

constitute protected petitioning activity," and 3) "the statutes at issue may be construed to preclude that burden on the protected petitioning activity." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009). To resolve the counterdefendants' motion, the Court need only consider the second condition—namely, whether the counterclaims arise from "activities [that] constitute protected petitioning activity." *Id.*

The *Noerr-Pennington* doctrine protects "petitions directed at any branch of government" as well as "conduct incidental to the prosecution of a suit, like pre[-]suit demand letters and discovery communications." *B&G Foods N. Am. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022) (cleaned up). Thus, the doctrine protects litigation activities like bringing a lawsuit or filing pleadings or motions before a court, as well as certain related communications. *See id.* at 536 (holding that defendants' seeking to enforce a state law was protected petitioning activity); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 933 (9th Cir. 2006).

Energizer alleges that Petretti gathered information that informed both Portable Power's business strategy and its preparation of this lawsuit. Energizer accuses Portable Power of violating its rules for retailers and misappropriating its confidential business information. Petretti allegedly "manipulated Ms. Rice … to illegally obtain confidential and privileged Energizer information for his own financial benefit, and eventually to support his planned lawsuit against Energizer." Though Energizer alleges that Petretti used the confidential business information received from Rice in the eventual lawsuit against Energizer, Energizer also alleges that Petretti used Rice's information "to secure financially advantageous terms for Portable Power's business operations, including improper pricing as well as strategic guidance on Energizer's enforcement policies, which allowed him to subvert those policies."

The connection between Portable Power's lawsuit and the purportedly illegal sharing of Energizer's confidential business information with Peretti is too attenuated to fall within the scope of *Noerr-Pennington*. In *Sosa v. DIRECTV, Inc.*, the Ninth Circuit concluded that pre-litigation demand letters were protected First Amendment petitioning activity in order to "preserve the breathing space required for the effective exercise of the rights [*Noerr-Pennington*] protects." 437 F.3d at 933; *see also B&G Foods*, 29 F.4th at 536. But Portable Power and Petretti's alleged

United States District Court
Northern District of California

actions—illegally obtaining internal Energizer business information—were not protected First Amendment petitioning activity because, as alleged, such unlawful information gathering is not required to effectively exercise the right to petition the state for redress. 437 F.3d at 933.

Portable Power argues that its "pre-litigation communications with Rice, as described by Energizer, are part of protected petitioning activity" because the communications "are not merely 'incidental' to the lawsuit, which is all that is required to trigger protection, but inseparable from it." Motion to Dismiss at 10. But the fact that Petretti's communications with Rice pre-dated and informed the filing of Portable Power's suit does not immunize Portable Power from Energizer's counterclaims or convert the alleged unlawful conduct into petitioning activity. Portable Power's argument would risk immunizing any misappropriation of confidential information merely because it occurred before, and informed, the filing of a suit. *See* Opposition at 7. Pre-suit investigations can encompass a wide range of activities, some of which are legal (such as conducting legal research), and some of which are not (such as stealing a company's trade secrets and other confidential information). Portable Power's allegedly improper receipt of Energizer's confidential information may have informed the filing of Portable Power's suit, but the collection is too unlike the category of activities the Ninth Circuit has described as being "incidental" to petitioning activity to make *Noerr-Pennington* applicable. *See Kearney*, 590 F.3d at 646.

Portable Power's cited authorities are inapposite or unpersuasive. *Sosa* dealt with pre-litigation demand letters that threatened litigation unless the recipients settled with DIRECTV. 437 F.3d at 926, 934–35. While *Thomas v. Housing Authority*, 2006 WL 5670938 (C.D. Cal. Feb. 28, 2006), stated in passing that the plaintiffs' claims were barred by *Noerr-Pennington* "to the extent they [were] premised on … any investigation that led to the filing of the action," *id.* at *10, the court clarified that defendants' protected activity had started before the investigation at issue when they served plaintiff with a "three day notice to quit" which was "a prerequisite to the filing of an unlawful detainer action." *See id.* at *10 n.50. The protected investigation consisted of "any investigation that took place after [plaintiffs'] receipt of the three day notice to quit." *Id.* Thus the defendants in *Thomas* conducted their investigation to directly advance petitioning activity that

United States District Court
Northern District of California

had already occurred.[1] *Harper v. City of Arcadia*, 2008 WL 11410019, at *15 n.71, 16 (C.D. Cal. July 14, 2008), is also not particularly helpful to counter-defendants, as that court found *Noerr-Pennington* inapplicable.

In short, counter-defendants have not identified any decision expanding *Noerr-Pennington* to immunize otherwise unlawful information gathering solely because the information was, at some later point, used to file a lawsuit. The Court is likewise unwilling to extend the doctrine to that degree. Accordingly, *Noerr-Pennington* immunity does not bar Energizer's counterclaims.

## II. California's litigation privilege does not bar Energizer's counterclaims.

Much like its *Noerr-Pennington* argument, Portable Power argues that California's litigation privilege bars Energizer's state law claims because the privilege extends to statements made before a lawsuit, including statements made in preparation for or to investigate a lawsuit. MTD at 14 (quoting *Bergstein v. Stroock & Stroock & Lavan LLP*, 236 Cal. App. 4th 793, 814 (2015)).

California Civil Code Section 47(b) privileges any "publication or broadcast" made in a judicial proceeding. *Action Apartment Ass'n Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007). The California Supreme Court has held that the litigation privilege "extends to any communication: (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." *Kimmel v. Goland*, 51 Cal. 3d 202, 209 (1990) (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990)). The privilege also extends to "any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." *Silberg*, 50 Cal. 3d at 212. "[T]he privilege of section 47(2) precludes recovery for tortiously inflicted injury resulting from *publications* or *broadcasts* made during the course of judicial and quasi-judicial proceedings, but does not bar

[1] It is also unclear what aspects of the defendants' investigation plaintiffs were challenging in *Thomas*. The plaintiffs' primary claim in that case was premised on the defendants' filing of an unlawful detainer lawsuit—conduct that unquestionably constituted petitioning.

United States District Court
Northern District of California

recovery for injuries from tortious *conduct* regardless of the purpose for which such conduct is undertaken." *Kimmel v. Goland*, 51 Cal. 3d at 205.

Portable Power has not established that the litigation privilege protects it from the state law claims asserted here. *Kimmel* is instructive. In that case, the California Supreme Court held that the litigation privilege did not apply to plaintiffs' surreptitious recording of their telephone conversations with mobile home park managers, notwithstanding that the plaintiffs were contemplating litigation involving the managers, because "the acts upon which liability was premised were committed in anticipation of litigation but prior to the commencement of any actual judicial proceeding." 51 Cal. 3d at 211. The court distinguished between "the taping of confidential telephone conversations," which was not privileged, and "any 'publication' or 'broadcast' of the information contained in these conversations," which was. *Id.* at 209.

Similarly here, defendants' alleged use of Energizer's confidential information is not privileged. The gravamen of the action involves Petretti's procurement and misuse of confidential information, not the communications that helped him procure that information or the subsequent use of that information to inform the filing of this lawsuit. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006). Energizer's counterclaims are not premised on what Petretti said but what he *did* in procuring that confidential information. *See* Answer ¶¶ 62–89 (alleging claims for conversion, civil conspiracy, state and federal trade secret misappropriation, and UCL).

In reply, Portable Power re-asserts that Energizer's counterclaims are unlike those of the *Kimmel* plaintiffs because Energizer's "claims arose from Portable Power's communicative acts in relation to its lawsuit against Energizer." Reply at 14. But, again, Energizer's counterclaims arise from Portable Power's receipt of confidential information, not from an action that was "communicative in its essential nature." *See Rusheen*, 37 Cal. 4th at 1058. Therefore, the litigation privilege does not bar Energizer's suit.

**III. The CUTSA does not preempt Energizer's other state law claims.**

The "CUTSA preempts common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claims." *Implicit Conversions, Inc. v. Stine*, 2025 WL 2323354, at *3 (N.D. Cal. Aug. 11, 2025) (cleaned up). At the same time, CUTSA "does not

United States District Court
Northern District of California

affect … other civil remedies that are not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7(b). "[T]he determination of whether a claim is based on trade secret misappropriation is largely factual." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009).

Counterdefendants argue that the CUTSA preempts Energizer's conversion, civil conspiracy, and unfair competition claims. But Energizer's counterclaims are not premised on entirely the same nucleus of facts as the alleged misappropriation of trade secrets giving rise to Energizer's CUTSA claim. As Energizer notes, its conversion, civil conspiracy, and unfair competition claims "arise in part from Counterdefendants' conspiracy to misappropriate (and resulting dominion over) Energizer's *privileged information*." Opposition at 13. While that privileged information may include trade secrets, it is not limited to such secrets. Energizer notes, for example, that the information includes documents that it believes are protected by the attorney-client privilege but that might not themselves constitute trade secrets. As a result, its non-CUTSA state law claims are not necessarily dependent on the misappropriation of trade secrets. *See Spring Design, Inc. v. Barnesandnoble.com, LLC*, 2010 WL 11607095, at *2 (N.D. Cal. Apr. 8, 2010); *Broidy Cap. Mgmt. LLC v. Muzin*, 2022 WL 1801031, at *2 (D.D.C. June 2, 2022) (holding that common law claims based on alleged theft of private communications were not preempted by plaintiff's CUTSA claim), *vacated on other grounds*, 2023 WL 6795809 (Oct. 13, 2023).

To be certain, if the record developed in discovery suggests that all of the information at issue with respect to Energizer's state common law claims falls within the scope of the CUTSA, then the CUTSA would preclude Energizer from seeking recovery on other common law theories. But at this stage, the Court cannot conclude that the CUTSA entirely not preempts Energizer's non-CUTSA state law claims.

## IV. California's anti-SLAPP statute does not bar Energizer's claims.

Finally, Portable Power moves to strike Energizer's California state law counterclaims under California Civil Procedure Code § 425.16 and seeks an award of fees and costs. Resolving an anti-SLAPP motion under § 425.16 involves two steps. The defendant must first show that the plaintiff's claim arises from an action in furtherance of the defendant's protected conduct. If the

United States District Court
Northern District of California

first step is met, then the plaintiff must show a probability of prevailing on the claims. *See* Cal. Code Civ. Proc. § 425.16(b)(1). Because counterdefendants challenge the "legal deficiencies" of counterplaintiffs' claims rather than bringing an evidence-based anti-SLAPP motion, the Court at the second step must apply the standard governing a motion to dismiss under Rule 12(b)(6). *See Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155–56 (9th Cir. 2021).

For the reasons set forth above, the first step is likely not satisfied. But even if defendants' conduct were protected, Energizer has shown a probability of prevailing on its claims, which requires only that the plaintiff "state and substantiate a legally sufficient claim." *Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 598–99 (9th Cir. 2010) (quoting *Jarrow Formulas, Inc v. LaMarche*, 31 Cal. 4th 728 (2003)). For the same reasons the Court denies counter-defendants' motion to dismiss, Energizer has stated legally sufficient claims. Defendants' motion to strike is therefore denied.

**CONCLUSION**

For the foregoing reasons, the Court denies Portable Power's motion to dismiss and its motion to strike.

**IT IS SO ORDERED.**

Dated: August 3, 2026

P. Casey Pitts
United States District Judge